# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ARSHAD AZIM, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 13-2267-KHV |
| TORTOISE CAPITAL ADVISORS, LLC, et al., | ) ) ) ) |
| Defendants. | ) ) |

## **ORDER**

Pro se plaintiff Arshad Azim has filed an amended complaint (ECF doc. 20) which asserts religious and national-origin discrimination claims against his former employer Tortoise Capital Advisors, LLC, pursuant to 42 U.S.C. § 2000e (Title VII), and claims against two individuals affiliated with Tortoise, pursuant to 42 U.S.C. § 1981. Plaintiff has filed a motion for leave to further amend his complaint, seeking to add four claims and twelve defendants **(ECF doc. 35)**. The current defendants oppose the motion, arguing that plaintiff's proposed amendments are futile. Defendants have filed a motion for the imposition of sanctions pursuant to Fed. R. Civ. P. 11, based on plaintiff's refusal to withdraw his request to add claims that defendants deem frivolous **(ECF doc. 39)**. Because the undersigned U.S. Magistrate Judge, James P. O'Hara, finds two of the four additional proposed claims futile, plaintiff's motion for leave to amend his complaint is granted in part and denied in part. But because the court does not deem plaintiff's conduct sanctionable,

defendants' motion for sanctions is denied.

## I. Background[1]

Plaintiff worked for Tortoise, an investment management firm, as a vice president for business development from September 2011 until April 30, 2012. He alleges that in this role, he learned that defendants (among other things) made misrepresentations to become certified as a minority business enterprise, made fraudulent representations to gain potential investments and investors, and made false filings with the Securities and Exchange Commission ("SEC"). He further alleges that he was subject to harassment and discrimination based on his national origin and religion (Islam) by his supervisor, defendant Michelle Kelly, throughout his employment. Plaintiff reported his concerns of harassment and securities-law violations to Tortoise's manager of human resources, Tabitha Boissonneau, on April 16, 2012. On April 30, 2012, plaintiff met with Boissonneau and Tortoise's chief executive officer, Kevin Birzer. During the meeting, Birzer terminated his employment. Then, Boissonneau and Birzer coerced and intimidated plaintiff into signing a "release agreement" waiving his right to bring future legal or administrative claims against defendants.

## II. Motion for Leave to Amend Complaint

In addition to his discrimination claims brought under Title VII and § 1981, plaintiff

---

[1] In accordance with the legal standard set forth below, the court accepts plaintiff's well-pleaded allegations as true and construes them in plaintiff's favor.

seeks leave to add the following four claims to his complaint: (1) a claim under the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank"), 15 U.S.C. § 78u-6(h)(1)(A)(i) (Count III); a conspiracy claim under 42 U.S.C. § 1985(3) (Count IV); a claim under the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(c) (Count V); and a RICO conspiracy claim, 18 U.S.C. § 1962(d) (Count VI). Defendants argue that permitting any of these additions would be futile. Defendants also argue that plaintiff's proposed amended complaint violates Fed. R. Civ. P. 8(a)(2)'s requirement that a statement of a claim be "short and plain."

Pursuant to Fed. R. Civ. P. 15(a)(2), once a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Rule 15(a)(2) directs the court to "freely give leave when justice so requires." Nonetheless, a court may deny leave to amend when, among other things, amendment would be futile.[2] "A proposed amendment is futile if the amended complaint would be subject to dismissal."[3] Thus, in considering whether a proposed amendment is futile, the court uses the same analysis that governs a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to

---

[2]*Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). As defendants note, leave to amend may also be denied when a plaintiff fails to cure deficiencies by amendments previously allowed. The court does not find the presence of this factor, as the court has not previously directed plaintiff to cure deficiencies by amendments previously allowed.

[3]*Little v. Portfolio Recovery Assocs., LLC*, __ F. App'x __, 2013 WL 6153579, at *1 (10th Cir. Nov. 25, 2013) (citing *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999)).

state a claim.[4] The court will only deny an amendment on the basis of futility when, accepting the well-pleaded allegations of the proposed amended complaint as true and construing them in the light most favorable to the plaintiff, the court determines that plaintiff has not presented "enough facts to state a claim to relief that is plausible on its face."[5] "The party opposing the proposed amendment bears the burden of establishing its futility."[6]

Defendants first argue that plaintiff's proposed amended complaint violates Fed. R. Civ. P. 8(a)(2) because it "is so lengthy, confusing, rambling and unnecessarily and baselessly vitriolic as to be otherwise unintelligible."[7] The court is unpersuaded by this argument. The court has studied the proposed amended complaint. While very lengthy, it is reasonably intelligible and clearly sets forth plaintiff's proposed claims. It is no more "vitriolic" then defendants' briefs on the instant motions. The court is mindful that plaintiff is proceeding pro se, and therefore gives plaintiff some latitude regarding the length and format of his proposed amended complaint.[8]

---

[4] *See Pedro v. Armour Swift-Eckrich*, 118 F. Supp. 2d 1155, 1158 (D. Kan. 2000).

[5] *Little*, 2013 WL 6153579, at *1.

[6] *Mars v. Novartis Pharm. Corp.*, No. 11-2555, 2012 WL 1288729, at *2 (D. Kan. April 16, 2012).

[7] ECF doc. 38 at 6.

[8] *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (ruling, "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers") (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991)).

The court will now examine defendants' futility arguments with respect to each of plaintiff's proposed new claims.

Dodd-Frank Claim

Plaintiff's proposed amended complaint alleges that defendants violated Dodd-Frank by retaliating against him after he reported their violations of securities laws. Congress enacted Dodd-Frank in the wake of the 2008 financial crisis. Section 922 of Dodd-Frank, codified at 15 U.S.C. § 78u-6, attempts to encourage individuals to report violations of U.S. securities laws by, among other things, creating a private cause of action for individuals against employers who retaliate against them for taking specified protected actions.[9] Section 922 provides:

> No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower—
>
> (i) in providing information to the Commission in accordance with this section;
>
> (ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or
>
> (iii) in making disclosures that are required or protected under the Sarbanes–Oxley Act of 2002 (15 U.S.C. 7201 et seq.), the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.), including section 10A(m) of such Act (15 U.S.C. 78f(m)), section 1513(e) of title 18, United States Code, and any other law, rule, or regulation subject to the jurisdiction of the Commission.[10]

---

[9]*Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 623 (5th Cir. 2013).

[10]15 U.S.C. § 78u–6(h)(1)(A).

Defendants argue that plaintiff cannot be deemed a protected individual under § 922 because he does not qualify as a "whistleblower." Relying on the Fifth Circuit case of *Asadi v. G.E. Energy (USA), L.L.C.*,[11] defendants assert that an individual must report information to the SEC to qualify as a whistleblower. Plaintiff points to contrary authority out of the District of Colorado, however, holding that to qualify as a "whistleblower" under § 922, a person need not have disclosed information to the SEC as long as he makes disclosures required or protected under the laws listed in sub-division (iii).[12] Plaintiff contends that he is a whistleblower because he complained to Tortoise's human resources department about Tortoise's securities violations. The Tenth Circuit has not had the opportunity to address this question. Given that there is some authority for plaintiff's position, the undersigned does not find plaintiff's Dodd-Frank claim futile on this basis.

Defendants also make a statutory-construction argument that Dodd-Frank does not provide for individual liability, such that plaintiff should not be permitted to name individuals as defendants in this claim. Defendants cite no case support for their argument. Although the presiding U.S. District Judge, Kathryn H. Vratil, may ultimately adopt defendants' argument on a summary judgment motion, the undersigned does not find plaintiff's Dodd-Frank claim against individuals futile given the state of existing law.

Section 1985 Claim

---

[11] 720 F.3d at 623.

[12] *Genberg v. Porter*, 935 F. Supp. 2d 1094, 1106 (D. Colo. 2013).

Plaintiff seeks to bring a claim against certain individuals under 42 U.S.C. § 1985(3) for conspiracy to interfere with his civil rights. Section 1985(3) prohibits two or more persons from conspiring "for the purpose of depriving, either directly or indirectly, any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws."[13] "To state a claim under § 1985(3), a plaintiff must show: (1) a conspiracy, motivated by racially discriminatory animus; (2) to deprive plaintiff of equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) a deprivation of rights resulting therefrom."[14] "Section 1985(3) does not create an independent cause of action."[15] "Instead, a plaintiff must 'point to independent substantive rights enforceable in the federal courts' to serve as a predicate violation."[16]

Defendants argue that "[b]ecause Plaintiff's only race-based claims are his Title VII and Section 1981 claims, any proposed amendment to add a Section 1985(3) claim is futile."[17] Plaintiff has not specifically stated the civil-rights "predicate violation" on which he is basing his proposed § 1985(3) conspiracy claim. As defendants note, however, plaintiff has alleged violations under Title VII and § 1981. Defendants correctly note that § 1985(3)

---

[13]42 U.S.C. § 1985(3).

[14]*Paris v. Sw. Bell Tel. Co.*, 94 F. App'x 810, 815 (10th Cir. 2004).

[15]*Gallegos v. Jicarilla Apache Nation*, 97 F. App'x 806, 812 (10th Cir. 2003).

[16]*Id.* (quoting *Wheeler v. Swimmer*, 835 F.2d 259, 261 (10th Cir.1987)).

[17]ECF doc. 38 at 20.

"may not be invoked to redress violations of Title VII."[18] They also argue that a conspiracy to violate rights protected by § 1981 cannot sustain a claim under § 1985(3). Defendants have cited no controlling authority for this latter assertion.

The Tenth Circuit has noted that it has "never considered the question of whether § 1981 may form the substantive basis for violation of § 1985(3)."[19] In the absence of controlling law prohibiting such a connection, courts in this circuit have permitted § 1985(3) claims to be brought based on the same alleged violations supporting § 1981 claims.[20] Accordingly, the court rejects defendants' argument that plaintiffs' proposed § 1985(3) claim is futile.

Civil RICO Claim

Plaintiff seeks to add a claim that current and proposed defendants violated 18 U.S.C. § 1962(c) by conducting the affairs of an enterprise engaged in interstate commerce "through a pattern of racketeering activity via multiple RICO predicate acts."[21] Plaintiff alleges that in making false and misleading representations to obtain minority business status, defendants committed mail fraud in violation of 18 U.S.C. § 1341, and wire fraud in violation of 18

---

[18]*Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991).

[19]*Paris*, 94 F. App'x at 815.

[20]*See, e.g., Tillman v. Murphy*, 523 F. App'x 524, 526 (10th Cir. 2013); *Burrell v. Armijo*, 603 F.3d 825, 831 (10th Cir. 2010); *Vesom v. Atchison Hosp. Ass'n*, 279 F. App'x 624, 640 (10th Cir. 2008).

[21]ECF doc. 35-1 at ¶ 26.

U.S.C. § 1343. He further alleges that defendants violated the National Stolen Property Act, 18 U.S.C. §§ 2314 and 2315, by causing the transportation of funds knowingly taken by fraud. Finally, plaintiff alleges that Birzer and Boissonneau violated 18 U.S.C. § 1512 by obstructing justice through witness tampering when they used intimidation to force plaintiff into signing a release agreement whereby plaintiff waived his right to file suit for "securities violations and civil RICO."[22] He maintains that as a result of these violations, he was deprived of his employment, thus suffering economic loss.

Defendants argue that plaintiff's proposed RICO claim is futile because he lacks standing. Specifically, defendants argue that plaintiff does not contend he has been injured by any alleged RICO violation. The Supreme Court has stated that a plaintiff only has standing to bring a civil RICO claim if "he has been injured in his business or property by the conduct constituting the violation."[23] "Any recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts."[24] Thus, to establish standing, a plaintiff must demonstrate that the RICO violation proximately caused his injury.[25] "Comprised of factual and legal normative elements, proximate cause is shown if the predicate acts are a substantial factor in causing the injury and if the injury is a

---

[22]*Id.* at ¶ 240.

[23]*Sedima, S.P.R.L. v. Imrex, Co., Inc.*, 473 U.S. 479, 496 (1985).

[24]*Id.* at 497.

[25]*Masters v. Daniel Int'l Corp.*, No. 87-1290-C, 1991 WL 107410, at *4 (D. Kan. May 3, 1991).

reasonably foreseeable consequence of the acts."[26]

Defendants assert that plaintiff has demonstrated no causal relationship between the alleged predicate acts—fraud perpetrated upon persons and organizations other than plaintiff, and so-called "witness tampering" of plaintiff—and the termination of plaintiff's employment. The court agrees. Plaintiff has not alleged or demonstrated that defendants' alleged mail fraud, wire fraud, or violation of the National Stolen Property Act injured *him*. Accordingly, these alleged RICO predicate acts cannot support plaintiff's standing argument.

Whether plaintiff can establish standing based on his argument that Birzer and Boissonneau obstructed justice by committing "witness tampering" is a slightly closer call. Plaintiff asserts that, as a result of the alleged witness tampering, he "was unjustly deprived of his employment and suffered serious economic loss consequently."[27] Plaintiff alleges he was deprived of salary and bonuses amounting to "more than $300,000 annually."[28] Upon close examination, however, this argument fails both factually and legally.

The facts, taken in their best light as alleged by plaintiff, are that Birzer first terminated plaintiff's employment, giving as a reason plaintiff's inability to "get along with

---

[26]*Id.*

[27]ECF doc. 35-1 at 25, 31.

[28]*Id.* at 32 ("As a direct and proximate result of the Count V Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff has been injured in his business or property in that Plaintiff was unjustly deprived of his employment and suffered serious economic losses consequently, amounting to more than $300,000 annually."); *id.* at 35–36 (seeking relief in the form of "Back Pay: $292,500 per year (Salary and Bonus)").

defendant, Michelle Kelly."[29] Only after plaintiff was terminated did Birzer and Boissonneau "deliberately attempt[] to obstruct justice and tamper with the Plaintiff to prevent the discovery of their protracted racketeering activities."[30] "This was done by . . . intimidating and forcing the Plaintiff into signing a release agreement which waived his right to file any suit arising from his employment at [Tortoise] including civil rights, securities violations, and civil RICO."[31] Under these facts, plaintiff's alleged injury (his loss of salary and bonuses) was caused by the termination of his employment, not by the alleged predicate RICO act of obstruction of justice (via the use of intimidation to force plaintiff into signing a release agreement). Plaintiff has not alleged any injury caused by the fact that he was intimidated into signing the release agreement. Because the proximate cause of plaintiff's economic injury was his termination, not the alleged predicate acts, the facts do not support a finding that plaintiff has standing to bring a RICO claim.

Nor does the law support plaintiff's standing argument. The Supreme Court has recognized that the termination of employment is not an act of racketeering, so it alone cannot confer standing.[32] Plaintiff attempts to work around this holding by, as noted above, basing his RICO claim not on the termination of his employment per se, but rather on the so-

---

[29]ECF doc. 20 at 5, ECF doc. 35-2 at 11.

[30]ECF doc. 35-1 at 31.

[31]*Id.*

[32]*Beck v. Prupis*, 529 U.S. 494, 500–04 (2000); *see also Zhu v. Fed. Hous. Fin. Bd.*, 389 F. Supp. 2d 1253, 1274–75 (D. Kan. 2005); *Masters*, 1991 WL 107410, at *4.

called "witness tampering" that led him to sign the release agreement. Unfortunately for plaintiff, this argument does not carry weight. When the purported predicate act occurs after an employee is terminated and the employee has alleged no injury other than the loss of employment, the employee cannot establish that he suffered economic loss proximately caused by the predicate act.[33] As plaintiff notes, an employee could have RICO standing if his termination was calculated to prevent him from reporting or aiding an investigation into his employer's criminal RICO violations (thereby obstructing justice).[34] But that is not the situation alleged here.

Because the court concludes that plaintiff cannot assert any viable basis supporting his standing to bring a civil RICO claim, allowing him to amend his complaint to assert such a claim would be futile.[35]

RICO Conspiracy Claim

Plaintiff also seeks to bring a RICO conspiracy claim under 18 U.S.C. § 1962(d). Section 1962(d) makes it illegal "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." "If a plaintiff has no viable claim under §

---

[33] *Masters*, 1991 WL 107410, at *4–5. *See also Deck v. Engineered Laminates*, No. 99-2549-CM, 2001 WL 487940, at *4 (D. Kan. April 10, 2001) ("Although the predicate acts may be the 'but for' cause of the plaintiff's alleged injuries, such relation between the harm and the predicate act is not sufficient to confer standing.").

[34] *See Masters*, 1991 WL 107410, at *5 n.5 (citing dicta in *Nodine v. Textron. Inc.*, 819 F.2d 347, 349 n.3 (1st Cir. 1987)).

[35] Reaching this conclusion, the court need not address defendants' other arguments as to why allowing the pleading of a civil RICO claim would be futile.

1962(a), (b), or (c), then [his] subsection (d) conspiracy claim fails as a matter of law."[36] Because plaintiff does not have standing to bring a substantive RICO claim under § 1962(c), his proposed conspiracy claim would fail as a matter of law. Accordingly, this proposed claim would be futile, and plaintiff is denied leave to add it to his complaint.

In summary, plaintiff is granted leave to file an amended complaint to add a claim under Dodd-Frank (Count III) and a conspiracy claim under 42 U.S.C. § 1985(3) (Count IV). By **March 7, 2014**, plaintiff is directed to file a "Second Amended Complaint" to replace the amended complaint (ECF doc. 20) currently governing this action. Plaintiff's second amended complaint **must** be identical to the proposed complaint (ECF doc. 35-1) attached to his motion for leave to file an amended complaint, **except** as follows:

- In the case caption, plaintiff shall delete the names of persons not named as defendants in Counts I–IV.

- In the section entitled "IV. PARTIES," plaintiff shall delete paragraphs referencing persons not named as defendants in Counts I–IV.

- In the section entitled "CAUSES OF ACTION," plaintiff shall delete all paragraphs composing his proposed RICO claims that the court deemed futile. Specifically, plaintiff shall delete paragraphs numbered 178—265.

- Plaintiff may renumber the paragraphs of his second amended complaint after making the above deletions.

---

[36]*Tal v. Hogan*, 453 F.3d 1244, 1270 (10th Cir. 2006).

III. Motion for Sanctions

Defendants move the court to impose sanctions on plaintiff in the form of attorneys' fees and expenses incurred by defendants in preparing their briefs related to plaintiff's motion for leave to amend his complaint.[37] Defendants state that their motion "is necessary to hold Plaintiff accountable for repeatedly pursing frivolous claims."[38] Defendants assert that, despite a letter they sent to plaintiff explaining "in detail why the RICO-based causes of action are legally deficient and unsupported," and the undersigned's comments at the scheduling conference that plaintiff should research the issue of standing prior to bringing new claims,[39] plaintiff "was unwilling to withdraw the RICO-based claims."[40] Defendants also note that, when plaintiff previously sought leave to amend his complaint to add twenty-five causes of action, plaintiff willingly withdrew his request only after defendants threatened

---

[37]Plaintiff filed a response (ECF doc. 41) and later a surreply (ECF doc. 44) to defendants' motion for sanctions. Defendants have filed a motion to strike plaintiff's surreply **(ECF doc. 45)**. The local rules of this court contemplate only the filing of responses and replies to motions; they do not contemplate the filing of surreplies. *See* D. Kan. Rule 7.1(c). Surreplies are disfavored and will only be permitted in exceptional circumstances, such as when new material is raised for the first time in the movant's reply. *See Locke v. Grady Cnty.*, 437 F. App'x 626, 633(10th Cir. 2011); *Drake v. Cox Commc'ns, Inc.*, No. 10-2671, 2011 WL 2680688, at *5 (D. Kan. July 8, 2011). Plaintiff has pointed to no new material raised in defendants' reply brief nor any other exceptional circumstance that would justify a surreply. Accordingly, defendants' motion to strike the surrpely is granted.

[38]ECF doc. 39.

[39]*See* ECF doc. 23 at 2.

[40]ECF doc. 40 at 2.

to seek sanctions under Fed. R. Civ. P. 11.[41]

Rule 11 provides a means by which courts may impose sanctions on persons who make representations to the court. "A person's actions must be objectively reasonable to avoid Rule 11 sanctions."[42] The court has discretion to consider the plaintiff's pro se status in determining whether to impose Rule 11 sanctions.[43]

The court declines to impose sanctions on plaintiff. The court ultimately deemed plaintiff's RICO claims futile, but these claims were not wholly frivolous. Plaintiff made reasonable arguments, citing existing law, for why the court should deem him to have standing to bring the RICO claims. The court finds it commendable that plaintiff pared down his proposed additional claims to four, from a high of twenty-five in the last proposed rendition of his complaint. Plaintiff is now on notice, however, that the court deems his RICO claims without merit. Should plaintiff attempt to re-assert them, the court probably will impose sanctions.

## IV. Objections to this Order

Plaintiff is hereby informed that, within 14 days after he receives this order via

---

[41] *See* ECF doc. 34.

[42] *Alexander v. Everson*, No. 05-1129-JTM, 2005 WL 2035041, at *4 (D. Kan. Aug. 23, 2005) (citing *Adamson v. Bowen*, 855 F.2d 668, 673 (10th Cir.1988)).

[43] *Id.* ("The court will consider a litigant's pro se status in determining whether to impose Rule 11 sanctions."); Fed. R. Civ. P. 11 Advisory Committee Notes (1983 Amendment) ("[T]he court has sufficient discretion to take account of the special circumstances that often arise in pro se situations.").

CM/ECF, he may, pursuant to Fed. R. Civ. P. 72 and D. Kan. Rule 72.1.4(a), file written objections to this order in a motion for review of this order. Plaintiff must file any objections within the 14-day period if he wants to have appellate review of this order. If plaintiff does not timely file his objections, no court will allow appellate review.

The parties are reminded of the dictates of the scheduling order:

> If no party timely files an objection and a motion for review by the presiding U.S. District Judge, Kathryn H. Vratil, the parties shall confer and then e-mail to the undersigned's chambers an updated planning report under Fed. R. Civ. P. 26(f) within one month of the undersigned's ruling. If an objection and motion for review of the undersigned's ruling on the motion to amend is timely filed, the parties shall confer and then e-mail to the undersigned's chambers an updated planning report under Fed. R. Civ. P. 26(f) within 14 days of Judge Vratil's decision on review.[44]

IT IS THEREFORE ORDERED:

1. Plaintiff's motion for leave to file an amended complaint (ECF doc. 35) is granted in part and denied in part, as set forth above. Plaintiff shall file his second amended complaint by March 7, 2014.

2. Defendants' motion for the imposition of Rule 11 sanctions (ECF doc. 39) is denied.

3. Defendants' motion to strike plaintiff's surreply to the motion for sanctions (ECF doc. 45) is granted.

Dated February 24, 2014, at Kansas City, Kansas.

---

[44] ECF doc. 23 at 2.

    s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge