IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ARSHAD AZIM,

       Plaintiff,

v.

TORTOISE CAPITAL ADVISORS,
LLC, et al.,

       Defendants.

Case No. 13-2267-DDC-JPO

## MEMORANDUM AND ORDER

This matter comes before the Court on plaintiff's Appeal of Magistrate Judge Decision (Doc. 48), in which plaintiff objects to the portion of the Order (Doc. 46) issued by Magistrate Judge James P. O'Hara denying in part plaintiff's motion for leave to amend his Complaint. For the reasons explained below, the Court overrules plaintiff's objections and affirms the decision by the Magistrate Judge.

### I.    Background[1]

Plaintiff filed this action pro se alleging religious and national origin discrimination claims against his former employer under 42 U.S.C. § 2000e (Title VII), and claims against two individuals affiliated with his former employer under 42 U.S.C. § 1981. Plaintiff worked for defendant Tortoise Capital Advisors, an investment management firm, as a Vice President in the business development department from September 2011 until April 30, 2012. He claims that his supervisor, Michelle Kelly, harassed and discriminated against him throughout his employment because of his national origin and religion. He also alleges that he learned during his

---

[1] The following facts are taken from plaintiff's allegations, accepted as true, and viewed in the light most favorable to him. *Little v. Portfolio Recovery Assoc., LLC*, 548 Fed. App'x 514, 515 (10th Cir. 2013) (citation omitted).

1

employment that defendants made misrepresentations so it could become certified as a minority business enterprise, made other false and fraudulent representations and failed to disclose conflicts of interest trying to gain potential investments and investors, and made misrepresentations in documents filed with the Securities and Exchange Commission.  On April 16, 2012, plaintiff complained to defendant's human resources manager, Tabitha Boissonneau, about the fraudulent representations defendant Tortoise Capital Advisors made to obtain certification as a minority business enterprise, other securities law violations, and racial and religious discrimination that he allegedly experienced during his employment.  On April 30, 2012, plaintiff met with Boissonneau and Kevin Birzer, defendant's chief executive officer.  During that meeting, Boissonneau and Birzer attempted to coerce and intimidate plaintiff into signing a release agreement that waived his right to file any lawsuit arising from his employment.  Also during that meeting, Boissonneau and Birzer terminated plaintiff's employment.

On November 19, 2013, plaintiff filed a Motion for Leave to File a Third Amended Complaint (Doc. 35) seeking to add additional defendants and four new claims:  (1) a claim under the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank"), 15 U.S.C. § 78u-6(h)(1)(A)(i) (Count III); (2) a conspiracy claim under 42 U.S.C. § 1985(3) (Count IV); (3) a claim under the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(c) (Count V); and (4) a RICO conspiracy claim, 18 U.S.C. § 1962(d) (Count VI).

In an Order dated February 24, 2014 (Doc. 46), Judge O'Hara granted plaintiff's motion for leave to amend in part and denied it in part.  Specifically, Judge O'Hara gave plaintiff leave to amend his Complaint to add the Dodd Frank claim (Count III) and the conspiracy claim under

42 U.S.C. § 1985(3) (Count IV).  Judge O'Hara denied plaintiff leave to amend his Complaint to assert the RICO claim and RICO conspiracy claim because he determined that plaintiff lacked standing to bring a RICO claim, and consequently, plaintiff could not state a RICO conspiracy claim without a viable RICO claim.  Thus, Judge O'Hara concluded that allowing plaintiff to amend his Complaint to assert these two claims would be futile.

Plaintiff objects to Judge O'Hara's ruling and argues that his decision denying plaintiff leave to amend to assert his RICO claim and RICO conspiracy claim was clearly erroneous.  The Court addresses plaintiff's arguments below.

## II.     Standard of Review

Fed. R. Civ. P. 72(a) allows a party to provide specific, written objections to a magistrate judge's order.  When reviewing a magistrate judge's order deciding nondispositive pretrial matters, the district court applies a "clearly erroneous or contrary to law" standard of review. *See First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461–62 (10th Cir. 1988)); 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  Under the clearly erroneous standard, the district court does not conduct a de novo review of the factual findings; rather, it must affirm a magistrate judge's order unless a review of the entire evidence leaves it "with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp.*, 847 F.2d at 1464.  In contrast, "the contrary to law" standard permits the district court to conduct an independent review of purely legal determinations made by the magistrate judge. *Sprint Commc'ns Co. L.P. v. Vonage Holdings Corp.*, 500 F. Supp. 2d 1290, 1346 (D. Kan. 2007) (citations omitted).  A magistrate judge's order is contrary to law if it "fails to apply or misapplies relevant statutes, case law or rules of

procedure." *Walker v. Bd. of Cnty. Comm'rs of Sedgwick Cnty.*, No. 09–1316–MLB, 2011 WL 2790203, at *2 (D. Kan. July 14, 2011) (quotation omitted).

**III.     Analysis**

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend the pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, the court may deny leave to amend on the grounds of undue delay, bad faith or dilatory motive by the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility of the proposed amendment. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The decision to grant leave to amend the pleadings under Fed. R. Civ. P. 15(a) is within the district court's sound discretion. *Id.* (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)).

"A proposed amendment is futile if the amended complaint would be subject to dismissal." *Little v. Portfolio Recovery Assoc., LLC*, 548 Fed. App'x 514, 515 (10th Cir. 2013) (citing *Jefferson Cnty. Sch. Dist. No. R–1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999)). The Court applies the standard governing motions to dismiss under Fed. R. Civ. P. 12(b)(6) to determine whether the proposed amendment is futile. *Id.* That is, the Complaint "must present 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When deciding whether plaintiff has stated a plausible claim, the Court accepts as true all factual allegations in the Complaint and views them in the light most favorable to the plaintiff. *Id.* (citing *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). "Conclusory statements, threadbare recitals of elements, and legal conclusions, however, are not entitled to a presumption of truth." *Id.* (citing

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  However, because plaintiff proceeds pro se in this case, the Court construes his pleadings liberally and applies a less stringent standard than it applies to pleadings filed by lawyers.  *Whitney v. New Mexico*, 113 F.3d 1170, 1173 –74 (10th Cir. 1997) (citation omitted).

### A.  Civil RICO Claim

In his Proposed Amended Complaint (Doc. 35-1), plaintiff seeks to assert a RICO claim alleging that defendants violated 18 U.S.C. § 1962(c) by conducting the affairs of an enterprise engaged in interstate commerce "through a pattern of racketeering activity via multiple RICO predicate acts . . . ."  Doc. 35-1 at ¶ 206.  Plaintiff alleges that defendants committed mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343 by making false representations in an effort to obtain certification as a minority business enterprise.  He also alleges that defendants violated the National Stolen Property Act (18 U.S.C. §§ 2314 & 2315) by transporting through interstate commerce funds knowingly procured by fraud.  Finally, plaintiff alleges that all defendants, through Birzer and Boissonneau, obstructed justice in violation of 18 U.S.C. § 1512 by tampering with a witness when they attempted to coerce, harass, and intimidate plaintiff into signing a release agreement which waived his right to file any suit arising from his employment "including civil rights, securities violations, and civil RICO."  Doc. 35-1 at ¶ 240.  Plaintiff claims that defendant's racketeering activities deprived plaintiff of his employment and caused him to suffer serious economic losses.  *Id.* at ¶ 246.

Title 18 U.S.C. § 1964(c) permits "[a]ny person injured in his business or property by reason of a violation of section 1962" to bring a private civil suit for recovery of triple damages, costs, and attorney's fees.  A plaintiff has RICO standing only if "he has been injured in his business or property by the conduct constituting the violation."  *Sedima, S.P.R.L. v. Imrex Co.,*

*Inc.*, 473 U.S. 479, 496 (1985); *Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1186 (10th Cir. 2014).  Defendants are not liable under RICO "to everyone [they] might have injured by other conduct, nor [are they] liable to those who have not been injured."  *Sedima*, 473 U.S. at 496–497 (citations and internal quotation marks omitted).  "Any recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts."  *Id.* at 497.  Consequently, a plaintiff alleging a RICO claim under section 1964(c) must show that the defendant's predicate acts actually and proximately caused the injury.  *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992).  That is, plaintiff must allege "some direct relation[ship] between the injury asserted and the injurious conduct alleged."  *Id.*

In this case, Judge O'Hara determined that plaintiff had not alleged an injury, and therefore, plaintiff did not have standing to assert a RICO claim.  First, Judge O'Hara concluded that plaintiff's allegations of wire fraud, mail fraud, and violations of the National Stolen Property Act failed to show any injury to *plaintiff*.  Therefore, those predicate acts could not support plaintiff's standing argument.  Plaintiff does not object specifically to this ruling in his appeal.  In any event, the Court agrees with Judge O'Hara:  These predicate acts do not allege any injury to plaintiff, and therefore, plaintiff lacks standing to assert a RICO claim based on these alleged violations of the law.

Second, Judge O'Hara found that plaintiff lacked standing to assert a RICO claim based on the allegations of obstruction of justice by Birzer and Boissonneau, who allegedly committed witness tampering by attempting to coerce plaintiff into signing a release agreement.  Judge O'Hara found that the facts, taken in the light most favorable to plaintiff, show that Birzer first terminated plaintiff's employment, and "[o]nly after plaintiff was terminated did Birzer and Boissonneau 'deliberately attempt[] to obstruct justice and tamper with the Plaintiff to prevent

6

the discovery of their protracted racketeering activities.'" Doc. 46 at 11 (citing Doc. 35-1 at 31). Judge O'Hara also noted that "[w]hen the purported predicate act occurs after an employee is terminated and the employee has alleged no injury other than the loss of employment, the employee cannot establish that he suffered economic loss proximately caused by the predicate act." Doc. 46 at 12 (citations omitted). Judge O'Hara concluded that under these facts, plaintiff's alleged injury (his loss of salary and bonuses) was caused by termination of employment and not by the predicate RICO act of obstruction of justice by Birzer and Boissonneau coercing and intimidating plaintiff to sign the release agreement.

Plaintiff's objections focus on the timing of these two events—the termination and the attempts to force him to sign the release agreement. Plaintiff claims that Judge O'Hara erred by finding that the termination occurred first while the alleged witness tampering occurred second. Plaintiff points to several allegations made in his Memorandum in Support of his motion for leave where he stated that the obstruction of justice occurred *before* defendants terminated his employment. *See*, *e.g.*, Doc. 35-2 at 6 ("Plaintiff's Proposed Memorandum in Support of the Proposed Amended Complaint . . ." states "26. Defendant Birzer and Defendant Boissonneau intimidated/threatened Plaintiff to sign the Release Agreement, *and then fired* Plaintiff at a remote/non-office location . . . .") But these allegations appear nowhere in the Proposed Amended Complaint.

When deciding whether plaintiff's proposed RICO claim was futile, Judge O'Hara correctly noted that plaintiff was proceeding pro se and therefore gave him "some latitude regarding the length and format of his proposed amended complaint." Doc. 46 at 4 & n.8 (citing *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (ruling, "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal

7

pleadings drafted by lawyers")) (further citation omitted).  Thus, Judge O'Hara properly construed plaintiff's pro se pleadings liberally, applying a less stringent standard than applies to pleadings filed by lawyers.  But Judge O'Hara correctly concluded that he was not required "to supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

But even when the Court construes plaintiff's Proposed Amended Complaint as one alleging the obstruction of justice occurred first and the employment termination occurred second, the Court finds the timing of the two events is not dispositive.  It agrees with Judge O'Hara that plaintiff's alleged injuries were caused by his termination from employment, not the alleged harassment and intimidation by Birzer and Boissonneau in attempting to force plaintiff to sign the release agreement.

Termination of employment is not a predicate act that can support a RICO claim, and a former employee lacks standing to assert a RICO claim based on an alleged wrongful termination.  *Zhu v. Fed. Hous. Fin. Bd.*, 389 F. Supp. 2d 1253, 1274 (D. Kan. 2005) (citing *Beck v. Prupis*, 529 U.S. 494, 500–04 (2000)); *see also Masters v. Daniel Int'l Corp.*, No. 87-1290-C, 1991 WL 107410, at *4 (D. Kan. May 3, 1991) (explaining that numerous courts have held that an employee lacks standing to bring a RICO claim for discharge resulting from whistleblowing or refusing to participate in illegal activities because the "adverse employment actions were not caused by the predicate acts but were the result of the employers' decision to retaliate for the employees' whistleblowing of or lack of cooperation in the illegal or fraudulent predicate acts.")  Therefore, plaintiff here lacks standing to assert a RICO claim based on his termination.

Plaintiff also lacks standing to assert a RICO claim based on the alleged witness tampering because plaintiff has not alleged any injury resulting from the alleged coercion and intimidation into signing the release agreement. Rather, plaintiff claims he was injured by losing his employment and sustaining serious economic losses. The proximate cause of plaintiff's economic injuries was termination of his job, and not the alleged predicate RICO act. Thus, plaintiff has not alleged standing to assert the RICO claim.

Additionally, plaintiff criticizes Judge O'Hara for stating that "the so-called 'witness tampering' . . . led [plaintiff] to sign the agreement." Doc. 46 at 11–12. Plaintiff asserts that he "never signed the Release Agreement nor did he allege so anywhere in his pleadings." Doc. 48 at 10. While it is true that plaintiff's 289-paragraph Proposed Amended Complaint never alleges plaintiff actually signed the release agreement, it is also true that it never explicitly alleges that plaintiff *did not* sign the release agreement. It is both reasonable and understandable that Judge O'Hara would infer as much from the allegations in that proposed pleading. *See*, *e.g.*, Doc. 35-1 at ¶ 240 ("This was done by inviting the Plaintiff to a meeting at an offsite, non-TCA office location, under false pretenses and then unleashing coercion, intimidation, and harassment via the acts and behavior of Defendants Birzer and Boissonneau, who in concert with each other were intimidating and forcing the Plaintiff into signing a release agreement which waived his right to file any suit arising from his employment at TCA including civil rights, securities violations, and civil RICO.")

With this admission, it is evident that plaintiff suffered no injury by the alleged obstruction of justice because he never signed the agreement. Plaintiff could not have suffered any economic loss from the alleged harassment and intimidation without signing the agreement. Thus, plaintiff has alleged no injury from the alleged coercion and intimidation imposed trying to

9

force him to sign the agreement.² *See Masters*, 1991 WL 107410, at *5 (where plaintiff suffered no injury from an attempted bribery, he did not have standing to assert a RICO claim). Rather, the only injury claimed is his economic loss resulting from his termination of employment; not the alleged obstruction of justice.

Plaintiff also argues that Judge O'Hara erred by stating "an employee could have RICO standing if his termination was calculated to prevent him from reporting or aiding an investigation into his employer's criminal RICO violations (thereby obstructing justice). But that is not the situation alleged here." Doc. 46 at 12 (citation omitted). Plaintiff claims this is "precisely the situation allege here" because he alleged in his Memorandum in Support of the motion that, "22. Defendant Birzer and Defendant Boissonneau perpetrated an obstruction of justice by intimidating the Plaintiff to sign a Release Agreement so that the Plaintiff would not bring any legal complaints forth pertaining to the defendants' violations of multiple securities/federal laws." Doc. 48 at 5 (citing Doc. 35-2 at ¶ 22). This allegation is not found in plaintiff's Proposed Amended Complaint. But even if one could find this allegation in the Proposed Amended Complaint, plaintiff still has not alleged that defendants violated 18 U.S.C. § 1512 and discharged him to prevent him from reporting or aiding an investigation into his employer's criminal RICO violations. *See Masters*, 1991 WL 107410, at *5 (plaintiff had no standing to bring a RICO claim where there were "no well-pleaded facts" asserting that defendants committed an obstruction of justice and fired plaintiff in order to prevent him from assisting the Nuclear Regulatory Commission in its investigation).

---

² Plaintiff does not allege that defendants terminated his employment because he refused to sign the release. Rather, he alleges that Birzer terminated his employment and stated the reasons for that decision were plaintiff's at-will employment and his inability to get along with Michelle Kelly. Doc. 20 at 5; Doc. 35-2 at ¶¶ 50, 57.

10

Instead, the release, as described by plaintiff in the Proposed Amended Complaint, "waived his right to file any suit arising from his employment . . . including civil rights, securities violations and civil RICO." Doc. 35-1 at ¶ 202. Thus, plaintiff alleges that the release prevented him from bringing a private suit on his own behalf against his former employer for claims arising from his employment. Importantly, plaintiff never alleges that the release prohibited him from reporting or aiding an investigation of his employer's criminal RICO violations, thereby obstructing justice. Nor does plaintiff allege in his Proposed Amended Complaint that defendants calculated their alleged actions to prevent him from reporting or aiding an investigation into his employer's criminal RICO violations, thereby obstructing justice. Thus, plaintiff lacks standing to bring a RICO claim. Accordingly, Judge O'Hara's order denying plaintiff's motion for leave to amend to assert a RICO claim was not clearly erroneous or contrary to law.

### B. RICO Conspiracy Claim

Plaintiff also seeks to assert a RICO conspiracy claim under 18 U.S.C. § 1962(d). Under this statute, it is unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). Judge O'Hara explained that a plaintiff, who has no viable claim under § 1962(a), (b), or (c), cannot bring a conspiracy claim under § 1962(d). Doc. 46 at 13 (citing *Tal v. Hogan*, 453 F.3d 1244, 1270 (10th Cir. 2006)). Judge O'Hara then concluded that because plaintiff did not have standing to bring a RICO claim, then plaintiff's RICO conspiracy claim failed as a matter of law. *Id.*

Plaintiff asserts that the courts are divided whether a plaintiff can assert a 1962(d) claim absent a viable claim for a substantive violation of section 1962(a), (b), or (c). Trying to support this argument, plaintiff cites multiple cases from courts outside of the Tenth Circuit. This Court

11

must follow decisions by the Tenth Circuit, as they are binding precedent. *United States v. Spedalieri*, 910 F.2d 707, 709 n.2 (10th Cir. 1990). Judge O'Hara correctly stated the law of the Tenth Circuit: "If a plaintiff has no viable claim under § 1962(a), (b), or (c), then its subsection (d) conspiracy claim fails as a matter of law." *Tal v. Hogan*, 453 F.3d 1244, 1270 (10th Cir. 2006) (citing *Condict v. Condict*, 826 F.2d 923, 927 (10th Cir. 1987); *BancOklahoma Mortgage Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1103 (10th Cir. 1999); *Edwards v. First Nat'l Bank, Bartlesville, Okla.*, 872 F.2d 347, 352 (10th Cir. 1989); *Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147, 1151 (10th Cir. 1989); *Torwest DBC, Inc. v. Dick*, 810 F.2d 925, 927 n.2 (10th Cir. 1987)). Thus, Judge O'Hara's decision that plaintiff could not assert a section 1962(d) claim without a viable claim under section 1962(a), (b), or (c) was not erroneous or contrary to law.

Moreover, all the cases cited by plaintiff are different. In those cases, the courts held that a plaintiff could recover on a section 1962(d) conspiracy claim for *injuries* caused by an agreement to violate the RICO statute, even if the defendants did not personally commit an act in violation of section 1962(a), (b), or (c). *See*, *e.g.*, *Gagan v. Am. Cablevision, Inc.*, 77 F.3d 951, 964–965 (7th Cir. 1996) ("All that the conspiracy verdict required was an agreement and overt acts; [plaintiff] did not have to prove that the predicate acts were actually committed or successful."); *United States v. Browne*, 505 F.3d 1229, 1264 (11th Cir. 2007) (explaining that a "defendant may be guilty of conspiracy even if he did not commit the substantive acts that could constitute violations of §§ 1962(a), (b), or (c)" as long as the defendant agreed to participate in a RICO conspiracy). These cases are not relevant here, where plaintiff has not alleged any injury from a violation of the subsections of the RICO statute, §§ 1962(a), (b), or (c), and therefore he cannot state a claim for RICO conspiracy under section 1962(d) when he has no injuries under that claim either. Thus, Judge O'Hara correctly decided that plaintiff cannot proceed on a

section 1962(d) conspiracy claim without a viable claim for injuries stemming from a violation of section 1962(a), (b), or (c).  *Tal*, 453 F.3d at 1270; *see also Penn v. Alamo Rent-A-Car, Inc.*, 725 F. Supp. 1339, 1348 (E.D. Pa. 1989) (dismissing section 1962(d) conspiracy claim where plaintiffs did not allege that they were injured by the violation of section 1962(d); rather, plaintiffs rested their allegations entirely upon counts asserting violations of sections 1962(a) and (c), but the court dismissed those counts as a matter of law and thus plaintiff could not proceed with a conspiracy claim without viable, underlying RICO claims).

Plaintiff's reliance on *Beck v. Prupis*, 529 U.S. 494 (2000), is also misplaced.  In that case, the Supreme Court held that a plaintiff may not bring an action for RICO conspiracy in violation of section 1962(d) for injuries "caused by an overt act that is not an act of racketeering or otherwise unlawful under the statute."  *Id.* at 507.  The petitioner argued that the Supreme Court's reading of the statute rendered part of the statute meaningless or superfluous because any person with a claim for a violation of section 1962(d) would necessarily have a claim for violation of sections 1962(a), (b), or (c).  *Id.* at 506.  The Supreme Court rejected this argument, explaining that the language was not superfluous because a plaintiff could bring suit for violation of section 1962(d) against co-conspirators "who might not themselves have violated one of the substantive provisions of § 1962."  *Id.* at 506–07.  This holding is consistent with the other cases cited by plaintiff and distinguished above—a plaintiff may recover against a defendant on a conspiracy claim under section 1962(d) for injuries caused by an agreement to violate the RICO statute, even if the defendant did not personally commit a violation of section 1962(a), (b), or (c).  But that is not the issue here.  Rather, in this case, plaintiff has alleged no injury sufficient to support a RICO claim under section 1962(a), (b), or (c) against any defendant.  Therefore, his conspiracy claim fails as a matter of law.

13

For these reasons, the Court concludes that Magistrate Judge O'Hara did not clearly err or act contrary to law in denying plaintiff's motion for leave to amend to assert a RICO claim and RICO conspiracy claim.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Appeal of Magistrate Judge Decision (Doc. 48) is denied and his objections to the Order of the Magistrate Judge (Doc. 46) are overruled.

**IT IS SO ORDERED.**

**Dated this 2nd day of September, 2014, at Topeka, Kansas.**

<u>**s/ Daniel D. Crabtree**</u>
**Daniel D. Crabtree**
**United States District Judge**