UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ARSHAD AZIM,

                    Plaintiff,

v.                                               Case No. 13-2267-DDC

TORTOISE CAPITAL ADVISORS,
LLC, et al.,

                    Defendants.

## ORDER

The case is before the undersigned U.S. Magistrate Judge, James P. O'Hara, on defendants' motion for a protective order (**ECF doc. 70**). Specifically, defendants seek to prevent plaintiff from requesting certain securities-based information from third parties, arguing that such discovery is not only irrelevant but also serving to annoy, harass, and intimidate defendants' clients and interfere with defendants' business relationships. Plaintiff opposes defendants' motion, arguing that defendants have failed to confer and to show good cause. For the reasons discussed below, defendants' motion is granted.

## I.      Background

For a very short period of time, from September 2011 until April 30, 2012, plaintiff worked for defendant Tortoise Capital Advisors, LLC ("Tortoise"), an investment management firm, as a vice president for business development. Following

plaintiff's termination, he filed a federal lawsuit, asserting religious and national-origin discrimination claims against Tortoise pursuant to 42 U.S.C. § 2000e ("Title VII"), and claims against two individual defendants affiliated with Tortoise, pursuant to 42 U.S.C. § 1981.  On February 24, 2014, plaintiff was granted leave to amend his complaint to add a claim against defendants for *retaliation* under the Dodd Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act")[1] and a claim under 42 U.S.C. § 1985(3) for conspiracy to interfere with his civil rights.  Plaintiff also had moved to add two claims against defendants under the Racketeer Influenced and Corrupt Organization Act ("RICO"),[2] alleging defendants made false and misleading representations to obtain minority status, committed mail and wire fraud, violated the National Stolen Property Act, and obstructed justice through witness tampering.  But the court *denied* plaintiff's request to add RICO claims as futile and ordered him to delete *all* paragraphs composing his proposed RICO claims before filing his second amended complaint.[3]

In December 2014, plaintiff signed and issued subpoenas to third parties requesting documents regarding defendants' alleged "securities law and other federal law violations."[4]  Specifically, plaintiff requested thirteen categories of documents from the City of Philadelphia, Board of Pensions and Retirement ("Philadelphia") regarding

---

[1] 15 U.S.C. § 78u-6(h)(1)(A)(i).

[2] 18 U.S.C. § 1962(c) and (d).

[3] *See* ECF doc. 46 at 13.

[4] *See* ECF doc. 68.

Tortoise's certification or registration as a minority business enterprise.[5]   Plaintiff requested seventeen categories of documents from Morgan Stanley & Co. LLC ("Morgan Stanley"), pertaining to the "covered call strategy component of the Tortoise Pipeline & Energy Fund."[6]  And, plaintiff requested fifteen categories of documents from Stan Sena of the MidAmerica Minority Business Development Council and MidAmerica Minority Supplier Development Counsel regarding Tortoise's certification or decertification as a minority or disadvantaged business enterprise.[7]

Morgan Stanley and Philadelphia both served formal written objections, asserting that the subpoenas are overly broad, burdensome, and seek information that is privileged and irrelevant to the parties' claims and defenses.[8]  Notably, Morgan Stanley responded that plaintiff's claims are "limited to claims related to discrimination, retaliation, and conspiracy to interfere with Plaintiff's civil rights."  And "[n]one of the requests [] seek information related to, or in connection with, any of the above-mentioned claims."[9]  Mr. Sena complied with plaintiff's subpoena by producing all documents in possession of

---

[5] ECF doc. 70-1.

[6] ECF doc. 70-3.

[7] ECF doc. 70-2.

[8] *See* ECF docs. 70-4 and 70-5.

[9] ECF doc. 70-5 at 3.

O:\ORDERS\13-2267-DDC-70.docx

Mountain Plains Minority Supplier Development Counsel[10] regarding the instant action. Plaintiff responded to Mr. Sena's production with an e-mail that threatened to file motions for contempt and to compel. Plaintiff also advised Mr. Sena that this was his last communication before getting the court involved. Plaintiff concluded his e-mail by warning Mr. Sena that "[g]iven your behavior, you will also most likely be deposed and may also be required to attend trial for testimony. Be prepared. And, rest assured."[11] Understandably, Mr. Sena interpreted plaintiff's communication as a "threat" and explained how plaintiff's actions have "been most disruptive to [his] organization and have created unneeded costs, time, and effort."[12] Mr. Sena also described plaintiff's actions as offensive and unprofessional.

After meeting resistance from the subpoenaed nonparties, plaintiff moved to amend his civil cover sheet.[13] Plaintiff explained that his discovery requests have been met with "hindrances due to the current inaccurate summarization of the case." Plaintiff asked that the court include his Dodd-Frank Act claim on the civil cover sheet to reflect the "importance of the issues at stake … including numerous securities law and other

---

[10]   In his response, Mr. Sena informed plaintiff that "we are not the MidAmerica MSDC; that entity dissolved on 12/31/13." ECF doc. 70-6 at 5.

[11] ECF doc. 70-6.

[12] *Id.*

[13] ECF doc. 68.

federal law violations."[14]   Although the court denied plaintiff's motion,[15] defendants assert that the motion brought "to light an issue for which Defendants must now seek judicial intervention."[16]   Accordingly, defendants filed a motion for entry of protective order.

## II.   Motion for Protective Order

Federal Rule of Civil Procedure 26(c) provides that a court may, upon a showing of good cause, "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."   The party seeking a protective order has the burden to show good cause for it.[17]   To establish good cause, that party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[18]   The decision to enter a protective order is within the court's discretion.[19]

In their motion, defendants assert that plaintiff should not be permitted to engage in overly broad and harassing third-party discovery that is irrelevant to his claims.

---

[14] *Id.*

[15] *See* ECF doc. 69 ("the civil cover sheet does not supplement or have any effect on the pleadings … [t]herefore, plaintiff's motion is denied").

[16] ECF doc. 70 at 2.

[17] *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 534 (D. Kan. 2003) (citing *Reed v. Bennett*, 193 F.R.D. 689, 691 (D. Kan. 2000)).

[18] *Id.* (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16 (1981)).

[19] *Id.* (citing *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 482 (10th Cir. 1995)).

Defendants assert that plaintiff is attempting to broaden discovery beyond the second amended complaint by requesting documents that relate to withdrawn or precluded securities-based claims (i.e., his former RICO claims).  Defendants explain that the third-party discovery sought by plaintiff has no bearing on his existing causes of action, all of which are employment-based claims.  Yet, plaintiff admits that he is seeking discovery from these nonparties regarding securities law and other federal law violations. Defendants assert that the subpoenaed nonparties are valued clients with whom they have business relationships.  Further, defendants insist that the harassment and annoyance of these nonparties is unjustified and must be stopped. Defendants point to the e-mail plaintiff sent to Mr. Sena to show how plaintiff is "annoying, harassing, intimidating and threatening Tortoise's clients and interfering with its business relationships without cause."[20]

In his response, plaintiff asserts that the purpose of his opposition is: (1) to establish that his subpoenas conform with the discovery rules; (2) to show the court how defendants are using this motion as a way to manage public relations; and (3) to set the record straight about defendants' alleged lies in this matter.[21]  However, plaintiff first asks that the court deny defendants' motion for failure to confer in accordance with Fed. R. Civ. P. 26(c).

---

[20] *Id.* at 11.

[21] *See* ECF doc. 76 at 2.

Rule 26(c) states that a motion for protective order "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action."[22]  D. Kan. Rule 37.2 also provides that the court will not entertain a motion to resolve a discovery dispute pursuant to Rule 26 unless counsel has satisfied the above-described duty by making a "reasonable effort to confer" with the opposing party.[23]  The purpose behind this conference requirement is to encourage the parties to resolve discovery disputes without judicial involvement.[24]  To determine whether a party has satisfied the conference requirements, the court reviews all of the surrounding circumstances.[25]

Here, plaintiff asserts that defendants did not confer or attempt to confer with him to resolve the dispute prior to filing their motion.  Defendants respond that by reviewing plaintiff's response to their motion in conjunction with plaintiff's e-mail exchanges with the subpoenaed nonparties, it is clear that any such conferring would have been futile. Further, defendants assert that the recipients of the subpoenas already conferred in good faith with plaintiff and informed defense counsel of the same.

---

[22] Fed. R. Civ. P. 26(c).

[23] D. Kan. Rule 37.2.

[24] *Gipson v. Sw. Bell Tel. Co.*, No. 08-2017, 2008 WL 4499972, at *2 (D. Kan. Mar. 8, 2012) (citations omitted).

[25] *Id.*

Although the court could deny defendants' motion for failure to sufficiently confer, given the particular circumstances of this case, the court declines to do so and will decide the motion on the merits.   Based on the parties' submissions, it is clear that plaintiff has conferred with the subpoenaed nonparties.   Additionally, the parties appeared before the undersigned for an informal telephone status conference[26] during which they described their past communications and efforts regarding discovery to date. In consideration of the foregoing, the court will not deny defendants' motion on this basis.   However, defendants are reminded that, prior to filing any future discovery-related motions, they shall sufficiently confer with plaintiff *regardless* of the likelihood of resolving the dispute absent judicial intervention.

Next, plaintiff asserts that the court should deny defendants' motion for failure to show good cause.   Plaintiff argues that defendants' representations in their motion regarding third-party harassment are false.   Plaintiff insists that defendants' real reason for filing the motion is "to evade discoverable information that directly leads to the veracity of plaintiff's allegations and claims."[27]   Plaintiff asserts that all three of the subpoenas at issue seek information from one of three categories of necessary information: (1) there are no other means to obtain the information; (2) the subpoenaed

---

[26] ECF doc. 79.

[27] ECF doc. 76 at 4.

entities have unique knowledge of the facts in dispute under the Dodd-Frank Act claim; and (3) the information sought is relevant and significant to the Dodd-Frank Act claim.

The court disagrees with plaintiff. Defendants have set forth specific facts to show how plaintiff's attempt to conduct significant discovery, through third-party subpoenas, on areas outside the scope of appropriate discovery has and will embarrass, harass, and annoy defendants and nonparties. The threatening statements already made by plaintiff to Mr. Sena and any like behavior by plaintiff likely would have an adverse impact on defendants' business relationships. In his response, plaintiff states that conducting depositions and serving discovery on these nonparties is necessary to counter any summary judgment motions or dispositive motions by defendants and he intends to do both. Plaintiff's motion is chocked full of inflammatory language accusing defendants of actions and behavior that is irrelevant to the pending claims in this action. Based on the actions already taken by plaintiff and his stated intent to conduct like discovery in which defendants and/or nonparties are likely to be embarrassed or harassed, defendants have shown good cause for the entry of a protective order.

Although relevancy is not a *basis* for a protective order,[28] the irrelevancy of the information plaintiff has requested and intends to pursue bolsters the annoyance and

---

[28] *See Aikens*, 217 F.R.D. at 534-35 ("Rule 26(c) does not provide for any type of order to protect a party from having to divulge … materials that are not calculated to lead to the discovery of admissible evidence"); *See also Monroe v. City of Lawrence, Kansas*, No. 13-2086, 2014 WL 1910059, at *3 (D. Kan. May 13, 2014) (a motion for a protective order "is not an avenue to prevent discovery on the basis of relevancy").

harassment to nonparties and defendants, and supports defendants' assertion that the disputed discovery is "merely calculated to harm business relationships between Defendants and third parties."[29]   Plaintiff's response to this motion and his statements during the status conference make it clear that he misunderstands what is relevant to his Dodd-Frank Act claim.  Therefore, the court will briefly address relevancy in an effort to guide plaintiff's future discovery requests.

Plaintiff's second amended complaint alleges that defendants violated the Dodd-Frank Act by retaliating against him after he reported their violations of securities laws. As previously discussed in the court's order regarding plaintiff's motion for leave to file second amended complaint,[30] Section 922 of the Dodd-Frank Act, codified at 15 U.S.C. § 78u-6, attempts to encourage individuals to report violations of U.S. securities laws by creating a private cause of action for individuals against employers who retaliate against them for taking specified protected actions.[31]   Section 922 provides:

> No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower—
>
> (i) in providing information to the Commission in accordance with this section;

---

[29] ECF doc. 77 at 1.

[30] *See* ECF doc. 46.

[31] *Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 623 (5th Cir. 2013).

(ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or

(iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.), including section 10A(m) of such Act (15 U.S.C. 78f(m)), section 1513(e) of title 18, United States Code, and any other law, rule or regulation subject to the jurisdiction of the Commission.[32]

Plaintiff's retaliation claim under the Dodd-Frank Act is an employment-based claim. The information plaintiff has requested regarding Tortoise's certification as a minority or disadvantaged enterprise, or information regarding Tortoise's so-called "covered call strategy" has no bearing on or relevancy to plaintiff's remaining claims. Even if the court adopted plaintiff's suggested-authority out of the District of Colorado regarding the elements of a Dodd-Frank claim (which it declines to do so at this time),[33] plaintiff would only need to show: (1) he reported an alleged violation to the SEC or another entity, or internally to management; (2) he was retaliated against for reporting the alleged violation; (3) the disclosure of the alleged violation was made pursuant to a rule, law or regulation subject to the SEC's jurisdiction; and (4) the disclosure was required or

---

[32] 15 U.S.C. §78u-6(h)(1)(A).

[33] As indicated in the court's order regarding plaintiff's motion for leave to file a second amended complaint, there is a split of authority as to the requirements for qualifying as a "whistleblower" under § 922. The Tenth Circuit has not had the opportunity to address this question. And, the court declined to decide this question in its previous order (ECF doc. 46). Given there was some authority for plaintiff's position that he need not have disclosed information to the SEC to qualify as a whistleblower, the court did not find plaintiff's Dodd-Frank claim futile on that basis. *See Genberg v. Porter*, 935 F.2d 1094, 1106 (D. Colo. 2013).

protected by that rule, law or regulation within the SEC's jurisdiction.[34]   None of the information plaintiff seeks has any bearing whatsoever on the elements of his Dodd-Frank Act claim.   Nowhere does it say that plaintiff must prove the underlying allegations that he allegedly reported.   To do so, would create a "mini-trial" of securities-related issues and waste the time and resources of the parties, nonparties, and the court.

Plaintiff argues that if a protective order is entered and he goes without the information that he seeks, defendants will win a dispositive motion on the Dodd-Frank Act claim.   However, the information plaintiff seeks will have no effect on the outcome of such a motion.   Defendants have already indicated that their arguments on the Dodd-Frank Act claim include that plaintiff does not qualify as a whistleblower because he only reported his complaints internally and that Dodd-Frank does not provide for individual liability, such that plaintiff should not be permitted to name individuals as defendants in this claim.   In any event, the discovery plaintiff seeks from third parties regarding alleged securities-based violations has no relation or relevancy on his narrow Dodd-Frank Act claim and would have no impact on the parties' arguments in a dispositive motion.

In consideration of the foregoing, the court grants defendants' motion for a protective order.   For good cause shown, plaintiff is prohibited from seeking discovery about alleged securities-based improprieties or violations from nonparties that is

---

[34] *Genberg*, 935 F.2d at 1105 (citing *Nollner v. S. Baptist Convention, Inc.*, 852 F.2d 986, 995 (M.D. Tenn. 2012)).

irrelevant to his pending claims and similar to the information requested in the three already-issued subpoenas.

Plaintiff is hereby informed that, within fourteen days after he receives this order via CM/ECF, he may, pursuant to Fed. R. Civ. P. 72 and D. Kan. Rule 72.1.4(a), file written objections to this order in a motion for review of this order. Plaintiff must file any objections within the fourteen-day period if he wants to have appellate review of this order. If plaintiff does not timely file his objections, no court will allow appellate review.

IT IS SO ORDERED.

Dated January 14, 2014 at Kansas City, Kansas.


 s/ James P. O'Hara
James P. O'Hara
U. S. Magistrate Judge

O:\ORDERS\13-2267-DDC-70.docx

13