# 14-4626

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

---

DANIEL BERMAN,

Plaintiff-Appellant,

v.

NEO@OGILVY LLC and WPP GROUP USA, INC.,

Defendants-Appellees.

---

On Appeal from the United States District Court
for the Southern District of New York

---

BRIEF OF THE SECURITIES AND EXCHANGE COMMISSION,
*AMICUS CURIAE* IN SUPPORT OF THE APPELLANT

---

ANNE K. SMALL
General Counsel

MICHAEL A. CONLEY
Deputy General Counsel

WILLIAM K. SHIREY
Assistant General Counsel

STEPHEN G. YODER
Senior Counsel

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-9040
(202) 551-4532 (Yoder)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iv

STATEMENT OF THE ISSUE .......... 1

INTEREST OF THE SECURITIES AND EXCHANGE COMMISSION AND SUMMARY OF ITS POSITION .......... 2

STATEMENT OF THE CASE .......... 4

A. The securities laws recognize that internal company reporting by employees and others is important for deterring, detecting, and stopping unlawful conduct that may harm investors. .......... 4

B. By providing new incentives and protections for individuals to engage in whistleblowing activity, the Dodd-Frank whistleblower program enhances the existing securities-law enforcement scheme, including internal company reporting. .......... 9

1. The Commission carefully calibrated the rules implementing the monetary award component of the whistleblower program to ensure that individuals were not disincentivized from first reporting internally. .......... 9

2. Using its broad rulemaking authority, the Commission adopted a rule clarifying that employment retaliation is prohibited against individuals who engage in any of the whistleblowing activity described in Section 21F(h)(1)(A)(iii)—including making internal reports at public companies of securities fraud violations. .......... 13

STANDARD OF REVIEW .......... 17

ARGUMENT .......... 18

I. Section 21F does not unambiguously demonstrate a Congressional intent to restrict employment anti-retaliation protection to *only* those individuals who provide the Commission with information relating to a violation of the securities laws. .......... 18

II. In light of the ambiguity here, the Commission adopted a reasonable interpretation in Rule 21F-2(b)(1) that warrants judicial deference. ............27

III. Failure to defer to Rule 21F-2(b)(1) could arbitrarily and irrationally deny the employment retaliation protections afforded by Dodd-Frank to individuals who, before coming to the Commission, *first* report potential securities law violations to the U.S. Department of Justice or Self-Regulatory Organizations such as FINRA. ...........................31

CONCLUSION ..........................................................................................37

STATUTORY ADDENDUM ..............................................................Addendum 1

DECISIONAL ADDENDUM ..............................................................Addendum 8

CERTIFICATIONS

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**CASES** **Page**

*Ahmad v. Morgan Stanley & Co.*, 2 F. Supp. 3d 491
(S.D.N.Y. 2014)....................................................................................27

*Asadi v. G.E. Energy (U.S.A.), L.L.C.*, 720 F.3d 620
(5th Cir. 2013) .................................................................. 22, 24, 25, *passim*

*Azim v. Tortoise Capital Advisors, LLC*, No. 13-2267,
2014 WL 707235 (D. Kans. Feb. 24, 2014), *objections overruled*, 2014 WL 4352069 (D. Kans. Sept. 2, 2014) ...............................28

*Banko v. Apple, Inc.*, No. 13-02977, 2013 WL 7394596
(N.D. Cal. Sept. 27, 2013) .........................................................................28

*Bussing v. COR Clearing, LLC*, No. 8:12-cv-238,
2014 WL 2111207 (D. Neb. May 21, 2014) ..........................................28, 35

*Career College Ass'n v. Riley*, 74 F.3d 1265 (D.C. Cir. 1996)..............................18

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
467 U.S. 837 (1984)...........................................................................2, 17

*Connolly v. Remkes*, No. 5:14-CV-01344, 2014 WL 5473144
(N.D. Cal. Oct. 28, 2014) ..........................................................................27

*Egan v. TradingScreen, Inc.*, No. 10 Civ. 8202,
2011 WL 1672066 (S.D.N.Y. May 4, 2011).................................................27

*Ellington v. Giacoumakis*, 977 F. Supp. 2d 42 (D. Mass. 2013).............................27

*Englehart v. Career Educ. Corp.*, No. 8:14-cv-444,
2014 WL 2619501 (M.D. Fla. May 12, 2014) ............................................28

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
561 U.S. 477 (2010)..........................................................................6

**CASES (continued)** **Page**

*Genberg v. Porter*, 935 F. Supp. 2d 1094 (D. Colo. 2013), *appeal dismissed in relevant part*, 566 Fed. App'x 719 (10th Cir. 2014) ....................28

*Haekal v. Refco, Inc.*, 198 F.3d 37 (2d Cir. 1999) ....................17

*Halliburton, Inc. v. Admin. Review Bd.*, No. 13-60323, 2014 WL 5861790 (5th Cir. Nov. 12, 2014) (per curiam) ....................26

*In re Air Cargo Shipping Servs. Antitrust Litig.*, 697 F.3d 154 (2d Cir. 2012) ....................21

*Jones v. SouthPeak Interactive Corp.*, Nos. 13-2399, 14-1765, 2015 WL 309626 (4th Cir. Jan. 26, 2015) ....................26

*Khazin v. TD Ameritrade Holding Corp.*, No. 13-4149, 2014 WL 940703 (D.N.J. Mar. 11, 2014), *aff'd on other grounds*, 773 F.3d 488 (3d Cir. 2014) ....................27

*Kramer v. Trans-Lux Corp.*, No. 11 Civ. 1424, 2012 WL 4444820 (D. Conn. Sept. 25, 2012) ....................28

*Lawson v. Suwannee First & S.S. Co.*, 336 U.S. 198 (1949) ....................28

*Liu v. Siemens, A.G.*, 978 F. Supp. 2d 325 (S.D.N.Y. 2013), *aff'd on other grounds*, 763 F.3d 175 (2d Cir. 2014) ....................23

*McNamee v. Dep't of the Treasury*, 488 F.3d 100 (2d Cir. 1007) ....................17

*Mei Juan Zheng v. Holder*, 672 F.3d 178 (2d Cir. 2012) ....................18

*Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238 (2011) ....................27

*Murray v. UBS Sec., LLC*, No. 12 Civ. 5914, 2013 WL 2190084 (S.D.N.Y. May 21, 2013) ....................27

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644 (2007) ....................17

**CASES (continued)** **Page**


*Nollner v. S. Baptist Convention, Inc.*, 852 F. Supp. 2d 986
(M.D. Tenn. 2012) ....................................................................................28

*Nw. Austin Mun. Util. Dist. No. One v. Holder*,
557 U.S. 193 (2009)............................................................................. 27-28

*N.Y. Pub. Interest Research Group v. Whitman*, 321 F.3d 316
(2d Cir. 2003).....................................................................................17, 18

*Peters v. LifeLock Inc.*, No. 2:14-cv-00576, Dkt. 47
(D. Ariz. Sept. 19, 2014) .........................................................................27

*Philko Aviation, Inc. v. Shacket*, 462 U.S. 406 (1985) ..........................................28

*Rosenblum v. Thomson Reuters (Markets) LLC*,
984 F. Supp. 2d 141 (S.D.N.Y. 2013) .........................................................27

*Sullivan v. Everhart*, 494 U.S. 83 (1990).................................................................18

*United States v. Mead Corp.*, 533 U.S. 218 (2001) ................................................17

*United States v. Wilson*, 503 U.S. 329 (1992) .........................................................35

*Util. Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427 (2014).......................................21

*Verfuerth v. Orion Energy Sys., Inc.*, No. 14-C-352,
2014 WL 5682514 (E.D. Wisc. Nov. 4, 2014)..............................................28

*Wagner v. Bank of Am. Corp.*, No. 12-cv-00381,
2013 WL 3786643 (D. Colo. July 19, 2013), *aff'd on other grounds*, 571 Fed. App'x 698 (10th Cir. 2014) ..................................28

*Yang v. Navigators Group, Inc.*, No. 13-cv-2073,
2014 WL 1870802 (S.D.N.Y. May 8, 2014).................................................27

*Zann Kwan v. Andalex Group* LLC, 737 F.3d 834
(2d Cir. 2013)...........................................................................................23

**STATUTES**

Dodd-Frank Wall Street Reform and Consumer Protection Act,
Pub. L. No. 111-203, 124 Stat. 1376 (2010) ("Dodd-Frank")

Dodd-Frank .......... 2, 3, 8, *passim*
Dodd-Frank §748, 124 Stat. at 1743-44 .......... 20
Dodd-Frank §922, 124 Stat. at 1841-49 .......... 2
Dodd-Frank §924(a), 124 Stat. at 1850 .......... 2, 3

Sarbanes-Oxley Act of 2002, Pub. L. No. 107, 116 Stat. 745
("Sarbanes-Oxley")

Sarbanes-Oxley .......... 6, 7, 14, *passim*
Sarbanes-Oxley §301, 116 Stat. at 775-77 .......... 8
Sarbanes-Oxley §307, 15 U.S.C. §7245 .......... 7, 16, *passim*
Sarbanes-Oxley §404, 15 U.S.C. §7262 .......... 6-7
Sarbanes-Oxley §806, 18 U.S.C. §1514A .......... 8, 16, 25, *passim*

Securities Exchange Act of 1934, 15 U.S.C. 78a, *et seq.*

Section 10A, 15 U.S.C. §78j-1 .......... 5, 6
Section 10A(b), 15 U.S.C. §78j-1(b) .......... 5, 6
Section 10A(m), 15 U.S.C. §78j-1(m) .......... 14, 15, 16
Section 10A(m)(4), 15 U.S.C. §78j-1(m)(4) .......... 7, 19
Section 12, 15 U.S.C. §78*l* .......... 6
Section 15(d), 15 U.S.C. §78*o* .......... 6
Section 21F, 15 U.S.C. §78u-6 .......... 2, 3, 4, *passim*
Section 21F(a), 15 U.S.C. §78u-6(a) .......... 9
Section 21F(a)(6), 15 U.S.C. §78u-6(a)(6) .......... 19, 20, 26
Section 21F(b), 15 U.S.C. §78u-6(b) .......... 9, 30, 31
Section 21F(c), 15 U.S.C. §78u-6(c) .......... 9, 30, 31
Section 21F(d)(2)(A), 15 U.S.C. §78u-6(d)(2)(A) .......... 1, 24
Section 21F(h)(1), 15 U.S.C. §78u-6(h)(1) .......... 1, 13, 15, *passim*
Section 21F(h)(1)(A), 15 U.S.C. §78u-6(h)(1)(A) .......... 1-2 13, 14, *passim*
Section 21F(h)(1)(A)(i),
15 U.S.C. §78u-6(h)(1)(A)(i) .......... 14, 19, *passim*
Section 21F(h)(1)(A)(ii),
15 U.S.C. §78u-6(h)(1)(A)(ii) .......... 14, 19, *passim*

**STATUTES (continued)** **Page**

Securities Exchange Act of 1934, 15 U.S.C. 78a, *et seq.* (continued)

Section 21F(h)(1)(A)(iii),
15 U.S.C. §78u-6(h)(1)(A)(iii) ................................ 14, 15, 16, *passim*
Section 21F(h)(1)(B), 15 U.S.C. §78u-6(h)(1)(B) ................................14, 23
Section 21F(h)(1)(B)(i),
15 U.S.C. §78u-6(h)(1)(B)(i) .........................................................14
Section 21F(h)(1)(C), 15 U.S.C. §78u-6(h)(1)(C) ......................................14
Section 21F(h)(2), 15 U.S.C. §78u-6(h)(2) ..................................................24
Section 21F(j), 15 U.S.C. §78u-6(j) ............................................................9

Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67,
§301, 109 Stat. 737, 762-64...........................................................................5

Section 23(h)(1) of the Commodity Exchange Act,
7 U.S.C. §26(h)(1) .......................................................................................20

18 U.S.C. §1341..............................................................................................8
18 U.S.C. §1343..............................................................................................8
18 U.S.C. §1344..............................................................................................8
18 U.S.C. §1348..............................................................................................8
18 U.S.C. §1513(e) ...........................................................................13, 14, 19
18 U.S.C. §1514A(a)..........................................................................8, 32, 34
18 U.S.C. §1514A(a)(1)(C) ............................................................................8
18 U.S.C. §1514A(c)(1).................................................................................26
18 U.S.C. §1514A(c)(2)(C) ...........................................................................26

**RULES**

Rules under the Securities Exchange Act of 1934, 17 C.F.R. Part 240

Rule 10A-3(b)(3), 17 C.F.R. §240.10A-3(b)(3)............................................8
Rule 17a-5(h)(2), 17 C.F.R. §240.17a-5(h)(2) ..............................................8
Rule 21F-2(b)(1), 17 C.F.R. §240.21F-2(b)(1) .................... 4, 14, 15, *passim*
Rule 21F-2(b)(1)(ii), 17 C.F.R. §240.21F-2(b)(1)(ii) ..................................15
Rule 21F-2(b)(2), 17 C.F.R. §240.21F-2(b)(2) ............................................15
Rule 21F-4(b)(4), 17 C.F.R. §240.21F-4(b)(4) ............................................13
Rule 21F-4(b)(7), 17 C.F.R. §240.21F-4(b)(7) ................................12, 20, 32

**RULES (continued)**

Rules under the Securities Exchange Act of 1934, 17 C.F.R. Part 240 (continued)

Rule 21F-4(c)(3), 17 C.F.R. §240.21F-4(c)(3) .......... 12
Rule 21F-6(a)(4), 17 C.F.R. §240.21F-6(a)(4) .......... 12
Rule 21F-6(b)(3), 17 C.F.R. §240.21F-6(b)(3) .......... 12

Rules under the Investment Advisers Act of 1940, 17 C.F.R. Part 275

Rule 204A-1(a)(4), 17 C.F.R. §275.204A-1(a)(4) .......... 8
Rule 206(4)-2(a)(6)(ii), 17 C.F.R. §275.206(4)-2(a)(6)(ii) .......... 8

Rule 38a-1 under the Investment Company Act of 1940, 17 C.F.R. §270.38a-1(a)(4) .......... 8

Rule 3(d)(2), Standards of Professional Conduct for Attorneys Appearing and Practicing Before the Commission in the Representation of an Issuer, 17 C.F.R. §205.3(d)(2) .......... 7

Procedures for Handling Retaliation Complaints under Section 806 of the Sarbanes-Oxley Act of 2002, 29 C.F.R. Part 1980

29 C.F.R. §1980 .......... 26
29 C.F.R. §1980.105 .......... 26
29 C.F.R. §1980.106-110 .......... 26

Fed. R. App. P. 29(a) .......... 2

**LEGISLATIVE MATERIALS**

H.R. 4173, 111th Cong. §7203(a) (as passed by House Dec. 11, 2009) .......... 20

H.R. 4173, 111th Cong. §922(a) (as passed by Senate May 20, 2010) .......... 20

H.R. 4173, 111th Cong. §922(a) (conference base text) .......... 20

**LEGISLATIVE MATERIALS (continued)**

*SEC and Corporate Audits (Part 6): Hearings on Detecting and Disclosing Financial Fraud Before Subcomm. on Oversight and Investigations of the Comm. on Energy and Commerce*, 99th Cong. 345 (1986) (testimony of John Shad, Chairman) ........................ 6

**ADMINISTRATIVE MATERIALS**

Proposed Rules for Implementing the Whistleblower Provisions of Section 21F of the Securities Exchange Act of 1934, 75 Fed. Reg. 70488 (Nov. 17, 2010) ...................................... 3, 5, 10, *passim*

Report of Investigation Pursuant to Section 21(A) of the Securities Exchange Act of 1934 and Commission Statement on the Relationship of Cooperation to Agency Enforcement Decisions, 2001 WL 1301408 (Oct. 23, 2001)..................................................................5

*Request for Comment on NASDAQ Petition*, 68 Fed. Reg. 27722 (May 20, 2003) 36

Securities Whistleblower Incentives and Protections, 76 Fed. Reg. 34300 (June 13, 2011).......................................... 3, 4, 5, *passim*

**MISCELLANEOUS**

Orly Lobel, *Lawyering Loyalties: Speech Rights and Duties Within Twenty-First-Century New Governance*, 77 Fordham L. Rev. 1245 (2009)..........................................................................................16, 17

No. 14-4626

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

DANIEL BERMAN,

Plaintiff-Appellant,

v.

NEO@OGILVY LLC and WPP GROUP USA, INC.,

Defendants-Appellees.

On Appeal from the United States District Court
for the Southern District of New York

BRIEF OF THE SECURITIES AND EXCHANGE COMMISSION,
*AMICUS CURIAE* IN SUPPORT OF THE APPELLANT

## STATEMENT OF THE ISSUE

The Securities and Exchange Commission ("Commission"), after notice-and-comment rulemaking, issued a rule to clarify an ambiguity in the whistleblower employment anti-retaliation provisions in Section 21F(h)(1) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-6(h)(1). The Commission's rule interpreted the anti-retaliation protections to extend to any individual who engages in the whistleblowing activities described in Section 21F(h)(1)(A), irrespective of whether the individual makes a separate report to the

Commission. Is the Commission's rule entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)?

## INTEREST OF THE SECURITIES AND EXCHANGE COMMISSION AND SUMMARY OF ITS POSITION

The Commission—the agency principally responsible for the administration of the federal securities laws—submits this brief as *amicus curiae* pursuant to Fed. R. App. P. 29(a) to address an important securities law issue presented in this appeal.

Congress, in Section 922 of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), Pub. L. No. 111-203, 124 Stat. 1376, 1841-49 (2010), amended the Exchange Act to add Section 21F, entitled "Securities Whistleblower Incentives and Protection" and codified at 15 U.S.C. §78u-6. Section 21F directs the Commission to pay awards to individuals whose reports to the Commission about violations of the securities laws result in successful Commission enforcement actions, and prohibits employers from retaliating against individuals in the terms and conditions of their employment when they engage in certain specified whistleblowing activities. (The award program and anti-retaliation protections are referred to collectively herein as "the whistleblower program.")

In May 2011, at Congress's direction, the Commission issued final rules "implementing the provisions of Section 21F." *See* Dodd-Frank §924(a), 124 Stat.

at 1850. Throughout the rulemaking process, the Commission considered the "significant issue" of how to ensure that the whistleblower program does not undermine the willingness of individuals to make whistleblower reports internally at their companies before they make reports to the Commission. Securities Whistleblower Incentives and Protections ("Adopting Release"), 76 Fed. Reg. 34300, 34300, 34323 (June 13, 2011); Proposed Rules for Implementing the Whistleblower Provisions of Section 21F of the Securities Exchange Act of 1934 ("Proposing Release"), 75 Fed. Reg. 70488, 70488 (Nov. 17, 2010). The Commission's final rules were carefully calibrated to achieve this objective by providing "strong incentives" for individuals in appropriate circumstances to report internally in the first instance. Adopting Release at 34301, 34322.[1]

---

[1] The Commission recognized that internal reporting is not always appropriate, and the decision whether to do so (either prior to reporting to the Commission or at all) is best left for whistleblowers to determine based on the particular facts and circumstances. *See* Adopting Release at 34327. Among the considerations a whistleblower would likely consider are: (i) whether the employer has an anonymous reporting system; (ii) whether the potential misconduct involves upper-level management; (iii) whether the misconduct is still ongoing and poses a risk of sufficiently significant harm to investors that immediate reporting to the Commission is more appropriate; and (iv) whether the employer may be prone to bad faith conduct such as the destruction of evidence. *Id.* at 34326.

One of those rules—Exchange Act Rule 21F-2(b)(1), 17 C.F.R. §240.21F-2(b)(1)—is at issue in this litigation.[2] The Commission has a strong programmatic interest in demonstrating that the rule's reasonable interpretation of certain ambiguous statutory language was a valid exercise of the Commission's broad rulemaking authority under Section 21F. This interest arises for two related reasons. *First*, the rule helps protect individuals who choose to report potential violations internally in the first instance (*i.e.*, before reporting to the Commission), and thus is an important component of the overall design of the whistleblower program. *Second*, if the rule were invalidated, the Commission's authority to pursue enforcement actions against employers that retaliate against individuals who report internally would be substantially weakened.

## STATEMENT OF THE CASE

### A. The securities laws recognize that internal company reporting by employees and others is important for deterring, detecting, and stopping unlawful conduct that may harm investors.

Companies' processes for the internal reporting of violations of law and other misconduct "play an important role in achieving compliance with the securities laws." Adopting Release at 34325; *accord id.* at 34324. Among other things, these internal reporting processes can help companies to promptly identify, correct, and self-report unlawful conduct by officers, employees, or others

---

[2] Each rule designated in this brief as Exchange Act Rule 21F-___ is codified at 17 C.F.R. §240.21F-___.

connected to the company. *See generally* Proposing Release at 70496. In this way, "reporting through internal compliance procedures can complement or otherwise appreciably enhance [the Commission's] enforcement efforts … ." Adopting Release at 34359 n.450; *see also* Report of Investigation Pursuant to Section 21(A) of the Securities Exchange Act of 1934 and Commission Statement on the Relationship of Cooperation to Agency Enforcement Decisions, 2001 WL 1301408, at *1 (Oct. 23, 2001) ("When businesses seek out, self-report and rectify illegal conduct, and otherwise cooperate with Commission staff, large expenditures of government and shareholder resources can be avoided and investors can benefit more promptly.").[3]

Recognizing the significant role that internal company reporting can play, Congress for nearly two decades has enacted a series of amendments to the securities laws to encourage, and in some instances to require, internal reporting of potential misconduct. In 1995, Congress amended the Exchange Act to add Section 10A(b), entitled "Required Response to Audit Discoveries." *See* Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, §301, 109 Stat. 737, 762-64. Section 10A(b) imposes a series of internal company disclosure obligations on a registered public accounting firm that, during the course of

[3] To be clear, as the Commission has advised, "while internal compliance programs are valuable, they are *not substitutes* for strong law enforcement." Adopting Release at 34326 (emphasis added).

conducting an audit of a public company required by the Exchange Act, discovers that an illegal act connected to the company has occurred.[4] Section 10A(b) describes a process of disclosure by the auditor to the Commission *after* the auditor's internal disclosures occur and certain other conditions are met, including a failure on the company's part to take an appropriate response.[5]

In 2002, Congress enacted the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley"), Pub. L. No. 107-204, 116 Stat. 745, in response to "a series of celebrated accounting debacles"[6] involving companies such as Enron and WorldCom. As part of Sarbanes-Oxley, Congress enacted several additional provisions related to the internal company reporting of wrongdoing.[7] In Section 307, for example,

---

[4] This brief uses the term "public company" to refer to a company with a class of securities registered under Section 12 of the Exchange Act and those required to file reports under Section 15(d) of that Act.

[5] An early version of the legislative proposal that became Section 10A would have required auditors to report immediately to the Commission. SEC Chairman John Shad testified before Congress at the time in opposition to such a reporting requirement. *See SEC and Corporate Audits (Part 6): Hearings on Detecting and Disclosing Financial Fraud Before Subcomm. on Oversight and Investigations of the Comm. on Energy and Commerce*, 99th Cong. 345 (1986) ("[W]hy not give management an opportunity to respond to suspicions and take corrective action?").

[6] *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 484 (2010).

[7] A principal aim of Sarbanes-Oxley was to promote the establishment of robust internal corporate governance mechanisms and processes that could promptly identify and remedy violations. *See, e.g.*, Sarbanes-Oxley §404, 15

Congress directed the Commission to issue rules requiring attorneys appearing and practicing before the Commission in the representation of public companies "to report evidence of a material violation" of the securities laws or any "breach of fiduciary duty or similar violation by the company or any agent thereof" to specified company officials. Sarbanes-Oxley §307, 15 U.S.C. §7245. These attorneys are not required to make reports to the Commission and, indeed, may often be precluded from doing so as a result of their ethical obligations to their clients.[8] Similarly, Sarbanes-Oxley added Exchange Act Section 10A(m)(4), which required the Commission, by rule, to direct that national securities exchanges and national securities associations require that audit committees of listed companies establish internal company procedures allowing employees and others to submit complaints "regarding accounting, internal accounting controls, or auditing matters," and to report anonymously "concerns regarding questionable

---

U.S.C. §7262 (requiring internal compliance systems and an annual audit by outside auditors).

[8] Only in limited situations—where an attorney reasonably believes it is "necessary" to report to the Commission to prevent a securities law violation that will cause substantial financial injury, or to correct past violations of similar severity where the attorney's services were used—*may* attorneys report evidence of a material violation to the Commission. 17 C.F.R. §205.3(d)(2). But even when such disclosure to the Commission is permitted, an attorney will typically need to report internally *first* in order to satisfy the requirement that disclosure to the Commission may be necessary.

accounting or auditing matters." *See* Sarbanes-Oxley §301, 116 Stat. at 775-77; 17 C.F.R. §240.10A-3(b)(3).

Further, Section 806 of Sarbanes-Oxley (as later amended by Dodd-Frank) prohibited public companies, certain related persons or entities, and nationally recognized statistical rating organizations from engaging in employment retaliation against an employee who makes certain whistleblower disclosures concerning, among other things, securities fraud (18 U.S.C. §1348), bank fraud (*id.* §1344), mail fraud (*id.* §1341), wire fraud (*id.* §1343), or any violation of a Commission rule or regulation. 18 U.S.C. §1514A(a). The whistleblower disclosures are protected if they are made to "a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct)," or to Congress or certain governmental agencies (including the Commission). *Id.* §1514A(a)(1)(C).[9]

[9] The Commission has periodically adopted rules and regulations requiring internal reporting in certain circumstances either within or among regulated entities. *See, e.g.*, 17 C.F.R. §270.38a-1(a)(4) (requiring the chief compliance officer of a mutual fund to report the details of any material compliance matters to the fund's board); 17 C.F.R. §240.17a-5(h)(2) (requiring the auditor of a broker-dealer to report material inadequacies to the chief financial officer);17 C.F.R. §275.204A-1(a)(4) (requiring each investment adviser to establish a code of ethics requiring supervised persons to report any violations thereof to the chief compliance officer); 17 C.F.R. §275.206(4)-2(a)(6)(ii) (requiring each investment adviser to obtain an internal control report with respect to custody of client assets maintained by the investment adviser or an affiliate).

### B. By providing new incentives and protections for individuals to engage in whistleblowing activity, the Dodd-Frank whistleblower program enhances the existing securities-law enforcement scheme, including internal company reporting.

As noted above, Dodd-Frank established the Commission's new whistleblower program in 2010 by adding Section 21F to the Exchange Act. Section 21F expressly authorized the Commission "to issue such rules and regulations as may be necessary or appropriate to implement the provisions of this section consistent with the purposes of this section." Exchange Act §21F(j). In May 2011, the Commission used that broad authority to adopt final rules implementing both the monetary award and employment anti-retaliation aspects of the whistleblower program.

#### 1. The Commission carefully calibrated the rules implementing the monetary award component of the whistleblower program to ensure that individuals were not disincentivized from first reporting internally.

Section 21F directs the Commission to pay awards, subject to certain limitations and conditions, to individuals who voluntarily provide the Commission with original information about a violation of the securities laws that leads to the successful enforcement of an action brought by the Commission resulting in monetary sanctions exceeding $1,000,000.[10] *See* Exchange Act §21F(a)-(c).

---

[10] As discussed *infra* Argument Part III, Section 21F also provides for awards where the same original information that led to a successful Commission enforcement action also led to a successful enforcement action by certain other

Further, Section 21F affords the Commission discretion to set the amount of each award within a range of 10 percent to 30 percent of the total monetary sanctions collected. *Id.*

A principal challenge the Commission faced in crafting rules to implement the award program was ensuring that employees and others were not dissuaded from reporting internally due to the possibility of a monetary award. *See* Proposing Release at 70488 (expressing the Commission's desire "not to discourage whistleblowers who work for companies that have robust compliance programs [from] *first* report[ing] the violation to appropriate company personnel") (emphasis added). Were this to happen, the Commission recognized, the result could be a reduction in the "effectiveness of a company's existing compliance, legal, audit and similar internal processes for investigating and responding to potential violations of the Federal securities laws," which in turn could weaken corporate compliance with the securities laws. *Id.* at 70488.[11] The Commission

---

statutorily specified law enforcement and regulatory authorities, including the U.S. Department of Justice and the various self-regulatory organizations that are under the Commission's supervision (*e.g.*, FINRA).

[11] *Cf.* Proposing Release at 70516 (explaining that "allow[ing] a company a reasonable period of time to investigate and respond to potential securities laws violations (or at least begin an investigation) prior to [an individual making a report] to the Commission" is "consistent with the Commission's efforts to encourage companies to create and implement strong corporate compliance programs").

also recognized that "reporting through internal compliance procedures can complement or otherwise appreciably enhance [its] enforcement efforts in appropriate circumstances." Adopting Release at 34359 n.450.

> For instance, the subject company may at times be better able to distinguish between meritorious and frivolous claims, and may make such findings available for the Commission. This would be particularly true in instances where the reported matter entails a high level of institutional or company-specific knowledge and/or the company has a well-functioning internal compliance program in place. Screening allegations through internal compliance programs may limit false or frivolous claims, provide the entity an opportunity to resolve the violation and report the result to the Commission, and allow the Commission to use its resources more efficiently.

*Id.*[12]

Accordingly, the Commission "tailored the final rules to provide whistleblowers who are otherwise pre-disposed to report internally, but who may also be affected by financial incentives, with additional economic incentives to continue to report internally" in the first instance.[13] *Id.* at 34360. The final rules seek to do this in three principal ways:

---

[12] *See also* Proposing Release at 70516 (explaining that allowing individuals to first report internally "provides a mechanism by which some of th[e] erroneous [tips] may be eliminated before reaching the Commission," and that otherwise "a large number of tips of varying quality [could] caus[e] the Commission to incur costs to process and validate the information").

[13] Many commenters during the rulemaking, particularly industry-affiliated commenters, urged the Commission to encourage or require individuals to report internally before reporting to the Commission. *See, e.g.*, Adopting Release at

- An individual "who reports internally can collect a whistleblower award from the Commission if his internal report to the company or entity results in a successful covered action." *Id.* (discussing Exchange Act Rule 21F-4(c)(3)).

- An individual "who *first* reports [pursuant] to an entity's internal whistleblower, legal, or compliance procedures for reporting allegations of possible violations of law and within 120 days reports to the Commission" will be treated for purposes of an award as "if [the submission to the Commission] had been made at the earlier internal reporting date." *Id.* at 34322 (emphasis added) (discussing Exchange Act Rule 21F-4(b)(7)). "This means that even if, in the interim, another whistleblower has made a submission that caused the [Commission's] staff to begin an investigation into the same matter, the [individual] who had first reported internally will be considered the first whistleblower who came to the Commission … ." *Id.*

- "In addition, the final rules provide that when determining the amount of an award, the Commission will consider as a plus-factor the whistleblower's participation in an entity's internal compliance procedures." *Id.* at 34360 (discussing Exchange Act Rule 21F-6(a)(4)).[14] The ability to adjust an award upward based on internal reporting, the Commission explained, would "allow [the Commission] to account for a reduced monetary sanction … where the internal reporting potentially resulted in a lower monetary sanction" because the company responded to the internal report by engaging in remediation, self-reporting and cooperating with the Commission. *Id.* at 34360 n.455.

Beyond the tailored financial incentives that the Commission crafted to encourage individuals to report internally in appropriate situations, the

---

34326 n.230 (citing comment letters from, among others, the Business Roundtable and the U.S. Chamber of Commerce).

[14] Relatedly, the Commission's rules also provide that "a whistleblower's interference with internal compliance and reporting is a factor that can decrease the amount of an award." Adopting Release at 34301, 34331 (discussing Exchange Act Rule 21F-6(b)(3)).

final rules also require that officers, directors, trustees, and partners, as well as other specified personnel having internal audit or compliance responsibilities, must in certain instances *first* internally disclose the information about potential securities law violations and then wait 120 days before reporting the information to the Commission. *See* Exchange Act Rule 21F-4(b)(4). The Commission determined that this restriction was necessary to discourage "whistleblower submission[s] [that] might undermine the proper operation of internal compliance systems" that companies have established for responding to violations of law. Adopting Release at 34317.

**2. Using its broad rulemaking authority, the Commission adopted a rule clarifying that employment retaliation is prohibited against individuals who engage in any of the whistleblowing activity described in Section 21F(h)(1)(A)(iii)—including making internal reports at public companies of securities fraud violations.**

Section 21F(h)(1) is designed to protect employees who engage in certain specified whistleblowing activities. It does this in two significant ways.

*First*, subparagraph (A) seeks to *prevent* employment retaliation by placing employers on notice that they may not retaliate against employees who engage in certain whistleblowing activity. This is clear from the express terms of the subparagraph, which is drafted as a prohibition directed to employers:

> (A) In General. No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner

> discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower—
>
> (i) in providing information to the Commission in accordance with this section;
>
> (ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or
>
> (iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 *et seq.*), this chapter [*i.e.*, the Exchange Act], including section 78j-1(m) of this title [*i.e.*, Section 10A(m) of the Exchange Act], section 1513(e) of Title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission.[15]

*Second*, subparagraphs (B) and (C) address the legal remedies that employees can pursue against employers who have failed to heed subparagraph (A)'s prohibition.[16]

The Commission, employing its broad rulemaking authority under Section 21F(j), adopted two clarifying rules related to the prohibition in subparagraph (A).

---

[15] As discussed *infra* 19-20, the disclosures listed in clause (iii) include the internal company reporting disclosures described above in Part A.

[16] Subparagraph (B) provides a cause of action in federal district court for any "individual who alleges discharge or other discrimination in violation of subparagraph (A)." Exchange Act §21F(h)(1)(B)(i). Subparagraph (C) provides that relief in a successful action shall include reinstatement, two times back pay, compensation for litigation costs, expert witness fees, and reasonable attorneys' fees. *Id.* §21F(h)(1)(C).

The first rule expressly stated that the Commission possesses authority to bring civil enforcement actions and proceedings against employers who violate the retaliation prohibition. *See* Exchange Act Rule 21F-2(b)(2).

The second rule, Exchange Act Rule 21F-2(b)(1), clarified that the retaliation prohibition in subparagraph (A) protects any employee who engages in any of the whistleblowing activities specified in clauses (i)-(iii) above, irrespective of whether the employee separately reports the information to the Commission. It provides in pertinent part:

> For purposes of the anti-retaliation protections afforded by Section 21F(h)(1) of the Exchange Act (15 U.S.C. 78u-6(h)(1)), you are a whistleblower if:
>
> (ii) You provide that information in a manner described in Section 21F(h)(1)(A) of the Exchange Act (15 U.S.C. 78u-6(h)(1)(A)).

17 C.F.R. §240.21F-2(b)(1)(ii).

As the Commission explained in the adopting release, this rule reflects the fact that clause (iii) prohibits employers from retaliating against "individuals who report to persons or governmental authorities *other than the Commission*." Adopting Release at 34304 (emphasis in original). In particular, clause (iii) prohibits employers from retaliating against employees who make the "disclosures that are required or protected under the Sarbanes-Oxley Act" or the other securities laws, including the internal company disclosures described above in Part A. For example:

- Disclosures that Sarbanes-Oxley Section 307 requires attorneys for the public company to make to the company's general counsel regarding potential evidence of a material violation of the securities laws or a breach of fiduciary duty by a corporate director;

- Disclosures to an audit committee pursuant to Section 10A(m) of the Exchange Act concerning "questionable accounting or auditing matters" at a public company; and

- Disclosures protected under Sarbanes-Oxley Section 806 to a supervisor or compliance official at a public company concerning possible securities fraud, wire fraud, bank fraud, or mail fraud.

Significantly, by clarifying that the prohibition on employment retaliation extends to individuals who report internally in instances such as these (irrespective of whether they have reported to the Commission), Rule 21F-2(b)(1) complements the overall goal of the whistleblower program rulemaking to maintain incentives for individuals to first report internally in appropriate circumstances. In the adopting release, the Commission recognized that the prohibition on employment retaliation would help preserve these incentives for internal reporting, since "[e]mployees who report internally in this manner will have anti-retaliation employment protection to the extent provided for by [Section 21F(h)(1)(A)(iii)], which incorporates the broad anti-retaliation protections of Sarbanes-Oxley Section 806." Adopting Release at 34325 n.223. *See generally* Orly Lobel, *Lawyering Loyalties: Speech Rights and Duties Within Twenty-First-Century New Governance*, 77 FORDHAM L. REV. 1245, 1250 (2009)

("[I]nternal protections are particularly crucial in view of research findings that … employees are more likely to choose internal reporting systems.").

## STANDARD OF REVIEW

"The interpretation of a statute by a regulatory agency charged with its administration is entitled to deference if it is a permissible construction of the statute." *Haekal v. Refco, Inc.*, 198 F.3d 37, 41 (2d Cir. 1999). *See also United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001) ("administrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority"). Consideration of whether an agency interpretation is permissible involves two steps. *First*, this Court considers whether there is an "unambiguously expressed intent of Congress" on "the precise question at issue." *McNamee v. Dep't of the Treasury*, 488 F.3d 100, 105 (2d Cir. 2007) (quoting *Chevron*, 467 U.S. at 842-43) (internal quotation marks omitted). A "fundamental ambiguity" arises where two statutory provisions present "seemingly categorical—and, at first glance, irreconcilable—legislative commands," thereby affording the agency discretion to "harmonize[]" the provisions. *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 661-73 (2007); *accord N.Y. Pub. Interest Research Group v. Whitman*, 321 F.3d

316, 327-29 (2d Cir. 2003); *Career College Ass'n v. Riley*, 74 F.3d 1265, 1271-72 (D.C. Cir. 1996).

*Second*, if the statute is silent or ambiguous with respect to the specific issue, this Court determines whether the agency's interpretation is reasonable, which means the interpretation is rational and not inconsistent with the statute. *See, e.g.*, *Sullivan v. Everhart*, 494 U.S. 83, 89 (1990). To find an agency's interpretation rational, this Court "need not conclude that the agency construction was the only one it permissibly could have adopted" or "even the reading [this Court] would have reached if the question initially had arisen in a judicial proceeding." *Mei Juan Zheng v. Holder*, 672 F.3d 178, 183-84 (2d Cir. 2012) (internal quotation omitted).

## ARGUMENT

### I. Section 21F does not unambiguously demonstrate a Congressional intent to restrict employment anti-retaliation protection to *only* those individuals who provide the Commission with information relating to a violation of the securities laws.

Congress did not unambiguously limit the employment anti-retaliation protections in Section 21F(h)(1) to only those individuals who provide the Commission with information relating to a securities law violation. Rather, there is ambiguity on this issue given the considerable tension between clause (iii) of Section 21F(h)(1)(A), which as discussed above lists a broad array of

whistleblowing activity to entities and persons other than just the Commission, and Section 21F(a)(6), which defines "whistleblower."

To appreciate the significant tension between these two provisions, it is useful to first examine the language and structure of Section 21F(h)(1)(A). As quoted in full *supra* 13-14, Section 21F(h)(1)(A) prohibits an employer from retaliating against a whistleblower: (i) for "providing information to the Commission in accordance with this section"; (ii) for assisting in an investigation or action of the Commission "based upon or related to such information"; or (iii) for "making disclosures that are required or protected under" Sarbanes-Oxley, the Exchange Act, 18 U.S.C. §1513(e), "and any other law, rule, or regulation subject to the jurisdiction of the Commission."

As the quoted language makes evident, clauses (i) and (ii), together, protect individuals for whistleblowing to the Commission about securities law violations. But the anti-retaliation protection that clause (iii) affords reaches beyond just disclosures involving securities law violations and disclosures to the Commission. It covers, among other things, an employee's submission to a public company's audit committee about questionable accounting practices (including those questionable practices that do not rise to the level of a securities law violation) under Section 10A(m)(4) of the Exchange Act, or an in-house counsel's disclosure

under Section 307 of Sarbanes-Oxley about a potential breach of the CEO's fiduciary duty.[17]

Yet, the interplay of Section 21F(h)(1)(A) with the definition of "whistleblower" in Section 21F(a)(6) may suggest a different result. Section 21F(h)(1)(A) protects "a whistleblower in the terms and conditions of employment," and Section 21F(a)(6) in turn defines a "whistleblower" as "any individual who provides … information relating to a violation of the securities law to the Commission." If Section 21F(a)(6)'s narrow whistleblower definition is read as a limitation on the overall scope of Section 21F(h)(1)(A), the disclosures protected under clause (iii) would be significantly restricted. Specifically, an individual would be protected for making one of the whistleblower disclosures identified in clause (iii) *only if* two preconditions are met:

---

[17] The legislative history adds no clarity concerning Congress's intention in adding clause (iii) to Section 21F(h)(1)(A). Indeed, the provision was added relatively late in the Dodd-Frank legislative process; it was not included either in the original version of the bill that passed the House, *see* H.R. 4173, 111th Cong. §7203(a) (as passed Dec. 11, 2009), or in the version that initially passed the Senate, *see* H.R. 4173, 111th Cong. §922(a) (as passed May 20, 2010). The language first appeared in the base conference committee draft that the Senate in May 2010 approved for use in the Dodd-Frank conference committee, *see* H.R. 4173, 111th Cong. §922(a) (conference base text), and it remained in the final version of the committee bill that the House and Senate subsequently approved. Notably, the nearly identical statutory provision of Dodd-Frank that authorized a whistleblower program for the Commodity Futures Trading Commission does not include language comparable to clause (iii). *See* Dodd-Frank §748, 124 Stat. at 1743-44 (enacting employment anti-retaliation protections as new Section 23(h)(1) to the Commodity Exchange Act, codified at 7 U.S.C. §26(h)(1)).

(1) the individual has separately submitted that same information to Commission, and

(2) that information involves a securities law violation.

But this reading raises an immediate question: If Congress had actually intended to protect only those "required or protected" disclosures that satisfy these two conditions, why would Congress craft clause (iii) to unnecessarily suggest that it protects a much broader class of disclosures than it actually does? Surely Congress could have been more explicit and more direct if it in fact intended to protect only those disclosures that involve securities law violations, and only if the employee has made a separate disclosure to the Commission. *See Util. Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427, 2441 (2014) ("[T]he presumption of consistent usage readily yields to context, and a statutory term—even one defined in the statute—may take on distinct characters from association with distinct statutory objects calling for different implementation strategies.") (quotations omitted). *See also In re Air Cargo Shipping Servs. Antitrust Litig.*, 697 F.3d 154, 163 (2d Cir. 2012) (rejecting "mechanical use of a statutory definition that would destroy one of the major purposes of enacting the provision") (quotation omitted).

That Congress did not unambiguously intend such a result becomes apparent by considering the bizarre consequences that such a narrow reading produces. With one possible exception, clause (iii) becomes superfluous. If an employer knows that an individual has made a disclosure listed in clause (iii), such as an

internal report about a potential securities fraud violation, and the employer is also aware that the individual has provided the same information to the Commission, then as a practical matter the individual will be protected from retaliation under clauses (i) and (ii). An employer will not be able to disaggregate the whistleblowing to the Commission from the internal whistleblowing so as persuasively to claim that any retaliation was solely in connection with the latter. Thus, where an employer knows that an individual has reported to the Commission, clauses (i) and (ii) would already sufficiently protect the individual from retaliation should the individual also wish to make the disclosures specified in clause (iii).

That leaves only one situation where clause (iii) might conceivably have independent utility—where the employer, unaware that the individual had already reported to the Commission, takes an adverse employment action against the employee for a disclosure listed in clause (iii). Although the Fifth Circuit has reasoned that this potential scenario saves clause (iii) from being superfluous under the narrow reading of Section 21F(h)(1)'s employment anti-retaliation protection, *Asadi v. G.E. Energy (U.S.A.), L.L.C.*, 720 F.3d 620, 627-28 (5th Cir. 2013), that is far from clear for two reasons. *First*, as discussed above, subparagraph (A) principally operates as a prohibition directed to employers; it seeks to *prevent* retaliation by placing employers on notice that they may not take adverse

employment action against employees who engage in certain whistleblowing activity. But under the scenario posited by the *Asadi* court, clause (iii) would be utterly ineffective as a preventive measure. Put simply, because in this scenario employers would not know that a report was made to the Commission, clause (iii) would have no appreciable effect in deterring employers from taking adverse employment action for internal reports or the other disclosures listed in clause (iii).

*Second*, it is unlikely that an employee who suffers an adverse employment action in this situation could even rely on clause (iii) to successfully pursue a private action against the employer under Section 21F(h)(1)(B). Whether an individual's disclosures constitute a "protected activity" under the Fifth Circuit's narrow reading of clause (iii) would turn on whether the individual has made a separate disclosure to the Commission. But if an employer is genuinely unaware that the employee has separately disclosed to the Commission, any adverse employment action that the employer takes would appear to lack the requisite retaliatory intent—*i.e.*, the intent to punish the employee for engaging in a protected activity.[18] *Cf. Zann Kwan v. Andalex Group* LLC, 737 F.3d 834, 844 (2d

---

[18] As at least one district court has recognized, the alternative would be to construe the anti-retaliation provision to impose strict liability on an employer (*i.e.*, intent would not be an element of a retaliation claim). *See Liu v. Siemens, A.G.*, 978 F. Supp. 2d 325, 332 (S.D.N.Y. 2013), *aff'd on other grounds*, 763 F.3d 175 (2d Cir. 2014). But we are aware of no precedent for treating an employment anti-retaliation provision as a strict liability scheme.

Cir. 2013) (to establish employment retaliation claim, plaintiff must show "defendant's knowledge of the protected activity" and "a causal connection between the protected activity and the adverse employment action") (internal quotation omitted).[19]

This examination of the relevant statutory language demonstrates, at a minimum, considerable tension and inconsistency within the text, thus revealing that Congress did not unambiguously express an intent to limit the employment anti-retaliation protections under Section 21F(h)(1) to only those individuals who report securities law violations to the Commission.

Although the Fifth Circuit reached a contrary conclusion in *Asadi*, the court's holding that the statutory language compels the narrow reading described above is based on a flawed understanding of the statutory scheme. The court approached Section 21F as though its sole purpose is "to require individuals to report information to the SEC to qualify as a whistleblower." *Asadi*, 720 F.3d at 630. But this fails to consider the role that Section 21F occupies within the broader securities-law framework, particularly the internal reporting processes that

---

[19] A further anomaly resulting from this interpretation is that the individual, in order to successfully maintain a retaliation claim, would be required to "out" himself as someone who reported information to the Commission. This conflicts with Congress's strong desire to shield a whistleblower's identity from public disclosure to the fullest extent possible. *See* Exchange Act §21F(h)(2) (confidentiality provisions); *see also id.* §21F(d)(2)(A) (permitting anonymous disclosures to the Commission).

Congress has previously established. As discussed *infra* Part II, the Commission reasonably chose to interpret clause (iii) of Section 21F(h)(1)(A) against that broader framework, construing the statute to afford the same employment anti-retaliation protections for individuals regardless of whether they report to the Commission under the new procedures established by Section 21F or instead make the disclosures "required or protected" under the other provisions of the securities laws.

The Fifth Circuit also erroneously believed that its interpretation was necessary to avoid rendering the private cause of action under Sarbanes-Oxley Section 806, "for practical purposes, moot." *Asadi*, 720 F.3d at 628. The court, after observing that clause (iii) covers the disclosures protected by Section 806, reasoned that "[i]t is unlikely … that an individual would choose to raise a [Sarbanes-Oxley] anti-retaliation claim instead of a Dodd-Frank whistleblower-protection claim" because: (i) Section 21F provides "for greater monetary damages because it allows for recovery of two times back pay, whereas [Section 806] provides for only back pay," and (ii) "the applicable statute of limitations is substantially longer for Dodd-Frank whistleblower-protection claims." *Id.* at 628-29.

But the Fifth Circuit ignored at least two countervailing advantages of a Sarbanes-Oxley Section 806 claim over a Dodd-Frank Section 21F claim:

- For individuals who want to avoid the burdens of pursuing the claim in court, including potential high litigation costs that they might bear if they do not prevail, actions under Section 806 may be attractive because the claims are heard (at least in the first instance) in an administrative forum at the Department of Labor ("DOL"). Moreover, DOL assumes responsibility for investigating the retaliation claim and preparing the evidence for an administrative law judge's review.[20]

- Depending on the nature of the injury, a claim under Section 806 may afford a greater recovery. Unlike Section 21F, Section 806 provides for "all relief necessary to make the employee whole" and for "compensation for any special damages." 18 U.S.C. §1514A(c)(1) & (c)(2)(C). This language has been held to authorize compensation for emotional distress and reputational harm.[21] Thus, individuals who have experienced minimal pay loss, but significant emotional injuries, may find Section 806 actions more attractive.

Finally, the Fifth Circuit expressed concern that any other reading of Section 21F "would read the words 'to the Commission' out of the definition of 'whistleblower' for purposes of the whistleblower-protection provision." *Asadi*, 720 F.3d at 628. But applying the Section 21F(a)(6) definition of whistleblower to Section 21F(h)(1)(A) makes the phrase "to the Commission" in clause (i) and the

---

[20] DOL has delegated to its sub-agency the Occupational Safety and Health Administration ("OSHA") responsibility for receiving and investigating claims under Section 806. *See generally* 29 C.F.R. §1980. If OSHA finds the employee suffered retaliation, it may order immediate reinstatement. *Id.* §1980.105. OSHA's findings are subject to a *de novo* hearing before an administrative law judge and review by DOL's Administrative Review Board. *Id.* §§1980.106-110.

[21] *See Jones v. SouthPeak Interactive Corp.*, Nos. 13-2399, 14-1765, 2015 WL 309626, at *1 (4th Cir. Jan. 26, 2015) ("emotional distress damages are available" under Section 806); *Halliburton, Inc. v. Admin. Review Bd.*, No. 13-60323, 2014 WL 5861790, at *10 (5th Cir. Nov. 12, 2014) (per curiam) (Section 806 "affords noneconomic compensatory damages").

similar reference in clause (ii) superfluous. That either of two competing interpretations yields superfluous statutory language confirms that Congress did not speak unambiguously on the issue. *See Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2248 (2011) ("[T]he canon against superfluity assists only where a competing interpretation gives effect to every clause and word of a statute.") (quotation omitted).

## II. In light of the ambiguity here, the Commission adopted a reasonable interpretation in Rule 21F-2(b)(1) that warrants judicial deference.

By adopting Exchange Act Rule 21F-2(b)(1) to specify what persons are whistleblowers for purposes of the anti-retaliation provisions, the Commission revealed its view that Section 21F(h)(1)(A) is best read as an implied exception to the definition of whistleblower in Section 21F(a)(6). *See, e.g.*, *Egan v. TradingScreen, Inc.*, No. 10 Civ. 8202, 2011 WL 1672066, at *5 (S.D.N.Y. May 4, 2011).[22] *See generally Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S.

---

[22] Several other district courts have also shared the Commission's reading of Section 21F(h)(1)(A). *Connolly v. Remkes*, No. 5:14-CV-01344, 2014 WL 5473144, at *4-6 (N.D. Cal. Oct. 28, 2014); *Peters v. LifeLock Inc.*, No. 2:14-cv-00576, Dkt. 47, slip op. 6-13 (D. Ariz. Sept. 19, 2014); *Yang v. Navigators Group, Inc.*, No. 13-cv-2073, 2014 WL 1870802, at *10-13 (S.D.N.Y. May 8, 2014); *Khazin v. TD Ameritrade Holding Corp.*, No. 13-4149, 2014 WL 940703, at *3-6 (D.N.J. Mar. 11, 2014), *aff'd on other grounds*, 773 F.3d 488 (3d Cir. 2014); *Ahmad v. Morgan Stanley & Co.*, 2 F. Supp. 3d 491, 496 n.5 (S.D.N.Y. 2014); *Rosenblum v. Thomson Reuters (Markets) LLC*, 984 F. Supp. 2d 141, 146-48 (S.D.N.Y. 2013); *Ellington v. Giacoumakis*, 977 F. Supp. 2d 42, 44-46 (D. Mass. 2013); *Murray v. UBS Secs., LLC*, No. 12 Civ. 5914, 2013 WL 2190084, at *3-7 (S.D.N.Y. May 21, 2013); *Genberg v. Porter*, 935 F. Supp. 2d 1094, 1106-07 (D.

193, 206-207 (2009) ("'Statutory definitions control the meaning of statutory words, of course, in the usual case. But this is not the usual case.") (quoting *Lawson v. Suwannee First & S.S. Co.*, 336 U.S. 198, 201 (1949)); *Philko Aviation, Inc. v. Shacket*, 462 U.S. 406, 411-12 (1985) (similar). The Commission thus promulgated Exchange Act Rule 21F-2(b)(1) to clarify that, "[f]or purposes of the anti-retaliation protections afforded by Section 21F(h)(1) of the Exchange Act, you are a whistleblower if … [y]ou provide that information in a manner described in Section 21F(h)(1)(A)."

In doing so, the Commission concluded "that the statutory anti-retaliation protections apply to three different categories of whistleblowers, and the third category [*i.e.*, clause (iii)] includes individuals who report to persons or governmental authorities *other than the Commission*." Adopting Release at 34304. The Commission explained that, accordingly, the anti-retaliation protections will

---

Colo. 2013), *appeal dismissed in relevant part*, 566 Fed. App'x 719 (10th Cir. 2014); *Kramer v. Trans-Lux Corp.*, No. 11 Civ. 1424, 2012 WL 4444820, at *3-5 (D. Conn. Sept. 25, 2012); *Nollner v. S. Baptist Convention, Inc.*, 852 F. Supp. 2d 986, 993-95 (M.D. Tenn. 2012). *See also Bussing v. COR Clearing, LLC*, No. 8:12-cv-238, 2014 WL 2111207, at *5-13 (D. Neb. May 21, 2014); *Azim v. Tortoise Capital Advisors, LLC*, No. 13-2267, 2014 WL 707235, at *1-3 (D. Kans. Feb. 24, 2014), *objections overruled*, 2014 WL 4352069 (D. Kans. Sept. 2, 2014). *But see Verfuerth v. Orion Energy Sys., Inc.*, No. 14-C-352, 2014 WL 5682514, at *2-4 (E.D. Wisc. Nov. 4, 2014); *Englehart v. Career Educ. Corp.*, No. 8:14-cv-444, 2014 WL 2619501, at *3-9 (M.D. Fla. May 12, 2014); *Banko v. Apple, Inc.*, No. 13-02977, 2013 WL 7394596, at *3-6 (N.D. Cal. Sept. 27, 2013); *Wagner v. Bank of Am. Corp.*, No. 12-cv-00381, 2013 WL 3786643, at *4-6 (D. Colo. July 19, 2013), *aff'd on other grounds*, 571 Fed. App'x 698 (10th Cir. 2014).

extend to, among others, employees of public companies who make certain disclosures internally to "a person with supervisory authority over the employee or such other person working for the employer who has authority to investigate, discover, or terminate misconduct." *Id.*

The Commission's interpretation is reasonable because it resolves the statutory ambiguity in a manner that effectuates the broad employment anti-retaliation protections that clause (iii) contemplates. The Commission's interpretation is also reasonable because, by ensuring that individuals who report internally first will not be potentially disadvantaged by losing employment anti-retaliation protection under Section 21F, it better supports a core overall objective of the whistleblower rulemaking—avoiding disincentivizing individuals from reporting internally first in appropriate circumstances. By establishing parity between individuals who first report to the Commission and those who first report internally, the Commission's rule avoids a two-tiered structure of anti-retaliation protections that might discourage some individuals from first reporting internally in appropriate circumstances and, thus, jeopardize the benefits that can result from internal reporting, *supra* 4-5, 15-17. The Commission's decision to adopt this interpretation was reasonable in light of its view, based on its experience and expertise, that if internal compliance and reporting procedures "are not utilized or

working, our system of securities regulation will be less effective." Proposing Release at 70500.[23]

Lastly, the Commission's interpretation was reasonable because it enhances the Commission's ability to bring enforcement actions when employers take adverse employment actions against employees for reporting securities law violations internally. A contrary result that narrowly cabined this enforcement authority to only those situations where the employee has separately reported to the Commission would significantly weaken the deterrence effect on employers who might otherwise consider taking an adverse employment action.[24]

---

[23] Rule 21F-2(b)(1) also supports the whistleblower program by extending anti-retaliation protection to individuals who first report to designated authorities *other than the Commission*. Section 21F(b) & (c) authorize awards to such individuals under certain circumstances when their information leads to successful "related actions" by the other designated authorities. To facilitate this reporting, the Commission adopted Rule 21F-4(b)(7), under which individuals who first provide information to a designated authority and then within 120 days submit the same information to the Commission will be treated as though they reported to the Commission as of the date of the original report to the designated authority. Rule 21F-2(b)(1) ensures that individuals who follow this reporting approach will not lose anti-retaliation protection during the period prior to their report to the Commission.

[24] The Commission lacks such authority under Sarbanes-Oxley Section 806.

### III. Failure to defer to Rule 21F-2(b)(1) could arbitrarily and irrationally deny the employment retaliation protections afforded by Dodd-Frank to individuals who, before coming to the Commission, *first* report potential securities law violations to the U.S. Department of Justice or Self-Regulatory Organizations such as FINRA.

Important law enforcement interests beyond the considerations connected to internal company reporting counsel in favor of deference to the interpretation in Rule 21F-2(b)(1). Congress in Section 21F sought to encourage individuals to make reports of misconduct not just to the Commission, but also to certain other law enforcement and regulatory authorities. As demonstrated below, this congressional purpose is revealed through both the award program and the employment retaliation protections.

Section 21F directs that, for any individual who is a meritorious whistleblower in a Commission enforcement action, the Commission shall pay a monetary award of 10 percent to 30 percent of the monetary sanctions collected in any "related action" if the same information that led to the successful prosecution of the Commission action also led to the successful prosecution of the related action. *See* Exchange Act §21F(b) & (c). A related action is "any judicial or administrative action brought by," among other entities, the U.S. Department of Justice ("DOJ"), the federal banking regulators (including the Board of Governors of the Federal Reserve System and the Comptroller of the Currency), and the various self-regulatory organizations ("SROs") that are subject to the jurisdiction

and oversight of the Commission (such as FINRA and NYSE). Significantly, nothing in the provisions that establish the award program requires that an individual report to the Commission before or at the same time as reporting to any of these other authorities. So, for example, an individual who provides the FBI with original information about a potential securities law violation before reporting that same information to the Commission can recover a monetary award based on resulting successful Commission and related actions no differently than if he or she had reported the information to the Commission before going to the FBI.[25]

The employment retaliation protections afforded by clause (iii) of Section 21F(h)(1)(A), in turn, complement the related action component of the award program. Clause (iii) does this by prohibiting employment retaliation against individuals who make various types of disclosure to either the DOJ or the other federal government agencies that can bring related actions, as well as the SROs.[26]

---

[25] Under the 120-day look-back established by Exchange Act Rule 21F-4(b)(7), an individual who first makes the disclosure to the FBI or any of the other law enforcement or regulatory authorities that can pursue a related action, and within 120 days submits the same information to the Commission, will be treated for purposes of an award determination as if the submission to the Commission had been made on the date of the submission to the other authority.

[26] Clause (iii) provides employment retaliation protection based on disclosures to DOJ and the other federal agencies by expressly incorporating the "disclosures that are required or protected under the Sarbanes-Oxley Act," which includes Sarbanes-Oxley Section 806. Section 806, in turn, prohibits employment retaliation based on certain disclosures of securities law violations to a "Federal regulatory or law enforcement agency." 18 U.S.C. §1514A(a)(1)(A).

In this way, the employment retaliation protections of Section 21F(h)(1)(A) are generally co-extensive with the award program: clauses (i) and (ii) provide employment retaliation protection for providing information to the Commission, which may lead to a successful Commission action for which an award may be paid, while clause (iii) affords employment retaliation protection for providing information to a law enforcement or regulatory authority *other than the Commission*, which may lead to a successful related action for which an award may be paid.[27]

Significantly, under the interpretation provided by the Commission's rule, individuals who report *first* to one of these other authorities before coming to the Commission are protected from employment retaliation under Section 21F(h)(1)(A) to the same degree as an individual who reports first to the Commission. In other words, Rule 21F-2(b)(1) represents a policy judgment that is fully consistent with the policy judgment that Congress established in writing the statutory award provisions. The award provisions express no preference in how individuals sequence their reporting as between the Commission and the other authorities. So too Rule 21F-2(b)(1) ensures that individuals receive the same

[27] We note that there is one exception to the general symmetry that exists within Section 21F between the related-action award provisions and the employment retaliation protections afforded by clause (iii). While the Commission may make an award for a related action that is a criminal matter brought by a state attorney general, clause (iii) does not cover disclosures made directly to state attorney generals.

employment retaliation protections regardless of whether they report to the Commission before or after reporting to the other authorities.

But were this Court to reject the Commission's interpretation and instead follow the Fifth Circuit's *Asadi* decision, an individual who decides to report first to one of the other authorities could be significantly more exposed to the risks of employment retaliation. For example, if an individual makes a report of securities fraud first to the FBI and is promptly fired before making a similar report to the Commission, he will be unable to invoke the enhanced employment retaliation protections of Section 21F and will have only the protections afforded by Sarbanes-Oxley Section 806 (assuming the individual is within the categories of employees covered by that provision).[28] Yet had this individual reported to the Commission first, he would have the protections of both Section 21F and Sarbanes-Oxley Section 806. There is no basis to believe that Congress would have intended this disparate treatment based purely on the happenstance of which agency the individual reported to first given the dual responsibility that the

---

[28] As noted in footnote 26, *supra*, Sarbanes-Oxley Section 806—in addition to protecting individuals against employment retaliation when they make internal reports of securities fraud and certain other violations—protects against employment retaliation when an individual makes a report to "a Federal regulatory or law enforcement agency." 18 U.S.C. §1514A(a)(1)(A).

Commission and DOJ have for the enforcement of the securities laws.[29] *See generally United States v. Wilson*, 503 U.S. 329, 334 (1992) (an interpretation that produces an "arbitrary" or "absurd" result should be avoided).

And the consequences of the *Asadi* decision are potentially even more severe for an individual who first reports to an SRO and is fired before being able to make a similar report to the Commission. Reports to SROs fall within the scope of clause (iii) of Section 21F(h)(1)(A) to the extent that such disclosures are "required or protected" by a Commission or SRO rule ("covered disclosure").[30] *See Bussing*, 20 F. Supp. 3d at 734-35 (disclosures required or protected by SRO rules are covered by clause (iii)). But Sarbanes-Oxley Section 806, by contrast, does not provide any employment retaliation protection for any disclosures made to SROs. Thus, if an individual makes a covered disclosure to an SRO and is fired before making the same disclosure to the Commission, that individual will not only have no legal recourse under Section 21F, but he will also have no recourse under

---

[29] Generally speaking, the Commission has responsibility for pursuing civil actions for violations of the federal securities laws while DOJ possesses criminal enforcement authority.

[30] Section 21F(h)(1)(A)(iii) provides protection for any disclosure "required or protected" by a "rule or regulation *subject to the jurisdiction of the Commission*." Exchange Act §21F(h)(1)(A)(iii) (emphasis added). As explained in *Bussing*, 20 F. Supp. 3d at 732, 734-35, SRO rules are "subject to the jurisdiction of the Commission" for purposes of the employment retaliation protections of Section 21F(h)(1) because the Commission has statutory authority to approve or disapprove such rules. The Commission also possesses jurisdiction to review SRO disciplinary proceedings in which such rules are enforced.

Sarbanes-Oxley Section 806 (unlike the individual who first reports to DOJ). This result is deeply problematic because SROs by congressional design have long been "a vital element in the regulation of the securities industry," helping "enforce compliance by its members, and persons associated with its members, with the federal securities laws." *Request for Comment on NASDAQ Petition*, 68 Fed. Reg. 27722, 27722 (May 20, 2003). Given this vital SRO role, individuals frequently report violations of the securities laws to them in the first instance rather than coming directly to the Commission; so were this Court to adopt the *Asadi* approach, there is a real risk that individuals could expose themselves to retaliation without the benefit of the protections of Section 21F(h)(1)(A).

The interpretation that the Commission has advanced in Rule 21F-2(b)(1) prevents the arbitrary and irrational results identified above by ensuring that individuals experience no diminution in the employment retaliation protections afforded to them as a result of the sequence of their reporting. Accordingly, deference to the Commission's interpretation is warranted for this additional reason.

## CONCLUSION

For the foregoing reasons, this Court should defer to the Commission's rule and hold that individuals are entitled to employment anti-retaliation protection if they make any of the disclosures identified in Section 21F(h)(1)(A)(iii) of the Exchange Act, irrespective of whether they separately report the information to the Commission.

Respectfully submitted,

ANNE K. SMALL
General Counsel

MICHAEL A. CONLEY
Deputy General Counsel

WILLIAM K. SHIREY
Assistant General Counsel

/s/ Stephen G. Yoder
STEPHEN G. YODER
Senior Counsel

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-9040
(202) 551-4532 (Yoder)

February 2015

## STATUTORY ADDENDUM:

## SECTION 21F(a)-(d), (h), (j)
## OF THE SECURITIES EXCHANGE ACT OF 1934,
## 15 U.S.C. §78u-6(a)-(d), (h), (j)

(a) Definitions. In this section the following definitions shall apply:

(1) Covered judicial or administrative action. The term "covered judicial or administrative action" means any judicial or administrative action brought by the Commission under the securities laws that results in monetary sanctions exceeding $1,000,000.

(2) Fund. The term "Fund" means the Securities and Exchange Commission Investor Protection Fund.

(3) Original information. The term "original information" means information that--

(A) is derived from the independent knowledge or analysis of a whistleblower;

(B) is not known to the Commission from any other source, unless the whistleblower is the original source of the information; and

(C) is not exclusively derived from an allegation made in a judicial or administrative hearing, in a governmental report, hearing, audit, or investigation, or from the news media, unless the whistleblower is a source of the information.

(4) Monetary sanctions. The term "monetary sanctions", when used with respect to any judicial or administrative action, means--

(A) any monies, including penalties, disgorgement, and interest, ordered to be paid; and

(B) any monies deposited into a disgorgement fund or other fund pursuant to section 308(b) of the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7246(b)), as a result of such action or any settlement of such action.

(5) Related action. The term "related action", when used with respect to any judicial or administrative action brought by the Commission under the

securities laws, means any judicial or administrative action brought by an entity described in subclauses (I) through (IV) of subsection (h)(2)(D)(i) that is based upon the original information provided by a whistleblower pursuant to subsection (a) that led to the successful enforcement of the Commission action.

(6) Whistleblower. The term "whistleblower" means any individual who provides, or 2 or more individuals acting jointly who provide, information relating to a violation of the securities laws to the Commission, in a manner established, by rule or regulation, by the Commission.

(b) Awards

(1) In general. In any covered judicial or administrative action, or related action, the Commission, under regulations prescribed by the Commission and subject to subsection (c), shall pay an award or awards to 1 or more whistleblowers who voluntarily provided original information to the Commission that led to the successful enforcement of the covered judicial or administrative action, or related action, in an aggregate amount equal to--

(A) not less than 10 percent, in total, of what has been collected of the monetary sanctions imposed in the action or related actions; and

(B) not more than 30 percent, in total, of what has been collected of the monetary sanctions imposed in the action or related actions.

(2) Payment of awards. Any amount paid under paragraph (1) shall be paid from the Fund.

(c) Determination of amount of award; denial of award

(1) Determination of amount of award

(A) Discretion. The determination of the amount of an award made under subsection (b) shall be in the discretion of the Commission.

(B) Criteria. In determining the amount of an award made under subsection (b), the Commission--

(i) shall take into consideration--

(I) the significance of the information provided by the whistleblower to the success of the covered judicial or administrative action;

(II) the degree of assistance provided by the whistleblower and any legal representative of the whistleblower in a covered judicial or administrative action;

(III) the programmatic interest of the Commission in deterring violations of the securities laws by making awards to whistleblowers who provide information that lead to the successful enforcement of such laws; and

(IV) such additional relevant factors as the Commission may establish by rule or regulation; and

(ii) shall not take into consideration the balance of the Fund.

(2) Denial of award. No award under subsection (b) shall be made--

(A) to any whistleblower who is, or was at the time the whistleblower acquired the original information submitted to the commission, a member, officer, or employee of--

(i) an appropriate regulatory agency;

(ii) the Department of Justice;

(iii) a self-regulatory organization;

(iv) the Public Company Accounting Oversight Board; or

(v) a law enforcement organization;

(B) to any whistleblower who is convicted of a criminal violation related to the judicial or administrative action for which the whistleblower otherwise could receive an award under this section;

(C) to any whistleblower who gains the information through the performance of an audit of financial statements required under the securities laws and for whom such submission would be contrary to

the requirements of section 10A of the Securities Exchange Act of 1934 (15 U.S.C. 78j-1); or

(D) to any whistleblower who fails to submit information to the Commission in such form as the Commission may, by rule, require.

(d) Representation

(1) Permitted representation. Any whistleblower who makes a claim for an award under subsection (b) may be represented by counsel.

(2) Required representation

(A) In general. Any whistleblower who anonymously makes a claim for an award under subsection (b) shall be represented by counsel if the whistleblower anonymously submits the information upon which the claim is based.

(B) Disclosure of identity. Prior to the payment of an award, a whistleblower shall disclose the identity of the whistleblower and provide such other information as the Commission may require, directly or through counsel for the whistleblower.

. . .

(h) Protection of whistleblowers

(1) Prohibition against retaliation

(A) In general. No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower--

(i) in providing information to the Commission in accordance with this section;

(ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or

(iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), this

chapter, including section 78j-1(m) of this title, section 1513(e) of Title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission.

(B) Enforcement

(i) Cause of action. An individual who alleges discharge or other discrimination in violation of subparagraph (A) may bring an action under this subsection in the appropriate district court of the United States for the relief provided in subparagraph (C).

(ii) Subpoenas. A subpoena requiring the attendance of a witness at a trial or hearing conducted under this section may be served at any place in the United States.

(iii) Statute of limitations

(I) In general. An action under this subsection may not be brought--

(aa) more than 6 years after the date on which the violation of subparagraph (A) occurred; or

(bb) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the employee alleging a violation of subparagraph (A).

(II) Required action within 10 years. Notwithstanding subclause (I), an action under this subsection may not in any circumstance be brought more than 10 years after the date on which the violation occurs.

(C) Relief. Relief for an individual prevailing in an action brought under subparagraph (B) shall include--

(i) reinstatement with the same seniority status that the individual would have had, but for the discrimination;

(ii) 2 times the amount of back pay otherwise owed to the individual, with interest; and

(iii) compensation for litigation costs, expert witness fees, and reasonable attorneys' fees.

(2) Confidentiality

(A) In general. Except as provided in subparagraphs (B) and (C), the Commission and any officer or employee of the Commission shall not disclose any information, including information provided by a whistleblower to the Commission, which could reasonably be expected to reveal the identity of a whistleblower, except in accordance with the provisions of section 552a of Title 5, unless and until required to be disclosed to a defendant or respondent in connection with a public proceeding instituted by the Commission or any entity described in subparagraph (C). For purposes of section 552 of Title 5, this paragraph shall be considered a statute described in subsection (b)(3)(B) of such section.

(B) Exempted statute. For purposes of section 552 of Title 5, this paragraph shall be considered a statute described in subsection (b)(3)(B) of such section 552.

(C) Rule of construction. Nothing in this section is intended to limit, or shall be construed to limit, the ability of the Attorney General to present such evidence to a grand jury or to share such evidence with potential witnesses or defendants in the course of an ongoing criminal investigation.

(D) Availability to Government agencies

(i) In general. Without the loss of its status as confidential in the hands of the Commission, all information referred to in subparagraph (A) may, in the discretion of the Commission, when determined by the Commission to be necessary to accomplish the purposes of this chapter and to protect investors, be made available to--

(I) the Attorney General of the United States;

(II) an appropriate regulatory authority;

(III) a self-regulatory organization;

(IV) a State attorney general in connection with any criminal investigation;

(V) any appropriate State regulatory authority;

(VI) the Public Company Accounting Oversight Board;

(VII) a foreign securities authority; and

(VIII) a foreign law enforcement authority.

(ii) Confidentiality

(I) In general. Each of the entities described in subclauses (I) through (VI) of clause (i) shall maintain such information as confidential in accordance with the requirements established under subparagraph (A).

(II) Foreign authorities. Each of the entities described in subclauses (VII) and (VIII) of clause (i) shall maintain such information in accordance with such assurances of confidentiality as the Commission determines appropriate.

(3) Rights retained. Nothing in this section shall be deemed to diminish the rights, privileges, or remedies of any whistleblower under any Federal or State law, or under any collective bargaining agreement.

. . .

(j) Rulemaking authority. The Commission shall have the authority to issue such rules and regulations as may be necessary or appropriate to implement the provisions of this section consistent with the purposes of this section.

**DECISIONAL ADDENDUM:**

***Peters v. LifeLock Inc.*,**
**No. 2:14-cv-00576, Dkt. 47 (D. Ariz. Sept. 19, 2014)**

**(unavailable on either Westlaw or LEXIS)**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Michael D. Peters,<br>Plaintiff,<br>v.<br>LifeLock Incorporated, et al.,<br>Defendants. | No. CV-14-00576-PHX-ROS<br>**ORDER** |

Plaintiff Michael D. Peters has sued his former employer, Defendant LifeLock, Inc. ("LifeLock"), for violating the whistleblower provisions of the Sarbanes-Oxley Act and the Dodd-Frank Act. Peters has also sued Cristy Schaan ("Schaan"), a former coworker, for defamation. LifeLock moves to dismiss the claim brought under the Dodd-Frank Act and Schaan moves to dismiss the defamation claim. Peters has also moved for judgment on the pleadings regarding one of the counterclaims brought against him by LifeLock. As set out below, Schaan will be dismissed but the Dodd-Frank Act claim and the counterclaim against Peters will be allowed to proceed.

## BACKGROUND

According to his complaint, "Peters is an internationally recognized authority on information technology security." (Doc. 1 at 2). Sometime prior to 2013, Peters worked at a company now known as Vantiv. Peters left that position under disputed circumstances involving Peters and Vantiv entering into a "separation agreement." (Doc. 1 at 6). Peters subsequently obtained a different job in Georgia.

In 2013, Peters was working in Georgia when he was contacted by a recruiter regarding a position at LifeLock. Peters pursued the position by submitting an application. In his application, Peters stated he had resigned from Vantiv. (Doc. 1 at 6). After a lengthy interview process, LifeLock offered Peters the position of Chief Information Security Officer ("CISO"). Peters moved to Arizona and started work at LifeLock on July 1, 2013.

Upon starting work, Peters displaced Schaan who had been serving as the interim CISO. Schaan had applied for the CISO position but she was passed over in favor of Peters. Schaan allegedly was upset about being passed over and, the same day Peters started work, Schaan decided to conduct "her own private investigation of Peters' prior employment." (Doc. 1 at 8). Schaan emailed Kim Jones, an acquaintance who worked at Vantiv, and asked Jones "if he knew anything about Peters." Jones responded via email the next day. In that email, Jones stated:

- "Peters was fired from [Vantiv] and that he was walked out of the building without being allowed to return to his office to retrieve his personal belongings."
- "Peters's relationship building skills [are] virtually non-existent."
- "Peters has a reputation for being disingenuous in his promotional activities by overstating his accomplishments."
- "Peters engaged in inappropriate actions."

Schaan took no action with Jones' email at that time.

Shortly after starting work at LifeLock, Peters "began an initial risk assessment." (Doc. 1 at 3). During that assessment, Peters discovered "many instances of illegal and incompetent practices that constituted fraud against LifeLock's shareholders." Those instances of fraud included evidence that audits were not done, despite LifeLock representing otherwise, as well as LifeLock "manipulat[ing] the customer alerts sent to its elderly customers." (Doc. 1 at 4).

On July 9, 2013, Peters met with LifeLock's CFO Chris Power and discussed the initial assessment findings and the areas Peters found concerning. Power took no action.

A few days later, Peters met with his direct supervisor, LifeLock's chief information officer, Rich Stebbins. Again Peters expressed his concerns yet Stebbins did nothing. After these meetings, LifeLock's "upper management" decided to fire Peters. To do so, the "upper management directed Michelle Deutsch, LifeLock's in-house special counsel for labor and employment, to try and find grounds to terminate Peters's employment." (Doc. 1 at 6). Deutsch contacted Vantiv and "she was incorrectly told that Peters had been fired." Around this same time, Schaan "discovered that LifeLock was about to fire Peters." In an attempt to "seal Peters's fate," Schaan forwarded Stebbins the email she had received from Jones on July 2, 2013.

On July 29, 2013, LifeLock fired Peters. According to LifeLock, Peters was fired because he had "provided false information on his employment application" by claiming he resigned from Vantiv when, in fact, he had been fired. LifeLock also claimed Peters had engaged in inappropriate behavior by "'hit[ting] upon' a female employee." (Doc. 1 at 9). Peters alleges these reasons were false and "the real reason for his termination" was that he had "reported to his supervisors about the illegal, fraudulent, and incompetent business practices relating to fraud against shareholders that were occurring at LifeLock." (Doc. 1 at 9).

A few weeks after he was fired, Peters filed complaints against LifeLock with the Federal Trade Commission and the Securities and Exchange Commission. Peters also filed a "whistleblower complaint with the U.S. Department of Labor under the Sarbanes-Oxley Act." (Doc. 1 at 6). The Sarbanes-Oxley complaint remained pending for 180 days and, in early 2014, Peters filed this suit. The complaint alleges a whistleblower claim under the Sarbanes-Oxley Act as well as a whistleblower claim under the Dodd-Frank Act. The complaint also alleges a defamation claim against Schaan for forwarding the email she received from Jones.

Schaan responded to the complaint by seeking dismissal of the defamation claim. LifeLock answered the whistleblower claim under the Sarbanes-Oxley Act but seeks dismissal of the whistleblower claim under the Dodd-Frank Act. When answering

Case: 14-16026, 02/06/2015, ID: 14329, DktEntry: 54, Page 59 of 72

Peters' complaint, LifeLock asserted five counterclaims, including counterclaims for breach of contract and unjust enrichment. According to LifeLock, Peters made "material misrepresentations and omissions regarding his employment history" when he applied for the position with LifeLock. (Doc. 36 at 4). LifeLock relied on those misstatements and omissions when it made him an offer of employment. That offer included a signing bonus of $15,000 that would have to be repaid if Peters was terminated for cause during his first year. Peters received the signing bonus and has refused to repay it despite being terminated after only one month. LifeLock's breach of contract claim seeks to recover the signing bonus while the unjust enrichment claim "seeks full restitution of all salary and benefits LifeLock paid to Peters prior to the termination of his employment." (Doc. 36 at 3). Peters answered all the counterclaims but now moves for judgment on the pleadings regarding the unjust enrichment claim.

## ANALYSIS

### I. Standard for Motion to Dismiss and Judgment on the Pleadings

LifeLock and Schaan have filed motions to dismiss and Peters has filed a motion for judgment on the pleadings. The standard for evaluating these motions is the same. *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). Under that standard, a claim must either be dismissed or judgment on the pleadings granted if it is not supported by "sufficient factual matter, accepted as true" to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This does not require "detailed factual allegations" but it does require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. This is not a "probability requirement," but a requirement that the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

**II. Defamation Claim Must be Dismissed**

The sole basis for Peters' defamation claim against Schaan is her forwarding of Jones' email. Schaan argues the Communications Decency Act ("CDA"), 47 U.S.C. § 230, prevents her from being held liable for forwarding that email. Schaan is correct.

Passed in 1996, the CDA has "been widely and consistently interpreted to confer broad immunity against defamation liability for those who use the Internet to publish information that originated from another source." *Barrett v. Rosenthal*, 146 P.3d 510, 513 (Cal. 2006). The portion of the CDA conferring that immunity provides "[n]o . . . user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Based on the definition in the CDA, there is no question Jones qualified as an "information content provider." 47 U.S.C. § 23(f)(3) (defining "information content provider" as "any person . . . that is responsible . . . for the creation or development of information"). And while "user" is not defined in the CDA, it "plainly refers to someone who uses something, and the statutory context makes it clear that Congress simply meant someone who uses an interactive computer service." *Barrett*, 146 P.3d at 526. In light of this, Schaan was a "user" of an "interactive computer service" when she forwarded Jones' email. *See* 47 U.S.C. § 230(f)(2) (defining "interactive computer service"). Put together, these definitions mean Schaan cannot "be treated as the publisher or speaker" of the information contained in Jones' email. 47 U.S.C. § 230(c)(1). And that means Schaan cannot be liable for defamation based on forwarding Jones' email. *See Peagler v. Phoenix Newspapers, Inc.*, 560 P.2d 1216, 1222 (Ariz. 1977) (individual liable for defamation if she "*publishes* a false and defamatory communication") (emphasis added); 47 U.S.C. § 230(e)(3) (preempting state law inconsistent with CDA).

Peters attempts to avoid this straightforward conclusion by arguing it would frustrate a central purpose of the CDA to read its immunity provision as protecting individuals. (Doc. 28 at 7). But the CDA's immunity provision explicitly covers any "*user* of an interactive computer system." 47 U.S.C. § 230(c)(1) (emphasis added).

Peters offers no argument that Schaan does not qualify as a "user" as that term is used in the CDA. Therefore, his policy arguments are unconvincing. *See United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1151 (9th Cir. 2010) (rejecting policy argument in light of unambiguous statutory language).

Peters also argues the CDA immunity provision should not apply because Schaan "instigat[ed]" the defamation and committed a "targeted move" by forwarding the email "to the one person she thought could cause the most harm to Peters." (Doc. 28 at 9). Peters does not explain how, assuming Schaan's behavior can be described in these terms, that behavior takes her outside the CDA's immunity. The CDA's immunity provision does not carve out exceptions for content "instigat[ed]" by another or content that is forwarded in a "targeted move." To be clear, under the facts alleged in the complaint, Schaan did not generate any defamatory statements herself when she first contacted Jones. Rather, she solicited an email from Jones and then forwarded that email without adding any defamatory statements of her own. If Schaan had added her own defamatory comments, the situation would be different.[1] But she did not. Thus, the CDA immunity provision applies and the defamation claim against Schaan must be dismissed.[2]

**III. Dodd-Frank Act Claim is Plausible**

LifeLock argues Peters cannot pursue a whistleblower claim under the Dodd-Frank Act because he was fired *before* he made any report to the Securities and Exchange Commission (the "Commission"). LifeLock has Fifth Circuit authority in its favor but many courts have criticized that opinion as adopting an overly restrictive view of the statutory language. Under the reading of the statute adopted by the vast majority of courts, Peters' internal complaints were sufficient to protect him from retaliatory

---

[1] As noted in *Barrett*, "[a]t some point, active involvement in the creation of a defamatory Internet posting would expose a defendant to liability as an original source." 146 P.3d at 527 n.19. But Peters has not alleged Schaan had "active involvement" in Jones' email such that she could be deemed the original source of the email.

[2] Peters asks for leave to amend his complaint against Schaan. (Doc. 28 at 12). If Peters wishes to amend, he must file a motion to amend accompanied by his proposed amended pleading establishing a factual basis for avoiding the broad immunity provision.

discharge.

**A. *Chevron* Analysis**

Peters has asserted a claim under 15 U.S.C. § 78u-6(h), the provision of the Dodd-Frank Act protecting an employee from adverse employment actions when that employee engages in certain activities. Congress granted the Commission "authority to issue such rules and regulations as may be necessary or appropriate to implement" this provision. 15 U.S.C. § 78u-6(j). Pursuant to that authority, the Commission adopted a rule providing broad whistleblower protections to employees. 17 C.F.R. § 240.21F-2(b). Importantly, that rule states an employee may assert a retaliation claim under the Dodd-Frank Act even if the employee did not make a report to the Commission prior to the adverse employment action. LifeLock argues this rule is contrary to the plain language of the Dodd-Frank Act and the Court should not defer to it.

LifeLock's argument requires application of the familiar two-step framework contained in *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). That framework requires the Court determine, using "the ordinary tools of statutory construction . . . whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *City of Arlington, Tex. V. FCC*, 133 S. Ct. 1863, 1868 (2013) (quotation omitted). Only when the statute can be deemed ambiguous must the Court proceed to the second step of determining whether the agency's interpretation "is based on a permissible construction of the statute." *Id.*

**B. Statute is Ambiguous**

Determining whether the statute is ambiguous requires the text of the statute be set out in some detail. The Dodd-Frank Act whistleblower provision begins by defining "whistleblower."

> The term "whistleblower" means any individual who provides . . . information relating to a violation of the securities laws to the Commission, in a manner established, by rule or

Case 2:14-cv-02057-ROS Document 47 Filed 09/29/14 Page 8 of 15

> regulation, by the Commission.

15 U.S.C. § 78u-6(a)(6). The scope of protection provided to a "whisteblower" is then set forth in subsection (h):

> (h) Protection of whistleblowers
>
> (1) Prohibition against retaliation
>
> (A) In general
>
> No employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower—
>
> (i) in providing information to the Commission in accordance with this section;
>
> (ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or
>
> (iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.), this chapter, including section 78j-1(m) of this title, section 1513(e) of Title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission.

Upon first reading, there is an oddity when the statutory definition in subsection (a) is plugged into subsection (h). The statute defines a "whistleblower" as an individual who directly makes a report to the Commission. But subsection (h)(1)(A) then appears to ignore the definition in setting out the types of protected activity. Subsection (h)(1)(A)(i)

first protects "providing information to the Commission" even though the very definition of "whistleblower" requires the individual provide information to the Commission. Subsection (h)(1)(A)(ii) then broadly protects "initiating, testifying in, or assisting in" Commission-related actions. Again, however, the definition itself would seem to protect such activities. Finally, subsection (h)(1)(A)(iii) protects a "whistleblower" when that individual makes "disclosures that are required or protected under the Sarbanes-Oxley Act of 2002." This last provision does not duplicate the coverage inherent in the statutory definition, but it raises its own set of problems because the Sarbanes-Oxley Act requires and protects a wide variety of disclosures *other* than reports to the Commission. Thus, an individual can make a disclosure "required or protected under the Sarbanes-Oxley Act" without ever contacting the Commission. The problem, therefore, is how to reconcile the statutory definition of "whistleblower" seemingly requiring a direct report to the Commission with the broader substantive protection set out in (h)(1)(A)(iii).

This problem has generated conflicting views of the statute. The Fifth Circuit is the only court of appeals to address the issue. In *Asadi v. G.E. Engergy (USA), LLC*, 720 F.3d 620, 626 (5th Cir. 2013), the court held the statutory definition of "whistleblower" and the protection provided in (h)(1)(A)(iii) "do not conflict." In the Fifth Circuit's view, the statute's repeated use of the term "whistleblower," instead of "individual" or "employee," is significant. *Id.* That is, by using the term "whistleblower" when describing the substantive protections, Congress was stressing that *only* whistleblowers, as defined by the statute, were protected. And under that definition, a report to the Commission *before* the adverse action is taken is an absolute prerequisite.

The Fifth Circuit acknowledged its reading raised the possibility that (h)(1)(A)(iii) was "superfluous" in that it would seem to duplicate the protection afforded in (h)(1)(A)(i) and (h)(1)(A)(ii). *Id.* at 627. But the Fifth Circuit concluded its reading of the statute did not render (h)(1)(A)(iii) superfluous because that section will provide protection "where the employer, unaware that the individual had already reported to the Commission, takes an adverse employment action against the employee for" a disclosure

required or protected under the Sarbanes-Oxley Act. (Doc. 27 at 32) (amicus brief from SEC). In other words, (h)(1)(A)(i) protects an employee who reports to the Commission and the employer knows of that activity; (h)(1)(A)(ii) protects an employee who aids the Commission and the employer knows of that activity; and (h)(1)(A)(iii) protects an employee who makes an internal report and makes a report to the Commission, but the employer is not aware of the report to the Commission. This construction is not convincing for multiple reasons not addressed by the Fifth Circuit.

To start, the Fifth Circuit stressed its reading was necessary to avoid "read[ing] the words 'to the Commission' out of the definition of 'whistleblower' for purposes" of subsection (h). *Id.* at 628. In the Fifth Circuit's view, its reading was the only way to avoid violating the "surplusage canon [requiring] that every word is to be given effect." *Id.* The Fifth Circuit did not explain, however, how its reading does not independently violate the surplusage canon. According to the Fifth Circuit, Congress made it abundantly clear the statutory definition *must* be plugged into subsection (h). But doing so makes (h)(1)(A)(i) meaningless. That is, combining the statutory definition with (h)(1)(A)(i) results in an employee being protected from adverse employment actions when he "provides . . . information relating to a violation of the securities laws to the Commission," provided he then "provid[es] information to the Commission." The Fifth Circuit offered no explanation how this reading was sensible. In fact, the Fifth Circuit simply ignored the surplusage problem its reading created in its attempt to avoid that very problem.

The Fifth Circuit's approach also makes the Dodd-Frank's anti-retaliation provision unique from other anti-retaliation provisions by imposing something approaching strict liability for certain adverse employment actions. Under the Fifth Circuit's approach, an employee engages in "protected activity" under (h)(1)(A)(iii) by doing two things: making a report to the Commission and making another disclosure required or protected by Sarbanes-Oxley. An employee *must* engage in both activities to qualify for protection under (h)(1)(A)(iii). But an employer will not always know an

employee has made a report to the Commission. Thus, an employer's retaliation liability under (h)(1)(A)(iii) will not depend on the employer's knowledge of protected activity. Instead, it will depend on whether the employee, unbeknownst to the employer, has made a report to the Commission. This would be contrary to other anti-retaliation provisions that require a causal link between the protected activity and the adverse employment action.[3] *Cf. Thomas v. City of Beaverton*, 379 F.3d 802, 812 n.4 (9th Cir. 2004) ("The employer's awareness of the protected activity is also important in establishing a causal link."). It is not sensible to conclude there would be a causal link between an employee's protected activity and an adverse employment action when the employer is not even aware protected activity occurred. *See Bussing v. COR Clearing*, LLC, 2014 WL 2111207, at *11 (D. Neb. May 21, 2014) (Fifth Circuit's interpretation "creates a peculiar standard of liability, in which liability for retaliation only attaches if certain preconditions—of which they are unaware—are satisfied"). At the very least, lowering the standard for retaliation liability in this way would represent a unique approach by Congress and would be contrary to the generally accepted deterrent purpose of anti-retaliation provisions. *Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473, 1491 (4th Cir. 1996) (Phillips, J., concurring in part and dissenting in part) (noting "fundamental purpose" of anti-retaliation provisions is "to impose a general deterrence upon the impulse of employers to retaliate for the exercise of statutory rights.").

Based on these problems, and others, the majority of district courts to address the issue have rejected the Fifth Circuit's reasoning. For the most part, those courts have not concluded the Dodd-Frank Act is clear. *But see Bussing*, 2014 WL 2111207, at *11 (finding statute unambiguously protects disclosures even absent reporting to the Commission). Rather, they have simply "concluded that the Dodd-Frank Act's

---

[3] LifeLock attempts to avoid this conclusion by arguing it is a "red herring." (Doc. 29 at 7). According to LifeLock, the "protected conduct" is the employee's internal report, provided he has already made a report to the Commission. But that does not address the issue. The problem remains that, according to the Fifth Circuit, an employer may be held liable under the anti-retaliation provision even though it does not know the employee has engaged in the conduct actually protected by the statute (*i.e.*, reporting to the Commission).

whistleblower provision is ambiguous on its face." *Khazin v. TD Ameritrade Holding Corp.*, 2014 WL 940703, at *5 (D.N.J. March 11, 2014). That facial ambiguity is based on (h)(1)(A)(iii) being "in direct conflict" with the statutory definition because (h)(1)(A)(iii) "provides protection to persons who have not disclosed information to the [Commission]." *Id.* (quotation omitted). The Court concludes this approach is persuasive.

Trying to plug the statutory definition of whistleblower into the substantive provisions creates a conflict. And that conflict creates serious "uncertainty of meaning or intention" regarding the reach of the statute. *Republic of Ecuador v. Mackay*, 742 F.3d 860, 865 (9th Cir. 2014) (quotation omitted). That is enough to deem the statute ambiguous. Therefore, the Court must proceed to the second step of the *Chevron* analysis.

**C. The Commission's Interpretation is Permissible**

The second step requires the Court determine whether the Commission's interpretation represents "a permissible construction of the statute." *Chevron, U.S.A., Inc. v. Nat. Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984). This step requires the Court determine "whether Congress has explicitly instructed the agency to flesh out specific provisions of the general legislation, or has impliedly left to the agency the task of developing standards to carry out the general policy of the statute." *Tovar v. United States Postal Service*, 3 F.3d 1271, 1276 (9th Cir. 1993). If Congress explicitly instructed the agency to develop regulations, "a reviewing court must find the agency's construction permissible unless it is arbitrary, capricious, or manifestly contrary to the statute." *Id.* If Congress only impliedly deferred to the agency, "a court must uphold the agency's construction if it is reasonable." *Id.* The latter "reasonableness standard affords agencies less latitude than the arbitrary and capricious standard." *McLean v. Crabtree*, 173 F.3d 1176, 1181 (9th Cir. 1999). But even the reasonableness standard does not require the agency's construction be the only possible construction or the one the Court would reach on its own. *Id.*

The Dodd-Frank Act explicitly instructs the Commission "to issue such rules and regulations as may be necessary or appropriate to implement" the whistleblower provisions. 15 U.S.C. § 78u-6(j). This may qualify as an "explicit" statement such that the Commission's rule is subject to review under the arbitrary and capricious standard. But the parties do not discuss the different standards and apparently are content to rely on the reasonableness standard. Under that standard, the Court must defer to the Commission's rule unless the Court is "compell[ed] to reject" its construction of the statute based on it being either irrational or obviously inconsistent with the statute. *Leisnoi, Inc. v. Stratman*, 154 F.3d 1062, 1069 (9th Cir. 1998) (quotation omitted); *Haro v. Sebelius*, 747 F.3d 1099, 1115 (9th Cir. 2014) (quotation omitted).

The Commission's rule reads the statute as providing protection to employees who make only internal reports. Securities Whistleblower Incentives and Protections, 76 Fed Reg. 34300-01 (June 13, 2011) ("[T]he statutory anti-retaliation protections apply to three different categories of whistleblowers, and the third category includes individuals who report to persons or governmental authorities other than the Commission."). The only argument offered by LifeLock that this is not a permissible construction is that, given the plain language of the statute, the Commission's rule impermissibly expands the reach of the statute. As set forth above, the plain language of the statute is not clear. In fact, at least one court read the language of the statute as dictating the completely opposite result as that proposed by LifeLock. *Bussing*, 2014 WL 2111207, at *11 (finding protection for internal reports "flows from the statute itself, and it is not necessary to determine if deference to the SEC's construction of the statute is warranted"). In these circumstances, the Commission's rule seeking to clarify the reach of the statute is neither arbitrary and capricious nor unreasonable.

LifeLock does not contest that if its statutory construction is rejected, Peters has stated a claim under the Dodd-Frank Act. Therefore, LifeLock will be required to answer that claim.

**IV. Claim for Unjust Enrichment is Plausible**

Peters moves for judgment on the pleadings regarding LifeLock's unjust enrichment counterclaim. That counterclaim seeks to recover the salary and benefits Peters received during his one month of working at LifeLock. Peters' motion seems to invoke two separate arguments.[4] First, that the parties' contract prevents any resort to unjust enrichment. And second, Peters' retention of his "salary and benefits" cannot be "unjust" given that he performed services for the month he was employed. These arguments are addressed in turn.

Peters is correct that LifeLock cannot rely on an unjust enrichment claim if "a specific contract . . . governs the [parties'] relationship." *Brooks v. Valley Nat'l Bank*, 548 P.2d 1166, 1171 (Ariz. 1976). But LifeLock is seeking rescission of the parties' alleged contract. And unjust enrichment is a viable claim when a purported contract is not enforceable. *W. Corrections Group, Inc. v. Tierney*, 96 P.3d 1070, 1077 (Ariz. Ct. App. 2004) ("Quantum meruit damages are available when services are performed under an unenforceable contract . . . ."). Because the parties do not agree a contract governed their relationship, LifeLock can pursue an unjust enrichment claim. Of course, LifeLock cannot prevail on both its breach of contract and unjust enrichment counterclaims. *See Edward Greenbank Enters. Of Ariz. v. Pepper*, 538 P.2d 389, 391 (Ariz. 1975) (party may pursue claims for fraudulent inducement and breach of contract but cannot recover on both). But under the facts alleged in LifeLock's counterclaims, LifeLock can pursue both counterclaims past the pleading stage.

Peters is also correct that retention of his "salary and benefits" does not appear "unjust," a prerequisite to an unjust enrichment claim. *Murdock-Bryant Const. Inc. v. Pearson*, 703 P.2d 1197, 1203 (Ariz. 1985) ("Restitutionary relief is allowable only when

[4] Peters also claims the unjust enrichment counterclaim should be dismissed because it is duplicative of the breach of contract counterclaim. LifeLock's breach of contract counterclaim seeks to recover the signing bonus provided to Peters while the unjust enrichment counterclaim seeks the "salary and benefits" LifeLock paid to Peters during his employment. Thus, the counterclaims are not duplicative. And even if they were, such duplication would not be a valid basis for dismissal because under Federal Rule of Civil Procedure 8(d), a party may assert claims in the alternative.

it would be inequitable or unjust for defendant to retain the benefit without compensating plaintiff.”). But LifeLock alleges it paid Peters’ salary and benefits based on his concealment of his “true qualifications or, rather, lack thereof.” (Doc. 36 at 6). In other words, LifeLock alleges it did not receive what it bargained for and it paid the salary and benefits under false pretenses. That is enough to proceed past the pleading stage.[5] *Cf. Dilek v. Watson Enters., Inc.*, 885 F. Supp. 2d 632, 649 (S.D.N.Y. 2012) (rejecting unjust enrichment claim brought by employer against employee because employer “had materially full knowledge of the facts it alleges about [Plaintiff’s] job performance”). Peters’ motion for judgment on the pleadings will be denied.

Accordingly,

**IT IS ORDERED** the Motion to Dismiss (Doc. 15) is **DENIED**.

**IT IS FURTHER ORDERED** the Motion to Dismiss (Doc. 21) is **GRANTED**. Defendant Cristy Schaan is **DISMISSED**.

**IT IS FURTHER ORDERED** the Motion for Leave to File Amicus Brief (Doc. 26) is **GRANTED**.

**IT IS FURTHER ORDERED** the Motion for Judgment on the Pleadings (Doc. 34) is **DENIED**.

**IT IS FURTHER ORDERED** the Stipulation of Dismissal (Doc. 41) is **GRANTED**. Defendant Kim Jones is **DISMISSED WITH PREJUDICE** with each party to bear his own attorneys’ fees, costs, and expenses.

Dated this 19th day of September, 2014.

Honorable Roslyn O. Silver
Senior United States District Judge

---

[5] Whether LifeLock can recover the salary and benefits paid to Peters raises issues under Arizona’s law regarding payment of wages. At present, it is unclear how LifeLock plans on avoiding Arizona law regarding payment and withholding of wages. *See, e.g.*, A.R.S. § 23-352 (setting forth exclusive grounds for withholding wages). But that issue can be addressed through later motion, if appropriate.

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the word-count limitation that this Court established in its February 2, 2015 order in this appeal (Dkt. No. 48) because it contains 8,660 words, excluding the parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I also certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-Point Times New Roman.

/s/ Stephen G. Yoder
Stephen G. Yoder
Senior Counsel
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-9040

February 6, 2015

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system on February 6, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Stephen G. Yoder
Stephen G. Yoder
Senior Counsel
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-9040

February 6, 2015