## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ARSHAD AZIM,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 13-2267-DDC-JPO** |
| **TORTOISE CAPITAL ADVISORS, LLC, et al.,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

Plaintiff, proceeding *pro se*, filed this lawsuit against his former employer, Tortoise

Capital Advisors, LLC ("Tortoise"), the parent company of Tortoise, Mariner Holdings, LLC

("Mariner"), and several individuals affiliated with either Tortoise or Mariner.[1]  On November 5,

2015, the Court granted defendants' Motion for Summary Judgment against plaintiff's four

claims:  (1) national origin discrimination under 42 U.S.C. § 1981; (2) religious discrimination

under 42 U.S.C. § 2000e (Title VII); (3) retaliation for reporting securities violations in violation

of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"), 15

U.S.C. § 78u–6(h)(1)(A); and (4) interference with plaintiff's civil rights by obstructing justice in

violation of 42 U.S.C. § 1985(3).  Doc. 144.  And, the Court entered a Judgment in favor of

defendants.  Doc. 145.

On December 3, 2015, plaintiff, by then, represented by counsel, filed a "Motion for

Relief from and/or to Amend Judgment."  Doc. 147.  Plaintiff's motion asks the Court to alter or

amend its November 5, 2015 Judgment under Fed. R. Civ. P. 59(e), or, in the alternative, to grant

---

[1]      Plaintiff named the following individuals as defendants:  H. Kevin Birzer, who was Senior
Managing Director of Tortoise during plaintiff's employment; Michelle Kelly, Director of Business
Development and plaintiff's supervisor at Tortoise; Marty Bicknell, the chief executive officer of
Mariner; and Tabitha Boissonneau, Human Resources Manager for Mariner.

plaintiff relief from the Judgment under Fed. R. Civ. P. 60(b). *Id.* at 1. The next day, plaintiff, again through counsel, filed a "First Supplement to Motion for Relief from and/or to Amend Judgment." Doc. 149. Then, on December 7, 2015, plaintiff, though counsel, filed a "Second Supplement to Motion for Relief from and/or to Amend Judgment." Doc. 150. And finally, on December 8, 2015, plaintiff, though counsel, filed a "Third Supplement to Motion for Relief from and/or to Amend Judgment." Doc. 151.

On December 17, 2015, defendants filed a Response in Opposition to plaintiff's motion. Doc. 155. And, on December 31, 2015, plaintiff submitted a Reply. Doc. 158. On May 26, 2016, the Court heard oral argument on plaintiff's motion. After considering the information submitted in the parties' briefs as well as the oral arguments presented at the May 26, 2016 hearing, the Court denies plaintiff's "Motion for Relief from and/or to Amend Judgment" (Doc. 147). The Court explains why below.

Also pending before the court is defendants' Motion to Strike plaintiff's Second Supplement to his motion. Doc. 157. In it, defendants argue that plaintiff's supplement is procedurally improper and untimely. *Id.* Plaintiff opposes defendants' Motion to Strike. Doc. 161. For the reasons explained below, the Court denies defendants' Motion to Strike plaintiff's Second Supplement (Doc. 157).

## I.      Procedural Background

On June 4, 2013, plaintiff, acting *pro se*, filed a Title VII lawsuit. Doc. 1. From the lawsuit's beginning though the entry of summary judgment against his claims, plaintiff proceeded *pro se*. Shortly after he filed the case, Magistrate Judge James P. O'Hara convened a Scheduling Conference with the parties. At the conference, Judge O'Hara questioned plaintiff about his decision to proceed *pro se*. He explained the benefits of engaging legal counsel, and he

2

asked plaintiff if he had thought about hiring a lawyer.  Doc. 155-1 at 3–5.  Plaintiff responded that he had thought "very much" about retaining counsel, but he concluded he wanted to represent himself.  *Id.* at 5.  Plaintiff understood that he may lose the case as a *pro se* litigant, but he had decided to "let the chips fall where they may."  *Id.*

During the lawsuit, plaintiff moved to amend his Complaint several times.  *See* Docs. 14, 29, 32, 35.  The Court twice granted plaintiff's requests (Doc. 15, 46), thus allowing plaintiff to file two amended pleadings.  He filed a First Amended Complaint on July 26, 2013 (Doc. 20) and a Second Amended Complaint on March 21, 2014 (Doc. 47).  Plaintiff also served discovery on defendants (*see*, *e.g.*, Docs. 86, 100, 101), and several motions seeking various forms of relief.  *See* Docs. 25 (Motion for Extension of Time to File Amended Complaint), 46 (Objection to Magistrate Judge's Decision), 68 (Motion to Amend/Correct Civil Cover Sheet), 94 (Motion for In Camera Inspection), 117 (Motion to Compel).

Plaintiff filed his Motion to Compel on April 12, 2015, 30 days after discovery closed and 18 days before the dispositive motion deadline.  *See* Doc. 117 (stating that discovery ended on March 13 and dispositive motions are due by May 1).  In his motion, plaintiff asked the Court to compel defendants' response to discovery requests that plaintiff served on February 9 and defendants answered on March 13 (the last day of discovery).  *Id.* at 1–2.  Plaintiff sent defendants a golden rule letter on April 9, 2015, asserting that defendants' discovery responses were deficient, requesting defendants to produce the requested documents, and advising that he intended to seek relief from the court if defendants failed to respond.  *See* Docs. 117-1, 119-2 at 3.  Defendants responded to plaintiff's golden rule letter on April 10 (Doc. 117-2), and plaintiff filed his motion to compel two days later (Doc. 117).

On April 27, 2015, defendants responded to plaintiff's Motion to Compel (119), and plaintiff submitted his Reply on May 11, 2015 (Doc. 126).  On May 26, 2015, Judge O'Hara granted in part and denied in part plaintiff's Motion to Compel.  Doc. 129.

While the parties were briefing plaintiff's Motion to Compel, defendants filed a Motion for Summary Judgment on the dispositve motion deadline—May 1, 2015 (Doc. 121).  That same day, defendants served plaintiff by email with their summary judgment briefing and unredacted copies of exhibits that defendants had sought leave to file under seal.  Docs. 155-2, 155-3. Plaintiff also had access to defendants' briefing and the unsealed supporting exhibits filed on the Court's CM/ECF system because he was registered as an electronic user with that system.

Our court's local rules require that "a represented party moving for summary judgment against a party proceeding *pro se* must serve and file as a separate document, together with the papers in support of the motion" a Notice to Pro Se Litigant Who Opposes A Motion For Summary Judgment ("*Pro Se* Notice"), along with a copy of the full texts of Fed. R. Civ. P. 56 and D. Kan. Rule 56.1.  *See* D. Kan. Rule 56.1(f).  Defendants served and filed the *Pro Se* Notice, but not on the same day they filed their summary judgment motion.  Doc. 125.  Instead, defendants served the notice ten days later, on May 11, 2015.  *Id.*  Defendants concede the delay in sending the notice until ten days after filing their summary judgment motion, and explained that the delay resulted from inadvertence.

Defendants' summary judgment brief contained 188 numbered statements of fact with specific citations to the attached record to support each factual statement.  Docs. 122 at 3–31, 124 at 3–31.  Plaintiff asserts that defendants' summary judgment briefing and attached exhibits numbered more than 400 pages.  See Doc. 149-1 at 2.  And, in his pending motion, plaintiff contends that defendants' summary judgment motion "immediately overwhelmed [him] and [he

was] at a loss as to how to respond to such a voluminous filing." *Id.* So, plaintiff says he reviewed the federal rule governing summary judgment motions, Fed. R. Civ. P. 56. *Id.* Plaintiff undertook this review even though he had not yet received the *Pro Se* Notice with the federal and local rules attached.[2]

In one of the advisory committee's notes to the rule, plaintiff read the following: "If a motion for summary judgment is filed before a responsive pleading is due from a party affected by the motion, the time for responding to the motion is 21 days after the responsive pleading is due." Fed. R. Civ. P. 56 advisory committee's note to 2009 amendment. Plaintiff believed that he had a "responsive pleading" due at that time, *i.e.* his Reply to his Motion to Compel, due by May 11, 2015. Doc. 149-1 at 3. And, based on his reading of the advisory committee's note, he thought that his time for responding to defendants' summary judgment motion did not start to run until May 11, when his Reply to the Motion to Compel was due. *Id.* He thus calculated his time for responding to defendants' summary judgment motion as May 31.[3] *Id.* Given his understanding of the rule, plaintiff asserts that he concentrated his efforts on preparing his Reply to the Motion to Compel between May 1 and May 11, instead of preparing a response to defendants' summary judgment motion. *Id.*

As stated, defendants eventually served plaintiff with the *Pro Se* Notice on May 11, ten days after they had filed their summary judgment motion. Docs. 125, 149-1 at 3. The *Pro Se* Notice explained the summary judgment procedure and advised plaintiff that if he did "not

---

[2]     The context of plaintiff's Declaration makes clear that he reviewed Fed. R. Civ. P. 56 before he received the *Pro Se* Notice. *See* Doc. 149-1. Plaintiff attests that, "[g]iven [his] understanding [of Fed. R. Civ. P. 56]," he concentrated his efforts between May 1 and May 11 (the date he received the *Pro Se* Notice) on preparing his Reply to his Motion to Compel (due on May 11) instead of his Opposition to defendants' summary judgment motion. *Id.* at 3.

[3]     Plaintiff does not explain how he calculated this date. It is 20 days from the date that plaintiff's Reply to the Motion to Compel was due. But the advisory committee's note that plaintiff read and relied upon in determining his response time provides a time limit of 21 days.

respond to the motion for summary judgment on time with affidavits and/or documents

contradicting the material facts asserted by the defendant[s], the court may accept defendant[s']

facts as true, in which event [plaintiff's] case may be dismissed and judgment entered in

defendant[s'] favor without a trial." Doc. 125 at 2.  The *Pro Se* Notice also warned, under Fed.

R. Civ. P. 56, that plaintiff "may not oppose summary judgment simply by relying upon the

allegations in [plaintiff's] complaint.  Rather, you must submit evidence, such as witness

statements or documents, countering the facts asserted by the defendant and raising specific facts

that support your claim."  *Id.* at 1.

The *Pro Se* Notice also attached the federal and local rules governing summary judgment.

*Id.* at 3–6.  The text of Fed. R. Civ. P. 56(c) describes the required procedure for both the moving

and nonmoving party when supporting factual positions in summary judgment briefing.[4]  *Id.* at

3–4 (providing the text of Fed. R. Civ. P. 56(c)).  It also explains that "[i]f a party fails to

properly support an assertion of fact or fails to properly address another party's assertion of fact

as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the

motion" or "(3) grant summary judgment if the motion and supporting materials—including the

facts considered undisputed—show that the movant is entitled to it."  *Id.* at 4 (providing the text

of Fed. R. Civ. P. 56(e)(2) & (3)).  Similarly, D. Kan. Rule 56.1(a) provides that "[a]ll material

facts set forth in the statement of the movant will be deemed admitted for the purpose of

summary judgment unless specifically controverted by the statement of the opposing party."  *Id.*

at 5 (providing the text of D. Kan. Rule 56.1(a)).  To controvert facts in the fashion the rule

demands, D. Kan. Rule 56.1(b)(1) requires the nonmoving party to number the facts and "refer

---

[4]      Defendants' summary judgment brief also provided plaintiff with an example of how to apply the
federal and local summary judgment rules in practice.  See Docs. 122, 124.  Defendants' summary
judgment brief contained 188 numbered statements of fact with specific citations to the attached record to
support each factual statement.  Docs. 122 at 3–31, 124 at 3–31.

with particularity to those portions of the record upon which the opposing party relies, and, if applicable, state the number of movant's fact that is disputed." *Id.* (providing the text of D. Kan. Rule 56.1(b)(1)).

The day after he received the *Pro Se* Notice, plaintiff sent an email to the court, with a copy to defendants' counsel, seeking "feedback" on several issues including a "confirmation of the deadline for responding to the defendants' Motion for Summary Judgment." Doc. 147-1 at 3. But, the substance of plaintiff's email registered no complaints that plaintiff lacked an understanding of the process for responding to a summary judgment motion or his obligation to convert defendants' statements of fact as required by the federal and local rules (which he had received attached to the *Pro Se* Notice).[5] Instead, the only confusion plaintiff described in the email was his uncertainty about his response deadline.

Defendants' counsel responded to this email by explaining, correctly, that plaintiff's deadline for responding to the summary judgment motion was May 22, 2015. *Id.* at 2 (citing D. Kan. Rule 6.1(d)). Defendants also construed plaintiff's email as asserting that certain procedural matters provided a basis to toll the response time. *Id.* Defendants explained that their request for leave to file certain supporting exhibits under seal did not toll plaintiff's response time because defendants had served plaintiff with the unredacted documents on the day they filed their summary judgment motion. *Id.* Defendants also asserted that plaintiff's pending motion to compel provided no basis for tolling the response time because, they argued, plaintiff delayed in

---

[5]     Plaintiff asserts that his email raised the "onerous burden" he was facing to respond to plaintiff's summary judgment motion. Doc. 158 at 3 (citing Doc. 147-1 at 3). But, in the context of that statement in the email, plaintiff was accusing defendants of violating the 30-page limit contained in D. Kan. Rule 7.1(e) and placing an "onerous burden" on him to respond. (Defendants had not violated the page limit. The local rule applies to the arguments and authorities section of the brief, and defendants' brief complied with that requirement.) But, even if plaintiff was arguing that he was facing an "onerous burden" in responding to defendants' motion, he never stated that he did not understand how to shoulder this burden or that he was confused about the requirements for satisfying this burden.

filing the motion to compel and the discovery at issue related to damages, not liability.  *Id.*  It thus was not pertinent to the summary judgment issues.  *Id.*  Notwithstanding their position on these issues, defendants informed the court that they had no objection to a four-day extension of time for plaintiff to respond to defendants' summary judgment motion.  *Id.*

In response to the parties' correspondence, the Court entered an Order on May 21, 2015. Doc. 128.  It read:

> ORDER - The parties have informed the Court that there is some confusion about plaintiff's deadline to respond to defendants' Motion for Summary Judgment (Doc. #121).  After considering the parties' communications, the Court orders plaintiff to file his response no later than May 25, 2015.

*Id.*[6]

Plaintiff asserts in his current motion that, after receiving the Court's Order extending his response time, he "was still overwhelmed with how to intelligibly respond to all of the [summary judgment] materials submitted by Defendants . . . ."  Doc. 149-1 at 3.  But plaintiff never expressed his confusion to the court before filing his response.  And, other than the email that plaintiff sent to the court seeking clarification about his response deadline, plaintiff never sought an extension of time to respond to defendants' summary judgment motion, even though he had moved for an extension of time previously in the case.  *See* Doc. 25.

Plaintiff also does not state whether he sought guidance from legal counsel about responding to defendants' summary judgment motion before it was due.  Instead, plaintiff states that "after reading several Comments to Rule 56, [he] understood that it was not necessary that [he] respond to each and every one of Defendants' cited facts."  *Id.* at 3–4.  He has highlighted

---

[6]    Because May 25 was Memorial Day, plaintiffs' time for responding was extended further to May 26, 2015.  See Fed. R. Civ. P. 6(a)(1)(C) (explaining that if the last day for responding falls on a legal holiday, the time is extended to the next day that is not a Saturday, Sunday, or legal holiday); Fed. R. Civ. P. 6(a)(6)(A) (defining Memorial Day as a legal holiday).

portions of Rule 56's advisory committee's notes that he contends relieved him of the obligation to controvert defendants' summary judgment facts. *Id.* at 5–6.

On May 26, 2015, plaintiff filed a 22-page response to defendants' summary judgment motion with 24 supporting exhibits. Doc. 133. He also moved to file his response and supporting exhibits under seal (Doc. 132), and the Court granted his request (Doc. 134).

Although timely, plaintiff's response controverted none of the 188 facts asserted by defendants in their Memorandum in Support of Summary Judgment, as our court's local rules require. Plaintiff's response, however, asserted 26 additional factual statements that plaintiff claimed were "material facts as to which a genuine issue exists" that prevented the Court from granting summary judgment. Doc. 135 at 2, 2–11. Plaintiff included some citations to the summary judgment record as purported support for his statements of fact. *Id.* But many of his facts failed to include a specific citation to the summary judgment record, as the federal and local rules require. *Id.* And, in other instances, plaintiff's citations did not support the factual assertions made in the statements of fact. *See* Doc. 144 at 3–4 n.2 (explaining that the court cannot accept plaintiff's conclusory and unsupported statements when deciding summary judgment (citing *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991))).

In its Order granting defendants' summary judgment motion, the Court recognized its duty to construe plaintiff's filing liberally because he was acting *pro se*. Doc. 144 at 3. But, under the Tenth Circuit's *pro se* standard, the Court cannot serve as a *pro se* litigant's advocate, and it cannot accept as true conclusory allegations unsupported by evidence in the record. *Id.* (citing *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013)). The Court also noted that a plaintiff's *pro se* status does not excuse him from complying with federal and local rules. *Id.*

(citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994); *Elrod v. Walker*, No. 06-3115-SAC, 2011 WL 6372881, at *6 n.3 (D. Kan. Dec. 20, 2011)).

Applying this standard, the Court deemed defendants' facts admitted and accepted them as true for purposes of summary judgment because plaintiff had failed to controvert them as the local rule requires.  Doc. 144 at 2.  The Court also refused to accept any of plaintiff's factual statements that were not supported by proper evidence.  *Id.* at 3.  But, the Court accepted plaintiff's factual statements that defendants did not controvert and the summary judgment record supported.  *Id.* at 3–4.  After viewing the summary judgment evidence properly before the court and in the light most favorable to plaintiff, the Court concluded that no genuine issues of material fact existed for trial on any of plaintiff's four claims.  *Id.* at 44.  Thus, the Court granted defendants' summary judgment motion as a matter of law.  *Id.*

After the Court entered summary judgment, plaintiff engaged counsel who entered his appearance on plaintiff's behalf on December 3, 2015.  Doc. 146.  Plaintiff, through counsel, now moves the court for relief from the Judgment entered against his claims because, he contends, the Court's decision against him, when he was acting *pro se*, was "clear error" and "manifest injustice" warranting relief under Rule 59(e), or alternatively, provides a basis for relief from judgment under Rule 60(b).

## II.    Motion to Strike

Before considering plaintiff's motion, the Court addresses defendants' Motion to Strike.  Doc. 157.  Defendants ask the court to strike plaintiff's Second Supplement to his "Motion for Relief and/or to Amend the Judgment."  Doc. 150.  Defendants assert that the court should strike the Second Supplement for several reasons:  (1) plaintiff filed the document without seeking or

obtaining leave from the Court; (2) D. Kan. Rule 7.1 does not permit plaintiff to file multiple

briefs supporting the same motion; and (3) it is untimely under Fed. R. Civ. P. 59(e).

Plaintiff responds that his counsel filed the original motion (Doc. 147) on December 3,

2015, to ensure that it was timely under Fed. R. Civ. P. 59.  His counsel noted his intention on

the first page of the motion to supplement the motion after he had more time to prepare one.

Doc. 147 at 1 n.1.  In the First Supplement, plaintiff's counsel stated that he was "recently

retained by Plaintiff for representation," and again explained that he had filed the original motion

to ensure that it was filed timely under Rule 59.  Doc. 149 at 1.  He also stated that he had

recalculated the deadline for filing a Rule 59 motion and concluded that the deadline was

December 7, 2015.  Having determined that the federal rules afforded plaintiff this additional

time, plaintiff's counsel represented that plaintiff intended to file a Second Supplement to his

motion on or before December 7, "which will include more details and analysis of Plaintiff's

basis and reasoning for his request that the Court vacate its November 5, 2015 Judgment in favor

of Defendants."  *Id.*  Plaintiff filed his Second Supplement on December 7 (Doc. 150), and he

submitted yet a Third Supplement on December 8 (Doc. 151).

"A supplement is not a pleading or other document that can be filed unilaterally, as a

matter of right."  *Rhoten v. Dickson*, No. 04-4160-SAC, 2006 WL 2414057, at *1 (D. Kan. July

25, 2006) (citing D. Kan. Rules 7.1, 7.4, 15.1(b), 56.1).  Our court "disfavors supplements and

applies the rules governing sur-replies in determining whether to consider them."  *Id.* (citing

*Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 659 (D. Kan. 1999)).

Our court's local rules do not provide for sur-replies. *See* D. Kan. Rule 7.1.  Specifically, the

local rule generally requires the non-moving party to file a responsive brief and allows the

movant to file a reply brief, "at which time the briefing is closed absent further order of the

11

court." *Medlock v. Otsuka Pharm, Inc.*, No. 07-2013-JPO, 2008 WL 243674, at *4 (D. Kan. Jan. 29, 2008) (citing D. Kan. Rule 7.1(c) and explaining "[t]here is no provision in this court's rules for the filing of any other papers, whether they are called a 'supplement,' sur-reply, further response, or something else"). Our court will grant a party leave to file a sur-reply but only in "rare circumstances, as where the movant improperly raises new arguments in a reply." *Rhoten*, 2006 WL 2414057, at *1 (citations and internal quotation marks omitted).

While plaintiff's Second Supplement violates the court's procedural rules, the Court nevertheless considers all of plaintiff's filings in deciding his motion. The Court concludes that plaintiff's arguments, even those in plaintiff's supplements, fail to demonstrate that relief under Rule 59(e) or Rule 60(b) is warranted here. The Court thus denies defendants' Motion to Strike (Doc. 157).

### III.    Motion to Alter or Amend Judgment under Rule 59(e), or alternatively, Motion For Relief From Judgment Under Rule 60(b)

The Court now turns to plaintiff's "Motion for Relief from and/or to Amend Judgment" (Doc. 147). Plaintiff invokes Rules 59(e) and 60(b) as the basis for his motion. He claims that the Court's Order granting summary judgment against his claims was "clear error" or "manifest injustice" warranting relief under Rule 59(e). Alternatively, he asserts that relief from judgment is warranted under Rule 60(b). The Court first sets out the legal standards for deciding motions under Rules 59(e) and 60(b), and then analyzes plaintiff's arguments under these standards. For the reasons explained below, the Court concludes that plaintiff is not entitled to relief under either rule.

#### A.  Legal Standard

A court may grant a motion to alter or amend a judgment under Rule 59(e) only if the moving party can establish (1) an intervening change in controlling law; (2) new evidence that

was previously unavailable; or (3) the need to correct clear error or prevent manifest injustice. *Somerlott v. Cherokee Nation Distribs., Inc.*, 686 F.3d 1144, 1153 (10th Cir. 2012) (quoting *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)); *Wilkins v. Packerware Corp.*, 238 F.R.D. 256, 263 (D. Kan. 2006), *aff'd* 260 F. App'x 98 (10th Cir. 2008). Here, plaintiff asserts that the third reason applies. That is, he argues that the Court must alter or amend its November 5, 2015 Judgment (Doc. 145) granting summary judgment against plaintiff's claims to correct "clear error and manifest injustice." *See* Doc. 147 at 1.

Alternatively, Rule 60(b) permits a court to relieve a party from a final judgment for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged . . . ; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Relief under Rule 60(b) is "extraordinary and may only be granted in exceptional circumstances." *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co.*, 909 F.2d 1437, 1440 (10th Cir. 1990) (citation omitted).

Here, plaintiff invokes the first and sixth subsections of Rule 60(b). *See* Doc. 161 at 3 n.1. The "mistake" provision allows relief "in only two instances: (1) when the party has made an excusable litigation mistake or an attorney in the litigation has acted without authority; or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order where a party has made an excusable litigation mistake or an attorney in the litigation has acted without authority from a party." *Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1999) (citing *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 576 (10th Cir. 1996)). But it is not available when a party seeks to undo the consequences of his deliberate acts. *Id.* Instead,

13

mistakes warranting relief under Rule 60(b) are ones that the party "could not have protected against, such as counsel acting without authority." *Id.*  "Thus, a party who simply misunderstands or fails to predict the legal consequences of his deliberate acts cannot later, once the lesson is learned, turn back the clock to undo those mistakes." *Id.*   And mere "[c]arelessness by a litigant or his counsel does not afford a basis for relief under Rule 60(b)(1)." *Pelican Production Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990) (citations omitted).

Neither Rule 59(e) nor Rule 60(b) permits a losing party to rehash or reargue issues previously addressed, or present new arguments that the party could have raised in earlier filings. *See Servants of Paraclete*, 204 F.3d at 1012 (stating that, on a Rule 59(e) motion, "[i]t is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing" (citation omitted)); *see also Van Skiver v. United States*, 952 F.2d 1241, 1244 (10th Cir. 1991), *cert. denied*, 506 U.S. 828 (1992) (explaining that a party may not invoke Rule 60(b) to revisit issues already addressed or "advanc[e] new arguments or supporting facts which were otherwise available for presentation when the original summary judgment motion was briefed" (citation and internal quotation marks omitted)).  And the party seeking relief from a judgment under either Rule 59(e) or Rule 60(b) bears the burden to demonstrate the prerequisites for such relief.  *See Wilkins*, 238 F.R.D. at 263 (stating that a moving party must establish the basis for granting a motion to alter or amend a judgment under Rule 59(e)); *see also Van Skiver*, 952 F.2d at 1243–44 (explaining that a movant must show "exceptional circumstances by satisfying one or more of Rule 60(b)'s six grounds for relief from judgment.").

### B.  Analysis

#### 1.  Defendants' Late Service of the *Pro Se* Notice

Defendants concede that they served plaintiff with the *Pro Se* Notice on May 11, 2015, ten days after filing their summary judgment motion.  They explain that the delay in sending the Notice was an inadvertent error.  So, here, the Court must determine whether defendants' failure to send the notice at the same time they served their summary judgment motion amounts to clear error or manifest injustice requiring the Court to grant plaintiff relief under Rule 59(e), or alternatively, whether it provides a basis for relief from judgment under Rule 60(b).

The Court first addresses defendants' argument that plaintiff has waived his right to assert these grounds for a Rule 59(e) or Rule 60(b) motion.  As stated above, the governing standards for Rule 59(e) and Rule 60(b) motions prohibit a party from presenting new arguments that the party could have raised in earlier filings.  *See Servants of Paraclete*, 204 F.3d at 1012; *see also Van Skiver*, 952 F.2d at 1244; *Montgomery-Brooks v. Comm'r of Social Sec.*, 619 F. App'x 695, 699 (10th Cir. 2015) ("A Rule 60(b) motion is not the proper place to advance new arguments.").  Indeed, plaintiff could have raised his arguments earlier about misunderstanding the summary judgment rules both before and after he received the *Pro Se* Notice.  He also could have requested more time to file his response based on his receipt of the Notice ten days after service of defendants' summary judgment response.  But plaintiff has never presented these arguments to the Court until now.  Plaintiff never responds to the waiver issue.  Nevertheless, the Court considers plaintiffs' arguments, even if he should have asserted them earlier instead of by a Rule 59(e) and Rule 60(b) post-judgment motion, because his arguments provide no basis for relief.

Plaintiff argues that the Court erred by granting defendants' summary judgment motion when defendants served plaintiff with the *Pro Se* Notice ten days after filing their summary judgment motion. As support, plaintiff cites cases from the Second Circuit holding that reversal of a summary judgment against a *pro se* litigant is required if the litigant received *no* notice of the rules governing summary judgment. *See*, *e.g.*, *Irby v. New York City Transit Auth.*, 262 F.3d 412, 414 (2d Cir. 2001) (stating that "[i]n the absence of such notice or a clear understanding by the *pro se* litigant of the consequences of failing to comply with Rule 56, vacatur of the summary judgment is virtually automatic" but affirming the district court's summary judgment ruling because: (1) plaintiff received the Notice, albeit after she submitted her summary judgment response; (2) she submitted no additional papers to comply with Rule 56; and (3) the record was clear that she understood the nature and consequences of summary judgment); *McPherson v. Coombe*, 174 F.3d 276, 281–82 (2d Cir. 1999) (reversing summary judgment against a *pro se* plaintiff because neither the movant nor the district court informed him of nature and consequences of failing to comply with Rule 56).

The Second Circuit's rule—one that applies when a *pro se* litigant receives no notice—does not apply here.[7] Plaintiff received notice of the summary judgment requirements when defendants served him with the *Pro Se* Notice on May 11. And thus plaintiff had the Notice several days before he filed his response to defendants' summary judgment motion. He just did not receive it until ten days after defendants had filed their summary judgment motion.

---

[7]     *Irby* actually supports defendants' position. In *Irby*, the Second Circuit concluded the *pro se* litigant's "opposition papers did not identify genuine issues as to material facts sufficient to defeat a motion for summary judgment and . . . the record otherwise makes clear that the litigant understood the nature and consequences of summary judgment" and thus "summary judgment was appropriate." 262 F.3d at 414 (citation and internal quotation omitted). As explained in more detail below, the record here shows that plaintiff received notice of the nature and consequences of summary judgment, and thus summary judgment was appropriate.

Also, in contrast to the Second Circuit cases plaintiff invokes, our Circuit has rejected the rule in other circuits requiring a *pro se* notice requirement for summary judgment procedures. *See Halpin v. Simmons*, 234 F. App'x 818, 820–21 (10th Cir. 2007) (rejecting a *pro se* plaintiff's argument that district court should have provided him advanced notice of the requirements for opposing a summary judgment motion, concluding that Tenth Circuit case law could not be read so "broadly" to require such notice, and holding that no special notice was required to the *pro se* plaintiff under the factual circumstances); *McDaniels v. McKinna,* 96 F. App'x 575, 578 (10th Cir. 2004) (stating that Tenth Circuit has "no such requirement" that district courts explain to *pro se* prisoners how to respond to a summary judgment motion).  Although our Circuit has cited a Ninth Circuit case for the proposition that "'[d]istrict courts must take care to insure that pro se litigants are provided with proper notice regarding the complex procedural issues involved in summary judgment proceedings,'" the Circuit never has imposed this requirement on district courts.  *See Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1140 (10th Cir. 1985) (quoting *Garaux v. Pulley*, 739 F.2d 437, 439 (9th Cir. 1984) but imposing no requirement of *pro se* notice and only holding that district court erred by failing to grant a *pro se* litigant's request for a continuance to remedy the defects in his summary judgment response); *see also Dickey v. Merrick*, 90 F. App'x 535, 537 (10th Cir. 2003) (holding only that the failure to provide a *pro se* litigant proper notice that the district court intended to treat a *Martinez* report as a summary judgment motion required reversal).

Notably, however, these Tenth Circuit cases predate our court's adoption of D. Kan. Rule 56.1(f).  In 2013, our court amended its local rule governing summary judgment practice, D. Kan. Rule 56.1, to include subsection (f).  The new subsection (f) requires represented parties moving for summary judgment against a *pro se* litigant to provide the *Pro Se* Notice specified by

the amended rule.[8]  By doing so, our court arguably has imposed requirements more exacting

than the Tenth Circuit's current case law, as discussed above.  So D. Kan. Rule 56.1 governs the

analysis here.  It provides:

> Any represented party moving for summary judgment against a party proceeding
> pro se must serve and file as a separate document, *together* with the papers in
> support of the motion, the following "Notice To Pro Se Litigant Who Opposes a
> Motion For Summary Judgment" with the full texts of Fed. R. Civ. P. 56 and D.
> Kan. Rule 56.1 attached.

*See* D. Kan. Rule 56.1 (f) (emphasis added).  Plaintiff argues that the Rule's requirement that the

moving party must serve and file the *Pro Se* Notice "together" with the summary judgment

motion means that the movant must serve and file both documents on the same day.  Here,

defendants concede that they did not serve the *Pro Se* Notice on the same day that they filed their

summary judgment motion.  Thus, plaintiff argues, defendants violated D. Kan. Rule 56.1, and

this violation warrants relief from the Judgment against plaintiff's claims.

The Court has found no case discussing this precise issue:  Is it an error for a court to

enter summary judgment against a *pro se* litigant who received D. Kan. Rule 56.1's required *Pro

Se* Notice, but not until ten days after the moving party filed its summary judgment motion?

Under these facts, the Court concludes the answer is no.

Plaintiff relies on a Ninth Circuit case reversing summary judgment against a *pro se*

litigant because the district court did not provide the *pro se* notice "concurrently" with the

summary judgment motion.  *Woods v. Carey*, 684 F.3d 934, 935 (9th Cir. 2012).  There, the

district court provided the notice shortly after plaintiff filed his amended complaint and over a

year before defendants filed their summary judgment motion.  *Id.* at 935–36.  The Ninth Circuit

found the timing of the notice too premature because it "is apt to be lost, forgotten, or rendered

---

[8]      *See* D. Kan. Rule 56.1(f) (2012) (containing no subsection (f) or any requirement to serve a *Pro Se* Notice).

inaccessible by the time it becomes necessary for the litigant to marshal a response." *Id.* at 940. Instead, the Ninth Circuit held it was "essential" for the district court to provide the notice to the *pro se* nonmovant "at the time when the defendants' motions are made, not a year or more in advance." *Id.* at 939. But that is not what happened in this case. Plaintiff received the *Pro Se* Notice close in time to defendants filing their summary judgment motion, just not on the same day.[9]

More recently, the Ninth Circuit held that a district court erred in its delay of sending a *pro se* litigant notice—about a month after defendants filed their summary judgment motion and a day after the *pro se* plaintiff had filed his response. *Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1159 (9th Cir. 2013). Again, those facts differ from this case—plaintiff received the *Pro Se* Notice 15 days before he filed his summary judgment response. And, *Labatad* required that the *Pro Se* Notice "must issue so that the litigant will receive the motion and the notice *reasonably contemporaneously.*" *Id.* *Labatad* imposed no requirement that plaintiff receive the notice on the same day as the summary judgment filing. Here, plaintiff's receipt of the *Pro Se* Notice arguably was "reasonably contemporaneous" with the summary judgment filing. It occurred ten days after the filing and 15 days before plaintiff filed his response.

*Labatad* also held that the delay in sending the notice was harmless error because the record demonstrated that the *pro se* litigant knew and understood the information in the notice when he filed his summary judgment response because it "included citations to, and quotes from,

---

[9]  In addition, this case differs from *Woods* for another reason. *Woods* explained that the failure to provide the notice was "a ground for reversal unless it is clear from the record that there are no facts that would permit the inmate to prevail." 684 F.3d at 941 (citing *Rand v. Rowland*, 154 F.3d 952, 962 n.9 (9th Cir. 1998)). The Ninth Circuit held the opposite was true—evidence existed that might have precluded summary judgment had the *pro se* litigant presented it. As explained below, no facts like that exist in this case. Plaintiff's additional citations to the summary judgment record provide no basis for a different result on defendants' summary judgment motion.

legal authorities, including Rule 56, and stated the Rule's legal standard for summary judgment." *Id.* *Labatad*'s *pro se* plaintiff also "attached as exhibits, and cited from, materials the defendants had provided in discovery . . . ." *Id.* at 1160. Thus, the court concluded that the *pro se* litigant understood the nature of summary judgment and affirmed the summary judgment order. *Id.*

Similarly, plaintiff here knew the requirements for summary judgment when he filed his response. He concedes that he had received the *Pro Se* Notice, and, like *Labatad*'s *pro se* litigant, he complied with many of the summary judgment rules. He cited and quoted to legal authorities, including Fed. R. Civ. P. 56 and D. Kan. Rule 56.1. *See* Docs. 131 at 1, 132 at 11–18, 20. He also attached numerous exhibits, including documents that defendants had produced in discovery, and he cited those materials in his statements of fact. *See* Docs. 135 at 2 –22, 135-1–135-3, 135-5–135-8, 135-10–135-12, 135-17–135-19, 135-22–135-24.

While plaintiff claims now that he did not understand the requirements of Fed. R. Civ. P. 56 and D. Kan. Rule 56.1,[10] the Court finds no reason to alter or amend the Judgment based on plaintiff's purported misunderstanding of the rules. Plaintiff cites portions of Fed. R. Civ. P.

---

[10]     Defendants question whether plaintiff truly misunderstood the summary judgment requirements. In his summary judgment response, plaintiff stated in the first paragraph that his "response is intentionally narrow to establish facts that prove that defendants are not entitled to summary judgment" and he cited the following advisory committee's note:  "'A nonmovant, for example, may feel confident that a genuine dispute as to one or a few facts will defeat the motion, and prefer to avoid the cost of detailed response to all facts stated by the movant.  This position should be available without running the risk that the fact will be taken as established under subdivision (g) or otherwise found to have been accepted for other purposes.'" Doc. 131 at 1 n.1. (quoting Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment).

Plaintiff also accused defendants of mischaracterizing the summary judgment facts and stated "'[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.'" Doc. 131 at 2 & n.2. (quoting Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment). Defendants argue that this statement demonstrates that plaintiff chose, at his own peril, to argue that defendants' facts, accepted as true, failed to establish an absence of material fact. The Court cannot divine plaintiff's intention at the time he filed his summary judgment response. However, the Court recognizes that he was well-versed in the summary judgment rules, including the advisory committee's notes. If plaintiff truly intended to rely on the record as presented by defendants in opposing summary judgment, then he has no basis to complain now.

56's advisory committee's notes that he interpreted, incorrectly, as relieving him of the obligation to controvert defendants' statements of fact.  *See* Docs. 131 at 1, 149-1 at 5–6.  But plaintiff provides no explanation for how he could have understood these requirements if only defendants had sent the Rule 56.1 notice ten days earlier on the same day they filed their summary judgment motion.  Indeed, plaintiff never asserts that he could have developed a different understanding about the meaning of the summary judgment rules if he had received the *Pro Se* Notice earlier.  And he concedes that he was confused about his obligations under the summary judgment rules both before and after he received the Notice.  *See* Doc. 149-1 at 3.  Plaintiff states in his declaration that, even after receiving the *Pro Se* Notice, he "was still overwhelmed with how to intelligibly respond to all of the [summary judgment] materials submitted by Defendants . . . ."  *Id.*

Moreover, plaintiff concedes that he reviewed Fed. R. Civ. P. 56 and its advisory committee's note "immediately" after receiving defendants' summary judgment motion but before he received the Notice.  Doc. 149-1 at 2–3.  Thus, plaintiff knew which federal rule to reference at the outset.  And, if he was still overwhelmed by the process even after receiving the *Pro Se* Notice, he could have consulted with legal counsel to assist him in understanding the summary judgment rules.  Plaintiff does not state whether he did so, but the Court assumes that he did not since he never sought leave to engage legal counsel and he continued to act *pro se* through the summary judgment briefing.  Indeed, plaintiff had engaged counsel previously.

He hired attorney Ted Beckett shortly before his termination to assist with meeting and communicating with his employer.  Thus, plaintiff knew how to engage legal counsel.  Judge O'Hara also encouraged plaintiff to seek counsel.[11]  Had he engaged counsel at that time, instead

---

[11]     The Court recognizes that some litigants cannot afford legal representation.  However, because Title VII contains a fee-shifting provision, some attorneys agree to represent Title VII plaintiffs on a

of after the Court's entry of a judgment against him, he could have submitted a response that complied with the rules and, perhaps, properly converted defendants' statements of fact.  But plaintiff chose to proceed *pro se*, and one consequence of that decision was that he had to rely on his own ability, as a non-lawyer, to read and apply the summary judgment rules.

Plaintiff also states that he was confused about his time to respond because that deadline is found in D. Kan. Rule 6.1(d) and not referenced in the *Pro Se* Notice.  But plaintiff easily could have discerned his time for responding had he referred to the Pretrial Order.  Doc. 118 (issued on April 20, ten days before defendants filed their summary judgment motion).  This Order also notified plaintiff of the summary judgment requirements, providing a link to our court's Summary Judgment Guidelines.  *Id.* at 21.  The Guidelines include references to the parties' obligations to set out numbered statements of fact with proper citations to the record, and it discusses the process for controverting factual assertions.  Summary Judgment Guidelines Nos. 4, 11, at http://www.ksd.uscourts.gov/summary-judgment/.  The guidelines conclude with bolded references to Fed. R. Civ. P. 56, D. Kan. Rule 56.1, and D. Kan. Rule 7.1, and an instruction to "[p]lease read carefully and follow [these rules]."  *Id.* at 2 (emphasis omitted).

Judge O'Hara also referenced these Guidelines at the Pretrial Conference Hearing on April 2, 2015.  As plaintiff pointed out at oral argument, Judge O'Hara cited this specific portion of the Pretrial Order, noting the paragraph governing summary judgment motion practice.  *See* Doc. 154 at 33.  He cautioned "both sides" that they should "review carefully and abide by the summary judgment guidelines that are on our court's website."  *Id.*

---

contingent-fee basis.  *See*, *e.g.*, *Baty v. Willamette Indus., Inc.*, 985 F. Supp. 1002, 1008 (D. Kan. 1997) (comparing plaintiff's case to the "average contingent-fee Title VII case").  Plaintiff makes no claim here that he was unable to hire counsel to assist him in opposing summary judgment.  And, indeed, he has since located counsel to represent him on his pending post-judgment motion.

Had plaintiff referenced D. Kan. Rule 7.1 as the Guidelines advised him to do, he would have read subsection (c), a provision informing him that "a party opposing a [summary judgment] motion must file a responsive brief or memorandum" "[w]ithin the time provided in D. Kan. Rule 6.1(d)." Rule 7.1(c). Turning to D. Kan. Rule 6.1(d), it provides that "[r]esponses to . . . motions for summary judgment . . . must be filed and served within 21 days." D. Kan. Rule 6.1(d). It also contains the requirements for moving for an extension of time in subsection (a). D. Kan. Rule 6.1(a).

In addition, when plaintiff received the *Pro Se* Notice on May 11, he still had 11 days to respond to the summary judgment motion under D. Kan. Rule 6.1(d) (which provides a 21-day time limit for responding to a motion for summary judgment). Plaintiff could have asked the Court for an extension of time to file his response. He had filed such a motion earlier in the case. *See* Doc. 25. Plaintiff also could have sought an extension of time, after he received the Court's May 21, 2015 Order extending his response time, when he "was still overwhelmed with how to intelligibly respond to all of the [summary judgment] materials submitted by Defendants . . . ." Doc. 149-1 at 3. He did not do so. He also never advised the court of his confusion about the rule. When he contacted the court, he only sought clarification about the response time, not the process for responding to summary judgment under the federal or local rules.

In sum, plaintiff provides no reason for why defendants' delay in serving the *Pro Se* Notice warrants relief under Rules 59 or 60. He fails to explain why the timing of his receipt of the *Pro Se* Notice would have changed how he responded to the summary judgment motion. And, thus, earlier service of the Notice by ten days would not have changed the outcome of the case, *i.e.* summary judgment against plaintiff's claims. Under these facts, plaintiff has not shown that the Court's summary judgment ruling was "clear error" or "manifest injustice" requiring the

23

Court to alter or amend the judgment under Rule 59(e).  These facts also fail to demonstrate the "exceptional circumstances" of "mistake, inadvertence, surprise, or excusable neglect" or "any other reason" to justify the "extraordinary" relief under Rule 60(b).  *Bud Brooks Trucking, Inc.*, 909 F.2d at 1440 (citation omitted).

### 2.   The Court Did Not Err in its Summary Judgment Ruling.

Plaintiff also argues that he is entitled relief under Rules 59(e) or 60(b) because the Court's treatment of the summary judgment record and its summary judgment ruling was improper.  The Court disagrees.

### a.   The Court Properly Considered the Summary Judgment Record.

Plaintiff argues that the Court erred by failing to consider the entire record on summary judgment even though plaintiff did not controvert defendants' facts or provide citations to certain evidence he now claims precluded summary judgment.

Courts must construe the substantive pleadings of *pro se* parties liberally.  *See Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).  But *pro se* litigants also must comply with the procedural rules or suffer the consequences of noncompliance.  *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (stating that "[t]his court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants" (citation and internal quotation marks omitted)).  This includes the court's local rules.  *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992); *see also Elrod v. Walker*, No. 06–3115–SAC, 2011 WL 6372881, at *6 n.3 (D. Kan. Dec. 20, 2011) (explaining that, on summary judgment, "[a]lthough the Court affords some leeway to pro se parties, it cannot merely overlook Plaintiff's failure to state and oppose material facts in compliance with the local rules, and Plaintiff's failure to submit admissible evidence . . . .").

24

On summary judgment, the court has no duty to search the record on behalf of a litigant to find evidence supporting the litigant's summary judgment interests.  *See Cross v. Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (explaining that, on a motion for summary judgment, "'it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without . . . depending on the trial court to conduct its own search of the record'" and the district court has no obligation "to comb the record in order to make [the plaintiff's] arguments for him'" (first quoting *Downes v. Beach*, 587 F.2d 469, 472 (10th Cir. 1978); then quoting *Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000)).

This same standard applies in *pro se* cases.  *See Handy v. City of Sheridan*, 636 F. App'x 728, 2016 WL 66170, at *13 n.15 (10th Cir. Jan. 6, 2016) (affirming summary judgment against a *pro se* plaintiff, stating that the district court had no duty to review the record independently for evidence that might negate summary judgment, and concluding the district court did not err by failing to consider evidence that the *pro se* plaintiff attached to his Complaint but did not cite in his opposition to summary judgment (citing *Cross*, 392 F.3d at 1290)); *McKinzy v. I.R.S.*, 367 F. App'x 896, 897 (10th Cir. 2010) (affirming summary judgment against a *pro se* plaintiff who alleged generally that disputed issues of material fact precluded summary judgment but failed to identify any part of the record to support his claim because "'[j]udges are not like pigs, hunting for truffles buried in briefs.'" (quoting *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995)).

The Court also did not err when it deemed defendants' statements of fact admitted.  The Tenth Circuit approves such treatment of uncontroverted factual assertions on summary judgment.  *See Taylor v. Pepsi–Cola Co.*, 196 F.3d 1106, 1108 n.1 (10th Cir. 1999) (noting that the district court deemed defendant's submitted facts as admitted because plaintiff did not

controvert them as the local rules required); *see also Coleman v. Blue Cross Blue Shield of Kan., Inc.*, 287 F. App'x 631, 635 (10th Cir. 2008) (affirming summary judgment and agreeing "with the district court that it is not the court's responsibility to conduct a fishing expedition of plaintiff's affidavit or any other record evidence in order to support the assertions made in her [summary judgment] response," and holding that the district court "was correct to admit all facts asserted in [defendant's] summary judgment motion that are not controverted by a readily identifiable portion of the record" (citation and internal quotation marks omitted)).

Moreover, the facts that the Court deemed admitted are supported properly by the summary judgment record. Although not stated explicitly in its Order, the Court conducted a review of the discovery record cited by defendants' motion to confirm that the cited testimony and attached summary judgment exhibits supported defendants' factual assertions, as defendants had stated them. The Court concluded that they did support the cited facts. And none of the material cited in plaintiff's statements of fact controverted defendants' factual assertions. The Court thus properly accepted defendants' facts as true when deciding summary judgment.

Finally, one contention plaintiff advanced at oral argument deserves special mention. Plaintiff argued that defendants "have no Constitutional right to summary judgment." This is surely so, but it means precious little. The participants who gathered in 1787 for our Constitutional Convention had bigger things on their minds: How many branches of government should there be? Which parts of the Virginia Plan should survive? What should the new government do about slavery? So, one can forgive them for not tending to the rules of procedure that the new federal courts would use. But the conventioneers did find time to establish "one supreme Court," U.S. Const. art. III, § 1, and it is this Supreme Court which has approved Rule 56 and directed federal district courts how to apply it. This rule, the Supreme Court has

emphasized, establishes an important procedure that district courts must use "'to secure the just, speedy and inexpensive determination of every action.'"  *See*, *e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  The Court believes its Memorandum and Order was faithful to this command.[12]

In sum, plaintiff's arguments about the Court's treatment of the summary judgment record, its decision to deem defendants' facts admitted when plaintiff failed to controvert them, and the availability of summary judgment under the federal rules provide no basis for relief under either Rule 59(e) or Rule 60(b).

### b.  The Additional Summary Judgment Evidence Plaintiff Cites Does Not Preclude Summary Judgment Against His Claims.

In his current motion, plaintiff also cites summary judgment evidence that, he contends, required the Court to deny defendants' summary judgment motion.  Defendants assert that plaintiff's arguments are improper because he could have raised them during the summary judgment briefing but did not.  Thus, defendants argue, plaintiff has waived his right to assert these arguments as grounds for Rule 59(e) or Rule 60(b) relief.  The Court declines to decide whether plaintiff has waived his arguments because, even when considered, this additional summary judgment evidence will not save plaintiff's claims from summary judgment.  Plaintiff presents, in essence, four arguments in support of his contention that the Court erred by granting defendants' summary judgment motion.

*First*, plaintiff asserts that defendants mispresented that certain facts as undisputed when the summary judgment record shows otherwise.  Specifically, he claims that defendants' reason for termination—plaintiff demanding or placing certain conditions on management before he

---

[12]  Plaintiff also orally argued that summary judgment is a "procedural short cut."  Whatever the law is elsewhere, this is simply incorrect in federal court.  *See Celotex*, 477 U.S. at 327 (summary judgment is not "a disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole.").

would return to work—is not supported by the record.  Doc. 150 at 2.  The Court disagrees.  As described below, the record, when viewed in plaintiff's favor, supports that undisputed fact.

But, also, this reason for termination was only one of two reasons for the termination decision.  Defendants' motion asserted that Tortoise had discharged plaintiff because he made harsh and disparaging comments about the company's management.  *See* Docs. 122 at 52 ("It was Plaintiff's unreasonable conditions under which he would return to work *and* his attacks on Tortoise's management as a whole (not just Kelly) that led to the termination of his employment." (emphasis added)); 124 at 52 (same).  The record supports these facts.  Plaintiff conceded that he thought his supervisor, Michelle Kelly, was incompetent and not qualified for her job.  Doc. 132-17 at 31, 66.  He also sent an email to Human Resources Manager Tabitha Boissonneau shortly before his termination complaining of "[r]ampant incompetence and mistakes; and the impact on the Business Development team . . . and the broader organization." Doc. 122-32 at 2.  Also, at summary judgment (and even now), plaintiff presented no facts capable of controverting defendants' factual assertions that plaintiff made similar disparaging remarks about Ms. Kelly and the company as a whole in various communications and meetings with his former employer.[13]  *See* Docs. 122-27 at 8, 18, 122-34 at 3–5.

Defendants established at summary judgment that, after Kevin Birzer and Terry Matlack learned of plaintiff's "attacks against Tortoise and all of its management," they felt that the

---

[13]     At oral argument, plaintiff asserted that the "disparaging remarks" that defendants provided as a reason for his termination actually were plaintiff's complaints of racial and religious discrimination and thus not a legitimate, non-discriminatory reason for discharge.  The Court disagrees.  The summary judgment record distinguishes between the two types of complaints that plaintiff made to Human Resources.  On the one hand, he complained that his supervisor's demands prevented him from praying on Fridays and affected his personal life and religious obligations.  On the other hand, plaintiff harshly criticized the competence and abilities of his supervisor, Ms. Kelly, and the overall management team and their operation of the company.  It was the latter comments—that disparaged the company and its management and had nothing to do with protected activity—that defendants relied on for the termination decision.

company could not continue to employ someone "who felt this way about . . . Tortoise management," and decided to discharge plaintiff. *See* Docs. 122-2 at 3, 122-4 at 3. Thus, the Court concluded that "[t]he summary judgment evidence, even when viewed in the light most favorable to plaintiff, establishes that Tortoise terminated plaintiff's employment because it decided that it could not employ someone who had expressed harsh and disparaging remarks about the company *and* placed unreasonable demands on its management." Doc. 144 at 35 (emphasis added). Indeed, this second reason for termination provides a legitimate, non-discriminatory reason for plaintiff's termination. *See Koski v. Standex Int'l Corp.*, 307 F.3d 672, 677–78 (7th Cir. 2002) (holding that "inappropriate disparaging remarks about . . . management and other employees" was a legitimate, non-discriminatory reason for termination).

In any event, the summary judgment record supports the other reason given for the termination decision. Defendants presented evidence demonstrating that plaintiff stated in an April 20, 2012 meeting that he wanted to return to work if he could report to a different supervisor and work from 8:30 a.m. to 5:00 p.m. Doc. 122-34 at 5. Indeed, plaintiff conceded in his deposition that he "suggested" that he report to a different supervisor. Doc. 132-17. He did, however, dispute that he had demanded certain work hours. *Id.* But plaintiff's denial fails to controvert that he made certain demands—at least in terms of requesting a new supervisor— before he would return to work.

Also, on summary judgment, plaintiff attempted to controvert this fact (although not in the fashion required by the summary judgment rules) by relying on his attorney's deposition testimony. And, now, he cites a letter from his attorney describing his recollection of the April 20 meeting. Doc. 122-36. But none of the communications or deposition testimony by his attorney Ted Beckett controvert that plaintiff requested a new supervisor before returning work.

As explained at summary judgment, Mr. Beckett testified that he *did not recall* if plaintiff placed conditions on returning to work, not that plaintiff placed no conditions.  Doc. 144 at 15 n.4.

Plaintiff also claims that it was improper for Mr. Birzer and Mr. Matlack to base their termination decision on hearsay statements describing plaintiff's requests about returning to work and his disparaging comments about the company's management.  First, plaintiff made disparaging remarks about management in an email that he authored.  Doc. 122-32 at 2.  That is not hearsay.  *See* Fed. R. Evid. 801(d)(2).  Second, the law imposes no requirement that a decision-maker have first-hand knowledge of the reasons for termination.  *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000) (explaining that a court must "look at the facts as they appear to the [decision-maker]" and holding that decision-maker's termination of plaintiff based on a manager's report that plaintiff had pushed and verbally abused a co-worker was not pretext); *see also Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 714 (10th Cir. 2014) (explaining that the "relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." (citation and internal quotation marks omitted)).

Finally, plaintiff asserts that defendants' proffered reasons for the termination are controverted by the reasons defendants gave plaintiff for his termination at the time of discharge.  Again, the Court disagrees.  The summary judgment evidence establishes that Mr. Birzer told plaintiff in his termination meeting that:  (1) the employment relationship was not a fit; (2) a "drastic" disconnect existed between the company's expectations and plaintiff's "support of the business, [its] philosophy, strategy, and decision making;" (3) the company could not agree with plaintiff's "distinct concerns" about "how the company operates and [plaintiff's] belief in their ability to be successful leaders;" (4) when plaintiff accepted his job, he accepted the job

requirements presented, "including his position's level and salary and that his position was in support of [Ms. Kelly] as his manager;" and (5) Mr. Birzer and the company felt that the parties' "misalignment of expectations . . . warranted parting ways."  Doc. 122-37 at 2.  These statements are consistent with defendants' reasons for terminating plaintiff's employment.

Plaintiff's additional citations to the record fail to present any admissible evidence controverting defendants' legitimate, non-discriminatory reasons for discharging plaintiff or otherwise establishes pretext.  Those legitimate reasons are the summary judgment facts, and they warrant summary judgment against plaintiff's claims.

*Second,* plaintiff asserts that the Court incorrectly concluded that plaintiff presented no admissible evidence to demonstrate that he complained about SEC violations before his discharge.  Plaintiff contends that he presented evidence to support this fact in the 26 factual statements asserted in his summary judgment response.  While plaintiff may have asserted this fact, none of the evidence he cited could support it.  *See* Doc. 132-1 at 1, 4, 5 (citing plaintiff's exhibits 2, 10, 13, 14, and defendants' exhibits, Docs. 122-2 and 122-4, none of which contains evidence of complaints of SEC violations).  Plaintiff now references his Statement of Fact No. 25 as support for this fact.  That factual assertion contended that defendants had misrepresented his entire deposition testimony, and it directed the Court to review portions of plaintiff's deposition.  Doc. 132-1 at 11.  It contains no assertion of plaintiff making SEC complaints, but it does reference portions of plaintiff's deposition where he alleges he complained internally of SEC violations.  But, even if these additional citations controverted defendants' assertion that plaintiff made no complaints of SEC violations, they require no relief from the ultimate disposition of plaintiff's Dodd-Frank Act claim.

The Court granted summary judgment against plaintiff's Dodd-Frank Act claim for three additional and independent reasons. Doc. 144 at 30–32. The Court concluded that plaintiff had presented no genuine issues of material fact requiring a trial on the second, third, and fourth elements of a Dodd-Frank Act claim. *Id.* Specifically, the Court held that the summary judgment evidence, viewed in plaintiff's favor, failed to create a genuine issue about the second element—whether defendant discharged plaintiff in retaliation for complaining about SEC violations. *Id.* at 30–32. It also concluded that plaintiff had presented no evidence of the third and fourth elements of a Dodd-Frank Act claim—that plaintiff made the alleged disclosure under a rule, law, or regulation within the SEC's jurisdiction, or the disclosure was required or protected by that rule, law, or regulation within the SEC's jurisdiction. *Id.* at 32.

Plaintiff now argues that he satisfied the third and fourth elements of a Dodd-Frank Act claim to survive summary judgment because he complained about misrepresentations made to an investor. And, he contends, the Court should have construed his complaints liberally as falling within the rules, regulations, and jurisdiction of the SEC. He now cites specific SEC rules and regulations that he contends apply here, and he says the Court should have construed his allegations liberally to satisfy the third and fourth elements of this claim. Doc. 161 at 4.

While the *pro se* standard requires the Court to construe plaintiff's pleadings and arguments liberally, it prohibits the Court from serving as his advocate. *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013) (stating that "we liberally construe [a *pro se* litigant's] filings, but will not act as his advocate" (citing *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)). Plaintiff made no attempt to satisfy the third or fourth elements of his Dodd-Frank Act claim, and the Court had no duty to advocate these positions for him.

But, even if it had, plaintiff still cannot show that genuine issues exist about the second element. Defendants have presented evidence establishing a legitimate, non-discriminatory reason for plaintiff's termination. And none of the summary judgment evidence creates a genuine issue whether that reason was pretext for retaliation after plaintiff complained of alleged securities violations. *See* Doc. 144 at 30–32. The undisputed summary judgment facts, when viewed in plaintiff's favor, present no genuine issue for trial on the second element of plaintiff's Dodd-Frank Act claim. Summary judgment thus was proper.[14]

*Third*, plaintiff contends that he asserted Title VII and § 1981 retaliation claims against defendants, even though the Pretrial Order contains no Title VII or § 1981 retaliation claim among the four claims listed under the section titled "Legal Claims of Plaintiff." Doc. 118 at 14–15. But plaintiff argues that the Court should have construed the Pretrial Order liberally as asserting Title VII and § 1981 retaliation claims. The Court disagrees. Even under the most liberal construction, the Pretrial Order preserves no retaliation claim under either statute.

---

[14]    Plaintiff's Dodd-Frank Act claim also may fail if the Tenth Circuit concludes that the claim requires plaintiff to complain of securities violations to the SEC, not just internally to the company. It is undisputed that plaintiff did not report securities violations to the SEC. As the Court explained in its summary judgment order (Doc. 144 at 23–25), a Circuit split exists on the question whether an individual must report violations to the SEC to bring a retaliation claim under the Dodd-Frank Act. *Compare Berman v. Neo@Ogilvy LLC*, 801 F.3d 145, 155 (2d Cir. 2015) (holding that an individual "is entitled to pursue Dodd-Frank remedies for alleged retaliation after his report of wrongdoing to his employer, despite not having reported to the [SEC] before his termination") *with Asadi v. G.E. Energy (USA), LLC*, 720 F.3d 620, 629 (5th Cir. 2013) (holding that "the plain language and structure of the whistleblower-protection provision" requires an individual to report securities violations to the SEC "to qualify for protection from retaliation under [the Dodd-Frank Act]"). The Court found this question "intriguing" but ultimately declined to decide the issue because several other bases existed for deciding the summary judgment issues. Doc. 144 at 25. Since the Court's summary judgment ruling, a few other district courts have addressed the issue. Two courts have joined the Fifth Circuit in concluding that an individual must report violations to the SEC before asserting a Dodd-Frank Act claim. *See Verble v. Morgan Stanley Smith Barney LLC*, __ F. Supp. 3d __, 2015 WL 8328561, at *10 (E.D. Tenn. Dec. 8, 2015); *Puffenbarger v. Engility Corp.*, __ F. Supp. 3d __, 2015 WL 9686978, at *8–9 (E.D. Va. Dec. 31, 2015). In contrast, one district court has concluded, like the Second Circuit, that a complaint to the SEC is not required. *Lutzeier v. Citigroup, Inc.*, No. 4:14CV183 RLW, 2015 WL 7306443, at *2 (E.D. Mo. Nov. 19, 2015). And yet another district court has declined to answer the question. *Allstate Ins. Co. v. Zeefe*, No. 5:15-159-KKC, 2016 WL 1071011, at *4 (E.D. Ky. Mar. 17, 2016) (recognizing the Circuit split but finding it unnecessary to decide the issue). But, the Tenth Circuit still has not reached this question.

Plaintiff asserts that two parts of the Pretrial Order support his argument.  He first alleges that he stated his retaliation claim in the section listing "plaintiff's factual contentions."  Doc. 118 at 6.  On that page, plaintiff twice references a retaliation claim.  *Id.*  But the first one clearly references his Dodd-Frank Act retaliation claim, not a Title VII or § 1981 retaliation claim.  *Id.*  And, the second reference states that plaintiff was "tampered with as a witness" "[i]n retaliation, to cover up the plethora of intentionally contrived illegalities . . . ."  *Id.*  Plaintiff does not identify whether "the intentionally contrived illegalities" consist of Title VII and § 1981 violations, or Dodd-Frank Act violations—the claim he actually asserts in the Pretrial Order.  These mere references to retaliation, without more, fail to demonstrate that plaintiff asserted a Title VII or § 1981 retaliation claim.

The second part of the Pretrial Order that asserts Title VII and § 1981 retaliation claims, according to plaintiff, is found in the section titled "Legal Claims of Plaintiff."  Doc. 118 at 14.  There, before listing his claims, plaintiff asserted that he was "entitled to recover upon the following alternative theories" "as previously alleged in plaintiff's second amended complaint."  *Id.*  But then he goes on to list four claims, none of which is a Title VII or § 1981 retaliation claim.  *Id.* at 15.  The Court could not have discerned from this statement, even with the most liberal construction, that plaintiff was asserting a Title VII or § 1981 retaliation claim, especially when he described both his Title VII and § 1981 claims as ones based on religious discrimination *not* retaliation.  *Id.* at 14 –15 (stating in Count I that "Defendants terminated plaintiff's employment in violation of Section 1981 by discriminating against him based on racial background/ethnicity," and stating in Court II that "Defendants terminated plaintiff's employment in violation of Title VII, specifically, by discriminating against him based on religion.").  Moreover, plaintiff described his Dodd-Frank Act claim in the Pretrial Order as a

retaliation claim so he certainly knew how to assert a retaliation theory. *Id.* at 15 (stating that "Defendants terminated plaintiff's employment in violation of Dodd-Frank, specifically, by retaliating against him with abject disregard to the whistleblower protection the Act affords.").

Even the liberal construction standard "does not require courts to fabricate a claim that a plaintiff has not spelled out." *Shaub v. Newton Wall Co./UCAC*, 153 F. App'x 461, 465–66 (10th Cir. 2005) (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1367 n.1 (11th Cir. 1999)). And, in its summary judgment ruling, the Court cited cases from our court holding that even a *pro se* litigant waives claims not asserted in the Pretrial Order. Doc. 144 at 41 (citing *BioCore, Inc. v. Khosrwoshahi*, 41 F. Supp. 2d 1214, 1231 (D. Kan. 1999) (holding that a *pro se* litigant abandoned claims not found in the Pretrial Order) (further citations omitted)). Thus, under these facts, the Court did not err by concluding that plaintiff had waived a Title VII or § 1981 claim based on their omission from the Pretrial Order.

But, even if the Court had found that plaintiff properly had asserted a Title VII or § 1981 retaliation claim in the Pretrial Order, the summary judgment evidence, when viewed in his favor, fails to demonstrate genuine issues for trial on either claim. The only evidence that plaintiff cites to preclude summary judgment against a Title VII or § 1981 retaliation claim is that he complained of religious discrimination ten days before his discharge. While this timing might suffice to establish a prima facie case, it alone cannot establish pretext to survive summary judgment against a retaliation claim. *See, e.g., Annett v. Univ. of Kan.*, 371 F.3d 1233, 1240–41 (10th Cir. 2004) (affirming summary judgment against plaintiff's Title VII retaliation claim and explaining that "temporal proximity is a factor in showing pretext, yet is not alone sufficient to defeat summary judgment" (citing *Pastran v. K–Mart Corp.*, 210 F.3d 1201, 1206 (10th Cir. 2000))).

Plaintiff cites *Argo v. Blue Cross and Blue Shield of Kansas, Inc.* to support his argument. But there, the Tenth Circuit affirmed summary judgment in that case against a plaintiff's Title VII retaliation claim. 452 F.3d 1193, 1203 (10th Cir. 2006). While the Tenth Circuit held that plaintiff had established a prima facie case of discrimination when her termination occurred "just 24 days" after a sexual harassment complaint, the Circuit also concluded that plaintiff "failed to raise a genuine issue of material fact" whether defendant's "stated reasons for the termination are a pretext for retaliation." *Id.* at 1202–03. The same situation exists here. As the Court explained in its summary judgment ruling, no genuine issues exist for trial about defendants' proffered reason for the termination or whether that reason was pretextual. Doc. 144 at 41. The Court thus concluded that, even if plaintiff had asserted a Title VII or § 1981 retaliation claim, neither survives summary judgment. *Id.*

*Finally*, plaintiff asserts that the summary judgment record shows subjective and inconsistent reasons for plaintiff's termination, and, thus, precludes summary judgment against his Title VII and Dodd-Frank Act claims. The Court already has rejected this argument, above. Instead, the evidence at summary judgment established no genuine issues of material fact about defendants' legitimate, non-discriminatory reason for plaintiff's discharge. The summary judgment record, including the additional evidence plaintiff now cites, neither controverts those facts nor establishes pretext. Under the factual record submitted, the Court properly granted summary judgment against plaintiff's claims and it now finds no basis to alter, amend, or grant plaintiff relief from the Judgment.

## IV.    Conclusion

Plaintiff Arshad Azim chose to proceed *pro se* in this lawsuit. He now must live with the consequences of that decision. But even though Mr. Azim is not a lawyer, he litigated this case

36

in a sophisticated fashion, in comparison to other *pro se* litigants that have appeared before this Court.  Indeed, Mr. Azim served discovery on defendants.  He also prevailed, at least in part, on several motions that he filed and that defendants opposed, including a Motion for Leave to Amend the Complaint and a Motion to Compel.  *See* Docs. 46, 129.  Mr. Azim's performance is not that surprising given his educational level and professional experience in the investment management field.

Nevertheless, Mr. Azim's ability to prosecute this case was limited by his lack of training and understanding about the federal and local rules governing summary judgment.  But, even when a party proceeds *pro se*, our Circuit's rules require him to comply with federal and local rules, including those rules governing summary judgment.  To assist *pro se* litigants with the summary judgment procedure, our local rules require a party moving for summary judgment against a *pro se* party to serve a *Pro Se* Notice on the nonmovant.  Here, defendants served Mr. Azim with the *Pro Se* Notice, albeit ten days after filing their summary judgment motion.

Despite defendants' belated service of the *Pro Se* Notice, the Court did not commit clear error or manifest injustice when it granted defendants' summary judgment motion.  Mr. Azim has failed to demonstrate that defendants' late service of the *Pro Se* Notice produced any clear error, manifest injustice, or other basis for relief from the Judgment.  He also cannot show on the summary judgment facts that he presents to the Court now—through counsel—that he would have succeeded in opposing defendants' summary judgment motion.  Even with the additional evidence he cites and viewing that evidence in the light most favorable to Mr. Azim, the Court concludes that no genuine issues of fact exist that preclude summary judgment against any of Mr. Azim's four claims.  Thus, Mr. Azim is not entitled to relief from the Judgment under either

Fed. R. Civ. P. 59(e) or 60(b).  And the Court denies Mr. Azim's "Motion for Relief from and/or to Amend Judgment" (Doc. 147).

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's "Motion for Relief from and/or to Amend Judgment" (Doc. 147) is denied.

**IT IS FURTHER ORDERED THAT** defendants' Motion to Strike plaintiff's Second Supplement (Doc. 157) is denied.

**IT IS SO ORDERED.**

**Dated this 21st day of June, 2016, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
